Anastasia P. Winslow, Esq. ID #030821989
WINSLOW LAW LLC
290 W. Mt. Pleasant Ave.
Livingston, NJ 07039
(609)-933-1774
Email: winslowlawnj@gmail.com
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| A.W. o/b/o N.W. | Civil Action No. 3:18-cv-13973-MAS-TJB |
| Plaintiffs, | |
| v. | |
| PRINCETON PUBLIC SCHOOLS BOARD OF EDUCATION, Defendant. | **CERTIFICATION OF A.W. IN OPPOSITION TO THE MOTION BY PRINCETON PUBLIC SCHOOLS BOARD OF EDUCATION TO ENFORCE AN ALLEGED SETTLEMENT OF MARCH 2, 2018** |

I, A.W., of full age, hereby certify as follows:

1.     I am the parent of plaintiff N.W. herein. I make this certification in opposition to the motion filed by Defendant, Princeton Public Schools Board of Education (hereinafter "PPS"), to enforce a settlement dated March 2, 2018.

2.     With regard to N.W.'s placement at The Lewis School for the 2017-2018 school year, I had settlement discussions with PPS on September 27, 2017, October 4, 2017, and March 2, 2018. Because prior discussions shed light on what was discussed and agreed upon on March 2, 2018, I have set forth some of the history below. Facts regarding March 2, 2018, in particular,

1

appear below beginning at p. 17, ¶¶ 98-145.

## I. History leading to first proposed Lewis School settlement on September 27, 2017

3.     This case is about my daughter, N.W., who is now fourteen-years old.

4.     N.W. was adopted by me as a single parent in 2004 (when she was one years' old), and since then has lived with me in Princeton, NJ.

5.     From September 2010 (for kindergarten) through September 2012, and then from April 2014 through September 29, 2017, N.W. was enrolled in the PPS District. (From September 2012 to April 2014, she was enrolled in the public Princeton Charter School ["Charter"].)

6.     N.W. is very smart and has been assessed by PPS's expert evaluators as having an intelligence quotient in the Very Superior/Superior range (SJa39)("SJa" refers to the appendix submitted herewith, on January 12, 2018, in support of plaintiffs' motion for summary judgment).

7.     Her high IQ aside, up until this last school year (2017-2018), N.W.'s school experiences were fraught with anxiety and conflicts with students and teachers (e.g., SJa197-198).

8.     In the spring of 2014, when N.W. was attending fourth grade at the Community Park School (CP), she reported a lot of bullying and conflicts with large numbers of children (SJa198).

9.     N.W. became very depressed, developed somatic complaints, and refused to go to school.  As a result, I

homeschooled N.W. for about the last month of fourth grade.

10.   For fifth grade (2014-2015), PPS allowed N.W. to attend an out-of-zone elementary school (Riverside Elementary) upon my request this was necessary for her to receive a free and appropriate public education (FAPE).

11.   During N.W.'s fifth grade year (2014-2015), as the year progressed, N.W. became increasingly anxious and depressed about the prospect of attending the J.W. Middle school ("JW") for 2015-2016 (sixth grade), for fear of confronting those with whom she had problems in fourth grade.

12.   In January 2016, after a discussion with me about where she would go to middle school, N.W. cut her wrist.

13.   In February 2016 and in March 2016, I wrote to Stephen Cochrane, Superintendent of the PPS District ("Cochrane"), to ask for an out-of-district placement for N.W. for sixth grade (2015-2016 school year), but Cochrane did not respond to my emails.

14.   On June 15, 2015, I made a parental referral for N.W. under the Individuals with Disabilities Act, 20 U.S.C. 1400 et seq.(IDEA), which I submitted to Micki Crisafulli ("Crisafulli"), Director of Student Services with PPS (SJa196).

15.   During the summer of 2015, N.W. was evaluated by both PPS District evaluators and N.W.'s private psychologist and psychiatrist.

16.   Evaluations during the summer of 2015 revealed N.W. was suffering from, *inter alia*, depression, anxiety, somatic disturbances, school phobias, Attention Deficit Hyperactivity

Disorder (inattentive type)(ADHD) including traits of
Oppositional Defiant Disorder (ODD), and her psychiatrist
reported symptoms of post-traumatic stress disorder (SJa205-
SJa229).

17.   On August 27, 2015, not yet receiving an Individualized
Education Plan (IEP) or out-of-district placement for N.W., I
filed an emergent due process petition (A.W. o/b/o N.W. v.
Princeton Public Schools et al., EDS Docket No. 15303)(SJa26).

18.   On August 31, 2015, there was an IEP meeting, when PPS
proffered a draft IEP which classified N.W. as eligible for
special education and related services as "Emotionally Disturbed"
but proposed to place N.W. at JW (SJa230).

19.   However, N.W.'s psychologist and psychiatrist
recommended against placement at JW as contra-indicated, "highly
irresponsible," and likely to result in harm to self or others
and substantially risk development of a full PTSD diagnosis
(SJa225, SJa228).

20.   Due to lack of an appropriate educational placement,
N.W. was homeschooled from the beginning of the school year in
September 2015, through November 24, 2015. This was a very
difficult period for her and our family.

21.   On October 29, 2015, I agreed to a settlement with PPS
pursuant to which the District agreed to place N.W. at the Fusion
Academy ("Fusion") for two years (2015-2016 and 2016-
2017)(SJa32).

22.   This settlement had no future waivers and did not waive

N.W.'s right to an IEP (Pa14); it also was subject to Board approval, with the next Board meeting anticipated for November 18, 2015 (in the interim, N.W. was to continue with home instruction)(SJa32).

23.  I accepted the October 29, 2015 settlement, was "voir dired" and signed the agreement in court that day (SJa33).

**In October and November 2015, between court and Board approval, PPS sought and agreed to amendments to the settlement that had been prepared in court**

24. On October 30, 2015, the day after the October 29, 2015 hearing, the PPS attorney (the same attorney as on this matter) sent my attorney an amended version of the agreement over the version that was accepted in court the previous day (PMa1).

25. In forwarding this amended agreement, the PPS attorney explained that he believed the amendment he was proposing was "already implied" in the agreement but he believed his client "will want this specifically spelled out" (PMa1).

26. In response to PPS's attorney's amendments, my attorney sent a counter-proposal, but on November 4, 2015, the PPS attorney responded he would only agree to *his* changes (PMa2).

27. After further discussion, on November 5, 2015, the PPS attorney agreed to edits which he said he thought "addresses the parents and District's concerns" (PMa3).

28.  In later discussions with PPS, I remembered this history and considered the time between in-court discussions (which are necessarily time-pressured and stressed), and Board

approval to be an opportune time to resolve any concerns between the parties to ensure a fair and amicable resolution.

Filing of due process petition seeking IEPs for 2016-2017 and 2017-2018 with transition plan for N.W. to return to district for <u>high school</u>

29. During both the 2015-2016 and 2016-2017 school years, N.W remained placed at the Fusion Academy.

30. While N.W. was placed at Fusion Academy, PPS made no attempt to provide her with an IEP.

31. I was frustrated by the lack of IEP and the fact that N.W. was not receiving the services that had been recommended by PPS consultants when they conducted evaluations in 2015. For example, professional consultants had recommended social skills services and in-school counseling for N.W., but these services were not provided to N.W. while she was at Fusion.

32. In August 2016, I filed a due process petition requesting an IEP for N.W. while she remained placed at Fusion (SJa253), but despite this petition, PPS still refused to provide her with an IEP.

33. Instead, during the fall of 2016, PPS agreed to conduct an evaluation to develop a transition plan for N.W. to return to district. I agreed with this as I did want for N.W. to return to public school, to be schooled with other children in her community, with supports and accommodations that she needs.

34. In January 2017, the PPS's hired consultant, Dr. Sarah Woldoff, recommended that N.W. remain programmed at Fusion and

have a "slow and smooth" transition plan to return to PPS in-district <u>for high school</u>; she was then in seventh grade (SJa41).

35.   On February 15, 2017, I filed a due process petition before the N.J. Office of Administrative Law, not as a reimbursement case, but instead, with the aim of seeking to solicit an IEP that implemented the advice of PPS's expert, as above ¶ 34 (SJa127, SJa140-SJa141). In my petition, I specifically asked for an IEP implementing the advice of PPS's expert (SJa140).

36.   On or about June 7, 2017, PPS agreed that Fusion was N.W.'s "stay put" placement.

37.   By the start of the school year, however, PPS did not hold an IEP meeting for the 2017-2018 school year and did not offer N.W. an IEP for the 2017-2018 school year implementing Dr. Woldoff's advice.

38.   This outcome was frustrating for us, as I had filed in February 2017, asking for an IEP by start of school, and also, the October 29, 2015 settlement required an IEP for the 2017-2018 school year <u>by April 30, 2017</u>, as follows:

> 2.   Princeton Public Schools Board of Education will conduct N.W.'s evaluations and offer an IEP <u>for the 2017-2018 school year</u> by April 30, 2017 [SJa34].
>
> 3.   The IEP set forth in paragraph 2 shall be the stay-put placement for the 2017-2018 school year.  The parties reserve their rights to the 2017-2018 school year, including the parent's right to challenge 2017-2018 placement [SJa34].

39.   During the summer (2017), Fusion's education department

approved of N.W. taking accelerated coursework, specifically ninth-grade courses for the 2017-2018 school year (SJa57).

40. However, on or about August 29, 2017, Crisafulli informed Fusion (without engaging me or an IEP team) that PPS would not pay for N.W.'s stay-put placement unless Fusion had N.W. enrolled as an eighth grader (SJa66).

41. I was informed of this news by Fusion on August 31, 2017, and so was N.W. who became very upset, demoralized and oppositional about attending Fusion under those terms.

Filing of Emergent Petition on September 8, 2017

42. On September 8, 2017, I hand-delivered an Emergent Petition to the N.J. OAL, advising that N.W. did not have an IEP and was not in school (SJa15-SJa16); at that time, I asked that PPS either convene an IEP meeting and determine N.W.'s Courses of Study through an IEP or if no IEP meeting was to be convened, to defer to Fusion's plan (SJa16). I also offered as an alternative that stay-put be changed from Fusion to The Lewis School (SJa16).

43. I note, if PPS agreed for stay-put to be The Lewis School, this would have been economically advantageous for PPS as The Lewis School's annual tuition was about $30,000 less than Fusion's tuition, but PPS still refused this option.

44. Upon receipt of my Emergent Petition, the N.J. OAL scheduled a hearing date for September 27, 2017.

45. The timing of this hearing date left my daughter and me in a state of despair, as N.W. was depressed being out of school and for her to stay out of school until September 27, 2017,

8

waiting for a placement, would have been very harmful for her.

46.   On or about September 12, 2017, I solicited an arrangement with The Lewis School for N.W. to attend classes there on an auditing basis, so my daughter would have a place to go to school as we awaited the emergent hearing (PMa84).

47.   From about September 12, 2017 to September 26, 2017, N.W. attended classes at The Lewis School on an auditing basis (PMa84) and quickly became very emotionally attached to The Lewis School and clung to the prospect of continuing her schooling there.

48.   This also made N.W. highly anxious about the uncertainty over her schooling and whether she could stay at The Lewis School; for example, due to her stress and worry she did eat for over two days (Saturday, 9/23 until the afternoon of 9/25; she only started to eat after our expert, Dr. Dragan, agreed to write a letter opinion in support of The Lewis School (on 9/25 [SJa79]).

49. Dr. Edward Dragan issued an expert report on September 26, 2017, that "stay put" should be the Lewis School to avoid traumatizing N.W. further (SJa79-SJa80).

50. On September 27, 2017, via an attorney I had retained, we asked that the "stay put" placement be The Lewis School, relying upon this expert report (SJa102-SJa124)

**II. <u>First proposed Lewis settlement of September 27, 2017</u>**

51. When I appeared for the emergent hearing before the N.J. OAL as to stay-put on September 27, 2017, there was a discussion about settling the case in its entirety, before oral arguments were heard. (I was represented by counsel).

52. PPS proposed a settlement that included the following terms:

1. PPS would pay for N.W.'s tuition at The Lewis School on a monthly basis (this proposal was that PPS would issue a check that could immediately be tendered to The Lewis School);

2. A.W. o/b/o N.W. would waive N.W.'s right to an IEP while she was placed at The Lewis School; and

3. A.W. would agree that for the following (2018-2019) school year, N.W. would be placed in district at the Princeton High School (PHS) and A.W. would not be allowed to challenge the placement.

53. The PPS attorney drafted an agreement including those terms in hand-writing on a notepad (e.g., as in SJa32).

54. I was convinced to accept this deal with the exception that I could not agree in September 2017 that for the following (2018-2019 school year) N.W. would be placed at PHS, for example, without knowing how N.W. would progress over the next year, how her mental health issues may improve or even worsen, and in short, whether she would be emotionally ready for PHS. So I rejected it for that reason.

55. Thereafter, the N.J. OAL heard oral arguments on the emergent petition.

56. The next day, the N.J. OAL ruled that Fusion was N.W.'s stay-put placement (SJa13).

57. On September 29, 2017, I enrolled N.W. in The Lewis School and paid approximately $40K in initial tuition and fees for the school year because she needed to go to school and I knew that to send her to Fusion would be emotionally debilitating for her and I could not hurt her like that (PMa86-88).

### III. <u>Second proposed Lewis settlement of October 4, 2017</u>

58. On October 4, 2017, there was a hearing on the merits of the due process petition that I had filed on February 15, 2017.

59. At the outset of the hearing, PPS again proposed to settle the matter.

60. PPS's attorney came to court with a draft settlement already prepared (PMa4-8 [excerpts]).

61. This draft contained essentially the same terms as those proposed a week earlier, namely, that PPS would reimburse me for tuition at The Lewis School for the 2017-2018 school year on monthly basis upon proof of attendance; that there would be no IEP for N.W. at The Lewis School (PMa4); and the placement for 2018-2019 would be PHS which I could not challenge (PMa4).

62. This settlement contained future waivers through the end of the school year (through June 2018), and also provided that my daughter N.W. would be disenrolled from the district (PMa4-PMa8).

63. I agreed to this settlement because my case was

11

compromised[1] and I needed to obtain reimbursement for the $40K I had paid to The Lewis School, plus also importantly, I had convinced myself at the end of the school year (summer 2018) I was going to move my family to another school district on account of all the problems we were encountering with PPS (particularly, how it hurt my daughter with the dispute over her program at Fusion Academy), so the waiver of placement for the next year would not matter anyway.

64. After some limited discussion the PPS attorney prepared another draft, printed three copies, and I signed them in court.

65. In the stress of the situation on October 4, 2017, I left the court without a copy of the document I had signed.

66. Over the next two days, I developed concerns about the settlement (which at that point was not fully executed and could be rejected by the PPS Board).

67. First, I realized that I had left court without a copy of the document I had signed.

68. Second, I realized that under the agreement with all of its waivers and disenrollment, if something happened where The Lewis

---

[1] There were a number of reasons for this; one significant reason was that the due process petition was filed as a pre-placement case with a request for an IEP for the 2017-2018 school year; however, by the time of the hearing, the case had factually transformed into a private school reimbursement case. Such a reimbursement case would have required that I prove placement at The Lewis School was appropriate, however, at the time of the hearing N.W. had been formally attending The Lewis School as an enrolled student for only two days. The ALJ also denied a motion I had filed on September 13, 2017, seeking to amend my petition with new facts developed since February 15, 2017.

School placement were to fail, I not only would <u>not</u> be reimbursed for the $40K I had paid, but I would have no educational options for my daughter – <u>i.e</u>., my only option would be to try to find another private school placement (not realistic) or abruptly move to another school district mid-year (impacting my other two young children, then aged seven and ten).

69. Realizing this contingency, I considered this was a risk I could not bear.

70. Two days after the hearing, on Friday, October 6, 2017, I emailed the PPS attorney asking for a copy of the agreement and requesting amendments to address the aforementioned concerns and contingencies (¶ 68)(PMa9).

71. However, I received no reply.

72. Not having heard back, on October 9, 2017 I prepared an addendum to the agreement, which I forwarded to the PPS attorney (PMa11), indicating that my continued assent to the agreement was subject to proposed amendments to address my concerns (PMa10-11).

73. I also noted again that I did not have a copy of the agreement signed in court (PMa10).

74. I still did not receive a response.

75. Frustrated by this lack of response, I emailed him again on October 16, 2017 (PMa12), and as a parent having lived in the PPS District for twenty years, consulted with a PPS Board member on or about October 17, 2017.

76. While the attorney still did not respond to me, the PPS Board member met with me and agreed that I could not consent to

the agreement without a copy; I was advised to inform the PPS attorney that he needed to send me a copy of the agreement by the end of the day and if I did not receive a copy, I would revoke consent.

77. I shared with the Board member parts of the draft settlement that I did have (PMa4); the Board member commented that as a parent, the settlement terms were not acceptable, due to a concession as to placement the following school year.

78.  On October 18, 2017, I wrote to the PPS attorney that if I did not receive a copy of the agreement by the end of the day, I would revoke consent; and separately, that if he did not agree to work with me on reasonable amendments to address my concerns, I would revoke consent (PMa13).

79. However, PPS promptly wrote back as follows:

> You have made representations to the court under oath that you have accepted the agreement. The board is moving forward with the settlement agreement that you stated under oath that you agreed to. There is no further negotiations [sic] and your attempts to exact further concessions which are not legal is disappointing. If you revoke consent, you will not be reimbursed for Lewis school, the district will no longer negotiate with you, and you will place your daughter's educational program at risk for the remainder of this school year as I doubt there will be a hearing for months (PMa14).

80. He also did not send me a copy of the agreement.

81. I therefore had revoked consent to the agreement; anticipating the PPS attorney would not inform the Board, on October 24, 2017, I wrote to the Board that I had revoked consent (PMa15) and shared the reasons, including that I was not given a

14

copy of the agreement (PMa16).

82.  On October 24, 2017, the PPS Board still "approved" the revoked agreement and PPS sought to enforce it against me with the N.J. OAL (DMa, Exh. F, p. 65)("DMa" refers to the appendix submitted by PPS herein on July 16, 2018, in support of its motion to enforce settlement).

83.  On or about November 4, 2017, the N.J. OAL issued an opinion and order that it would not enforce the October 4, 2017 settlement, and it set a hearing date for March 2, 2018 (DMa, p. 65; Op. at p. 4).

## IV. Events taking place Between Revoked Agreement and March 2, 2018 hearing

### A. IEP Meeting at JW without N.W.'s teachers

84.  In November 2017, the PPS CST contacted me and indicated it was interested in convening an IEP meeting to develop an IEP for N.W. for the remainder of the 2017-2018 school year. I found this curious as PPS previously refused to have an IEP for N.W. at Fusion and had wanted me to waive an IEP at The Lewis School.

85.  In November 2017, I consented to the IEP meeting and requested that PPS schedule the meeting with The Lewis School so that N.W.'s teachers, as well as N.W. herself, could participate (PMa89).

86.  PPS insisted, however, that the IEP meeting had to take place at J.W. with J.W. teachers although N.W. had never gone to

J.W. and thus none of the teachers there would know her (PMa90).

87. On January 17, 2018, PPS convened an IEP meeting without inviting any of N.W.'s teachers, over my objection that this was not right, and I attended because PPS had advised that if I did not attend, it would have the meeting without me (PMa89-90).

88. On January 17, 2018, I went to JW together with Dr. Laura Skivone, Ph.D., a clinical psychologist having previously treated N.W., for the IEP meeting.

89. However, on January 17, 2018, PPS canceled the IEP meeting when I said I intended to record it with a voice recorder; they said they did not have their own recording equipment on site.

90. Nonetheless, on January 17, 2018, Dr. Skivone and I continued to have an informal meeting for approximately an hour with the CST case manager, school psychologist, and speech/language special education teacher, when Dr. Skivone shared her opinion that it would be "preposterous" for the CST to propose an IEP involving N.W. being schooled at the JW for the remainder of the 2017-2018 school year, and she explained the basis for her opinion in relation to N.W.'s emotional and psychological profile and success at Lewis (see, PMa103-104).

91. On February 6, 2018, the CST reconvened an IEP meeting and I again attended (PMa94).

92. At the February 6, 2018 IEP meeting, the CST presented a draft IEP that proposed to abruptly transfer N.W. midyear from

16

The Lewis School to J.W. (PMa94), despite Dr. Skivone's advice on January 17, 2018, that this would be "preposterous."

93. At the February 6, 2018 IEP meeting, the CST confirmed that PPS still refused to invite N.W.'s teachers because Crisafulli was refusing to allow this.

94. At the February 6, 2018 IEP meeting, the CST itself rejected its proposed program involving N.W. being placed at JW on the reasoning additional data was needed (PMa95).

95. In response to the request for additional data, on February 14, 2018, Dr. Skivone provided her opinion that N.W. should continue her high school track at The Lewis School (PMa96-PMa97).

B. PPS motion for summary judgment alleging lack of notice

96. On or about December 6, 2017, PPS filed a motion before the N.J. OAL, seeking summary judgment on the ground I was seeking reimbursement for tuition from The Lewis School and PPS claimed it did not receive notice, pursuant to N.J.A.C. 6A:14-2.10(b), of intent to seek private school reimbursement (PMa99-PMa100), though I had sent such notice on August 31, 2017 (PMa101), and May 12, 2017 (PMa102), and N.W. was enrolled in The Lewis School on September 29, 2017 (PMa86).

97. On February 21, 2018, the N.J. OAL denied PPS's motion ruling there was a "question of fact" whether PPS had notice.

## V. Third Lewis settlement of March 2, 2018

98. On March 2, 2018, I appeared at the N.J. OAL for the

scheduled hearing.

99. After I had placed all my trial materials on counsel table and as we were about to proceed, the PPS attorney raised the question whether I didn't want to settle.

100. My initial response was "now is not the time" with the mindset this was last minute and he had since the prior October to try to settle, but his response was "now is exactly the time."

101. As the ALJ initiated the proceedings he also raised the question whether the parties had talked, and we mentioned we had just broached the subject and the ALJ invited us to talk.

102. I believe this dialogue was initiated on the record and I stated that it was my preference for proceedings to stay on record, but this request was denied and we went off the record.

103. I was excused to another room down the hall.

104. Not long after the PPS attorney and his colleague entered the room and offered a settlement involving reimbursement of the tuition I had paid for the Lewis School for the 2017-2018 school year and fifty percent toward tuition for both the next 2018-2019 and 2019-2020 school years, proposing that this would finish N.W.'s high school at The Lewis School, as a Lewis School teacher had indicated N.W. was considered a 10th grader there (PMa98).

105. I responded that I couldn't afford 50% of the tuition and would rather they pay full tuition for one year, rather than 50% for two, as we were planning on moving out of the district anyway

given all of the problems I've encountered with PPS.

106. PPS attorneys left the room to consult and came back and agreed with the two years' tuition at The Lewis School, which I agreed with.

107. The PPS attorney had a draft settlement agreement on his computer which I then took a look at, on line. I noticed that this document again had the provision that N.W. would be dis-enrolled from public school.

108. I objected to that provision and said I did not want her dis-enrolled; notably, the impact of this provision was what had caused a prior settlement to fail, as above ¶¶ 68-69.

109. PPS responded that he would insert a provision that I could re-enroll N.W. in public school, in district, and in such case the district would conduct evaluations, offer an IEP and "the agreement would be void."

110. I have a vivid recollection of this express representation which was made in the alternative courtroom, at the far-right counsel table: "the agreement would be void."

111. It was based on that express representation that I agreed to moving forward with the deal, and I would not have agreed otherwise, which I submit is confirmed by the history above, reflecting that the prior deals fell through for failure to address this contingency, namely, the necessity for PPS to remain obliged for N.W.'s "free and appropriate" education as an

alternative or backdrop to the placement under the settlement (¶¶ 62-70).

112. After that exchange, the PPS attorney left the room and then came back and expressly confirmed PPS was agreeable to the aforesaid provision and also added (which he said to me across the room): "Micki [Crisafulli] even said if you want to come back in district she would consider other placements."

113. We then talked about the reimbursement terms. I insisted I wanted to be promptly reimbursed in a lump sum of $42,194, representing the amounts I had already paid for 2017-2018 (there were additional tuition charges after 9/29/17), also a prior point of contention; the PPS attorney agreed with this.

114. The last part of our discussion related to reimbursement for next year, 2018-2019. I asked to be reimbursed tuition upon proof of payment, but PPS insisted the only way tuition reimbursement could be made was for PPS to pay on a monthly basis upon proof of payment and attendance. I was reluctant to agree with that arrangement as it placed a heavy financial strain on the family, but reluctantly agreed as we discussed the prospect of a payment plan with The Lewis School (specifically, PPS represented that in its experience The Lewis School has many times provided payment plans and urged that I should speak with Mrs. Lewis who would want to arrange a payment plan with me.

115. Throughout the morning, the PPS attorney had the draft

agreement on his computer and was making many edits to it which I was not privy to; I did not "look over his shoulder" to see the changes he was making to the document after I reviewed it as above (¶ 107), and his changes were not presented in tracked fashion.

116. The document was printed on a court printer and copies were handed to me for review and signature.

117. When I reviewed the agreement in court, I read it with the above representations in mind and nothing jumped out at me as being inconsistent with what had been expressly promised (PMa17-PMa24).

118. With this third agreement, at the time of court I considered that I had addressed the contingencies that led to failure of the prior deals, in particular, I made sure I had a copy, I solicited the express promise for lump sum reimbursement as to 2017-2018 ($42,194), and I addressed the contingency for N.W. to have a *re-enrollment option, without waivers*, as an alternative or backdrop to The Lewis School.

119. It was my understanding, as well, that there was a three-day procedural safeguard that would allow me to address any further concerns. In fact, I vividly remember sharing this in open court on March 2, 2018, and when the ALJ and all parties were present, I raised that I understood there was a three-day review period during which I could study the agreement, and the

ALJ responded he was aware the IDEA provided for a three-day review period for settlements. Notably, the instrument was not executed by PPS (PMa24).

120. Within the next three days, I more thoroughly reviewed the agreement with the benefit of time and outside the stress and constraints of the hearing.

121. With that review, I developed concerns that the agreement, as written, and could be construed inconsistently with what had been expressly promised, particularly with regard to the $42,194 reimbursement for 2017-2018 and continued viability of waivers should N.W. re-enroll in public school. (I was contemplating re-enrollment in public school at that point, if PPS would enroll N.W. in tenth grade, for a number of reasons, including unfavorable feedback from The Lewis School about a payment plan.)

122. To address my concerns, I wrote to the PPS attorney on March 6, 2018, requesting clarification (PMa25-26). Specifically, I requested clarification that I would be reimbursed the lump sum ($42,194) in 45 days of approval (PMa26), and as to the waivers, I wrote:

> Paragraph 4. Upon review, the terms of paragraph 4 are unclear. Specifically, petitioners objected to the request that N.W. had to disenroll from the District for the duration of the agreement. You agreed that petitioners could, if they chose, request that N.W. be re-enrolled in district and in such event, the district would provide evaluations and offer an IEP, which is stated in the agreement. However, the impact on remaining terms is not clear.  For example, you stated, expressly, that if this option were invoked, the agreement would be void. We

22

understood this meant that as of date of re-enrollment, the agreement would no longer be in effect. However, this is not stated in the agreement. Upon review, we request that this term be included in the agreement as otherwise, it is vague as to this option of re-enrollment (PMa26).

123. To protect N.W.'s rights as to this request, I further wrote:

> To preserve our rights, we are invoking 20 U.S.C. 1415 (f)(iv), to void the stipulation of settlement dated 3/2/2018 subject to these very limited requests for clarification.  Please let me know your response as soon as possible so we may work together in a cooperation fashion to amicably resolve this matter. (PMa26).

124. However, just ten minutes after I sent this email, the PPS attorney wrote back:

> We have been down this road before. If you want to revoke consent to the agreement, contact the Judge. We are on the record and not making changes. The District already said, and its in the agreement, it will make a lump sum payment of what you already paid, everything else will be month to month reimbursement. Your daughter is disenrolled from the District. If you don't want to go to Lewis School, you can reenroll in the District and the District will conduct evaluations and offer an IEP. Other than that I'd recommend you contact the Judge immediately for a hearing date …. [PMa27].[Etc.]

125. One difficulty I had with this response was that I did not want to revoke consent but was committed to honoring the settlement we had reached, however, I wanted the agreement to clearly state what had been represented to me during the negotiations.

126. I also note that in this exchange (and thereafter), PPS did not deny the express representations that were made to me when the settlement was reached on March 2, 2018 (PMa27-PMa39).

23

127. So I tried to work with PPS to add the clarifying language I had asked for. On March 9, 2018, I wrote to the PPS attorney, questioned whether he had consulted with his client on this settlement question (given his ten-minute reply), and asked:

> I really think we can put this to bed if the District is willing to be reasonable in discussing the requests for clarification. You have not clarified the concerns. These are very difficult decisions and I cannot predict the future. I ask you to please reconsider whether the District is willing to clarify terms of the agreement to comport with our discussions so that we may amicably resolve this matter (PMa28-PMa29).

128. PPS again promptly responded: "[t]he problem you have is that all of these issues were already decided and placed in the settlement agreement and on the record before Judge Buono. … So we do not need to change anything ..." (PMa30).

129. After further requests I made trying to solicit cooperation (on 3/10 and 3/13)(PMa30-PMa33), the PPS attorney responded on March 13, 2018, that he had spoken with his client and it would not amend the agreement but "offer its interpretation" as to issues sought to be clarified (PMa34). The proffered "interpretation" on March 13, 2018, as to waivers was:

> The agreement sets forth that its only financial obligations are what is set forth in the agreement, so it will not pay any more money for your daughter's attendance at the Lewis School for any grade level other than what is in the agreement. But your daughter is welcome to return to the District at any time (PMa34)(emphasis added).

130. Eventually, the PPS attorney confirmed that PPS would pay the $42,194 within forty-five days of approval (PMa36).

131. However, PPS refused to confirm that waivers did not apply

if N.W. were enrolled in district; I requested this confirmation
or alternatively, a different settlement (PMa37).

132. For example, on March 15, 2018, which was my last email
to PPS before its Board meeting, I wrote as follows:

> Thank you for clarifying the payment question.
> That is very helpful.
> I have reviewed our communications vs. what we
> discussed the time of the agreement and voir dire, and
> I still must ask for clarification or confirmation of
> the district's position regarding the waiver question.
> In particular, you had represented that if NW is re-
> enrolled in district, the agreement would be void. ..
> While you have confirmed NW is welcome to re-enroll and
> the District would provide evaluations and offer an
> IEP, you have yet to confirm the district's position
> regarding voiding of the contract at that point and how
> that affects waivers (PMa37).

133. In this same email, I then offered another alternative,
involving moving my family immediately to a different school
district, with a $35,000 compensatory proposal to account for
moving costs required by a prompt relocation, which was less than
the $45,000 PPS would pay under the settlement (PMa37).

134. PPS refused this alternative and offered another
"interpretation" that N.W. was allowed to return to public school
but according to PPS, she had given up any legal right to
challenge any future placement decisions while she was an in-
district student (PMa38).

135. By March 27, 2018, I did not hear back from the PPS
attorney, so I emailed him to ask if the agreement had been Board
approved; I suspected the PPS attorney would submit it for Board
approval, regardless of our conflict, given the past experience

where the Board had "approved" a settlement despite my express revocation of consent (PMa15). The PPS attorney did not respond.

136.  On March 28, 2018, I asked again if the agreement had been Board approved (PMa38); however, in making this inquiry, and throughout these conversations, I did not withdraw the objections raised in my March 6, 2018 letter, nor did I waive my daughter's right to go to public school while having all her legal rights (PMa38). For example, given our conflict, I asked PPS to advise how it would like to proceed (PMa38).

137.  On March 29, 2018, PPS submitted the agreement to the N.J. OAL for approval, representing that "the parties maintained their consent to the agreement" and that both parties requested that the March 2, 2018 instrument be entered into a final order (DMa, Exh.C, p. 19); PPS did not consult with me regarding this request before it was made and I promptly objected that it was inaccurate (DMa, Exh. C, p. 19).

138.  Later that same morning, I received an email from Crisafulli stating I would be reimbursed only $29,525.80 in forty-five days, and the rest would be paid later, in installments (PMa41); this was directly contrary to what PPS had expressly promised, in writing, before approval (above, ¶¶ 113, 130; PMa36). When I raised this issue and wrote: "This is NOT what we agreed to" (PMa42), I received the response: "that was the deal" (PMa42).

139.  On April 3, 2018, I made a formal application to the N.J. OAL, requesting that the written settlement instrument be

equitably reformed prior to approval by the OAL, to provide that
(1) payment for the 2017-2018 school year ($42,194) would be made
within forty-five days of approval, and (2) should N.W. be
enrolled in public school, the waivers in the agreement would be
void (PMa43-PMa47).

140.  After I filed my request for equitable reformation, on or
about April 13, 2018, PPS sent me a purchase order which proposed
to reimburse me for the full amount ($42,194) for 2017-2018
(PMa48); I executed the purchase order on April 23, 2018 (PMa48);
then, the next day, April 24, 2018, PPS filed a motion before the
N.J. OAL to enforce the instrument "as written" (PMa49-PMa67,
PMa70 [arguing against amending waiver language]).

141.  I replied to PPS's motion, again asserting that the
instrument should be equitably reformed as to the waiver language
should N.W. enroll in public school; I also urged that in lieu of
equitable reformation, we requested rescission, as without
reformation N.W. would not have a viable placement option (PMa71-
PMa72).

142.  On May 17, 2018, the N.J. OAL issued its Decision, denying
my request for equitable reformation and disagreeing that should
N.W. be enrolled in public school, the waivers would be void (DMa
Exh. F, p. 70). The OAL "wholeheartedly disagreed" with this
(DMa, Exh. F, p. 70).

143.  On May 29, 2018 (the Tuesday after Memorial Day), I timely
filed a motion for reconsideration of the decision enforcing a
settlement "as written" (PMa73) supported by a brief (PMa75-

27

PMa81) and detailed certification.

144. On June 20, 2018 the ALJ issued a Decision that he lacked jurisdiction to consider my motion for reconsideration (DMa, Exh. G, p. 77).

145. On July 12, 2018, I executed a lease agreement on a home in another school district, running from August 11, 2018 to May 31, 2019, and paid the security deposit for the lease. I enrolled N.W. in public school in that district (in tenth grade) on July 17, 2018 (the school district had no issue informing me of her grade level and enrolling her in tenth grade). I did this now so my daughter, N.W., would be able to go to a regular public school with students in her community while having an IEP, with legal rights, and to be freed from the retaliation, harassment, and deceitful conduct we have experienced from PPS.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

A.W. parent, o/b/o N.W.

Dated:  August 1, 2018

Mount Laurel, New Jersey 08054
P: 856-596-8900 F: 856-596-9631
www.parkermccay.com<http://www.parkermccay.com/>
[cid:image002.gif@01D05FF4.09036220]<https://www.linkedin.com/company/parker-mccay-p-a->
[cid:image003.gif@01D05FF4.09036220]<https://www.facebook.com/parkermccaypa>
[cid:image004.gif@01D05FF4.09036220]<https://twitter.com/parkermccay>


From: je [mailto:je@jamieepsteinlaw.com]
Sent: Friday, October 30, 2015 11:25 AM
To: Brett Gorman
Subject: Re: NW

its in a spreadsheet

[cid:image005.png@01D11305.E0638DC0]
On 10/30/2015 11:21 AM, Brett Gorman wrote:
Jamie:

I had the agreement typed up. I made one addition which is the last sentence in paragraph 5 which just specifically states that the parents waive any claims for attorney fees and costs. I don't think you will have an issue with this as we specifically negotiated this point yesterday and compromised in regards to therapy costs. But the board will want this specifically spelled out. Please have your client sign.

Thank you.

Brett E.J. Gorman, Esquire
Associate
School Law

[cid:image001.jpg@01D05FF4.09036220]<http://www.parkermccay.com/>
O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com<mailto:bgorman@parkermccay.com>

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900 F: 856-596-9631
www.parkermccay.com<http://www.parkermccay.com/>
[cid:image002.gif@01D05FF4.09036220]<https://www.linkedin.com/company/parker-mccay-p-a->
[cid:image003.gif@01D05FF4.09036220]<https://www.facebook.com/parkermccaypa>
[cid:image004.gif@01D05FF4.09036220]<https://twitter.com/parkermccay>


From: je [mailto:JE@JamieEpsteinLaw.com]
Sent: Thursday, October 29, 2015 6:15 PM
To: bgorman@parkermccay.com<mailto:bgorman@parkermccay.com>;
je@jamieepsteinlaw.com<mailto:je@jamieepsteinlaw.com>
Subject: NW

PLS email me a copy of the settlement asap

--
JamieEpsteinLaw.com<http://JamieEpsteinLaw.com>
Tel.: (856) 979-9925

**PMa001**

From: je <JE@JamieEpsteinLaw.com>
To: A█████ F: W█████ <apwinslow@aol.com>
Subject: Fwd: NW
Date: Thu, Nov 5, 2015 8:39 am
Attachments: image001.jpg (4K), image002.gif (2K), image003.gif (2K), image004.gif (2K), image005.png (8K)

As you can see PBOE only agrees to their change.

---------- Forwarded message ----------
From: **Brett Gorman** <bgorman@parkermccay.com>
Date: Wed, Nov 4, 2015 at 6:35 PM
Subject: RE: NW
To: je <je@jamieepsteinlaw.com>

Jamie:

I talked your revisions over with princeton and we need to use this version. This is what was agreed upon and the only change is for an already agreed upon term. It's already implied in the agreement but was explicitly stated in this version. As I already stated, this was already negotiated and Princeton agreed to reimburse therapy costs in lieu of attorney fees. Please have this version signed and returned. Thank you.

Brett E.J. Gorman, Esquire
Associate
School Law

O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900 F: 856-596-9631
www.parkermccay.com

---

From: Brett Gorman
Sent: Friday, October 30, 2015 11:27 AM
To: je
Subject: RE: NW

I made it into a pdf. Let me know if you have trouble with this. Thanks.

Brett E.J. Gorman, Esquire
Associate
School Law

[cid:image001.jpg@01D05FF4.09036220]<http://www.parkermccay.com/>
O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com<mailto:bgorman@parkermccay.com>

PARKER McCAY P.A.

**PMa002**

Subject: Fwd: NW

Date: Thu, Nov 5, 2015 12:26 pm

Attachments: NW Settlement.rtf (66K), 2015-0923 Partial Settlement Agreement2.odt (28K)

He sent another version (attached).  It appears he ████████████████████████ included our other edits (attached).

████████████████████████

---------- Forwarded message ----------

From: **Brett Gorman** <bgorman@parkermccay.com>

Date: Thu, Nov 5, 2015 at 12:07 PM

Subject: RE: NW

To: je <JE@jamieepsteinlaw.com>

Jamie:

You have not followed up on this.  But I took a look at what you sent yesterday and made two edits in paragraph five that I think addresses the parents and District's concerns.  Please let me know if this is acceptable.  Thank you.

**Brett E.J. Gorman, Esquire**

*Associate*

*School Law*

 **PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey  08054

P: 856-596-8900   F: 856-596-9631

www.parkermccay.com



**PMa003**

File No. 12174-0005

**PARKER McCAY P.A.**
Brett E.J. Gorman, Esq., Esquire
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey  08054**
**(856) 596-8900**
Attorneys for Respondent, Princeton Board of Education

| | |
|---|---|
| A.W. o/b/o N.W., | OFFICE OF ADMINISTRATIVE LAW |
| Petitioners, | OAL Docket No.: EDS-03738-17 |
| | AGENCY REF. NO. 2017-2576 |
| v. | CIVIL ACTION |
| PRINCETON BOARD OF EDUCATION. | **STIPULATION OF SETTLEMENT** |
| | **AND GENERAL RELEASE** |
| Respondent | |

This Settlement Agreement and General Release (the "Agreement") is entered into by and between A.W. o/b/o N.W. ("Petitioners"), and the Princeton Board of Education ("District") with its mailing office located at 25 Valley Road, Princeton, New Jersey 08540 (the Boards and Petitioners collectively referred to as the "Parties").

**WHEREAS**, N.W. is eligible for the provision of special education and related services under 20 U.S.C. §1415 et seq. and N.J.A.C. 6A:14-1.1 et seq.; and

**WHEREAS**, N.W. is domiciled in Princeton, and

**WHEREAS,** the Board is responsible for developing and implementing an I.E.P. for N.W. and

**WHEREAS**, a dispute arose regarding the provision of special education and related services to N.W.; and

1

**PMa004**

**WHEREAS**, the Parties in good faith have negotiated concerning this matter and have a desire to settle this matter in an amicable way, hereby agree as follows:

1.      The District shall reimburse the parent in the amount of $40,802 for the cost of tuition at the Lewis School.  The District shall issue this payment on a monthly basis upon receipt of proof of payment and attendance of N.W. at the Lewis School.

2.      An IEP meeting will be held in January 2018 to develop an IEP for N.W. for the 2018-2019 school year.  It is understood and agreed that the placement for the 2018-2019 school year shall be the Princeton High School and both parties agree that this shall be N.W.'s placement and that neither party can challenge that placement through a due process petition unless all parties agree otherwise at the aforementioned IEP meeting.  Both parties reserve their rights as to accommodations, modifications, goals, and other issues related to the program at the Princeton High School but the parents cannot challenge the appropriateness of that placement.  It is further understood that should the parent seek a placement other than the Princeton High School for the 2018-2019 school year, the parent will be solely responsible for the costs of that placement and will reserve all rights for the 2019-2020 school year.  Should any petition for due process be filed, it is understood that the "stay-put" placement shall be the Princeton High School and the IEP developed as a result of the meeting set forth in this paragraph.

3.      At the IEP meeting set forth in paragraph 2, the District will discuss transition services for N.W. which will include counseling services during the Spring of 2018 and programming for N.W. at the Princeton High School during the Summer of 2018.  All of these services will be finalized at the IEP meeting set forth in paragraph 2.

2

**PMa005**

4.      The parents agree to waive transportation from the District for N.W. throughout the course of this agreement.

5.      During the course of this agreement, N.W. shall be dis-enrolled from the District, the District will not offer an IEP or supervise N.W.'s placement at the Lewis School.

6.       In consideration of the above, Petitioner, individually and on behalf of N.W., hereby fully and completely release the District, its members, officers, administrators, agents, servants, employees, or assigns from any and all claims they have or may have accrued against the District, under any law, regulation, or legal theory, and including, without limitation, Section 504 of the Rehabilitation Act of 1973, 29 *U.S.C.* § 794(a), §705(8), the Family Education Rights and Privacy Act, 20 *U.S.C.* §1232g, *et seq.*, 29 *U.S.C.* §794(a), 42 *U.S.C.* §1983, 42 *U.S.C.* §1988, 29 *U.S.C.* §705(20), the Individuals with Disabilities In Education Act ("IDEA"), 20 *U.S.C.* §1400, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, the Rehabilitation Act of 1973, 20 U.S.C. §7801, Title II of the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, *N.J.A.C.* 6A:14-1.1, *et seq.*, *N.J.A.C.* 6A:14-3.7, Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* §2000, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §621,*et seq.*, all as amended, any statutes of New Jersey including but not limited to the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1, *et seq.*, or any other claims which have been or could have been asserted by N.W. or their petitioners on behalf of N.W., in any forum arising out of or connected with N.W.'s education by the District, including but not limited to, claims for attorney's and other professional fees and costs, reimbursement related to any unilateral and/or out-of-district placement for N.W., whether known or unknown, or to the extent permitted by applicable law through June 30, 2018. The Parties further agree by way of specific example, but

3

**PMa006**

without limitation, to waive their right to institute any actions against the District such as, administrative actions, civil actions, complaint investigations, or OCR investigations.

7.    The Petitioner further agrees, jointly and severally, to indemnify and hold forever harmless the District, its members, officers, employees, administrators, agents, servants, and assigns from and against any and all claims, complaints, suits, demands, costs, expenses, evaluations, or legal fees other listed than above, penalties, losses, damages, judgments, challenges, or liabilities of any kind, successful or unsuccessful, brought or made by anyone, including N.W. or anyone acting on behalf of N.W., at any time subsequent to the effective date of this Agreement, and in any judicial or administrative court, tribunal, or other forum, in connection with or in any way related to the duties and responsibilities of the District toward N.W., including but not limited to, claims or actions arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., N.J.S.A. 18A:46-1 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq., N.J.A.C. 6A:14-1 et seq., claims or actions arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 104.1 et seq., claims or actions for compensatory education, claims or actions arising under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, or any federal administrative regulations promulgated thereunder, 34 C.F.R. § 99 et seq., claims or actions arising under the New Jersey Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 et seq., claims or actions arising under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., claims or actions arising under the Anti-Bullying Bill of Rights Act ("ABBRA"), N.J.S.A. 18A:37-13 et seq., claims or actions arising under Title IX of

PMa007

the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., claims or actions arising under 42 U.S.C. § 1983, claims or actions for personal injury or property destruction, or any other claims or actions whether brought pursuant to statute, common law, or otherwise, through June 30, 2018, as long as the District fulfills its obligation in accordance with the terms of this Agreement.

8.      The Parties have reached this compromise to avoid the expense, inconvenience, and potential acrimony of a due process hearing under the special education laws. It is understood that the execution of this Agreement does not constitute an admission by the District. The District specifically disclaims any liability to N.W. except as set forth in this Agreement.

9.      This Agreement contains the entire Agreement and understanding between the Petitioners and Respondents and constitutes a full and final Agreement on any and all issues. This Agreement shall be governed by the laws of the State of New Jersey.

10.     The Parties have entered into this Agreement freely and voluntarily with a full understanding of their rights and the contents of this Agreement. The Parties acknowledge that they had the opportunity to consult with legal counsel or a representative of their choice and that they reviewed this Agreement in detail with their counsel or representative and fully understand its requirements and limitations.

11.     This Agreement is dispositive of all issues in dispute between the Parties hereto, and is intended to constitute a final resolution of the dispute between the Parties.

12.     The District's financial obligation, as set forth herein, shall represent the total and maximum financial responsibility of the Board toward N.W. from the beginning of time through June 30, 2018.

**PMa008**



↩ Reply all | ∨      🗑 Delete    Junk | ∨      •••

## settlement



A▮▮▮▮ W▮▮▮▮                                          👍     ↩ Reply all | ∨
Fri 10/6, 9:14 AM
bgorman@parkermccay.com  ☒

Sent Items

        You replied on 10/9/2017 9:54 AM.

Brett,

Can you please send me a copy of the settlement agreement from Wednesday?

Also I need to ask whether the District would consider amending the reimbursement provision regarding the Lewis tuition so I may be reimbursed the out of pocket cost I have incurred without having to wait out the full school year. Please hear me out.

The fact of the matter is that I had to pay all the tuition in order for N▮▮▮ to continue in school for one day. Lewis would not let her in the door on 10/2 unless I paid in full. I had no choice as I did not have anywhere else I could send her to school without traumatizing her so I borrowed on my home equity to pay the tuition.  I have agreed to withdraw N▮▮▮ from the school district for the year and waived all claims through next June.  If something were to happen and she could no longer attend Lewis, then I am out of the tuition from Lewis, not getting reimbursed and her schooling the rest of the year is entirely on me which necessarily would require even more expense.  I think this is fundamentally unfair and for these reasons would like to ask the District to reconsider.  It should make no difference whether she attends Lewis or not as they are off the hook for the year.  I also add I have done research and seen other settlement agreements with waivers like these and the parents are reimbursed their tuition and not required to wait out the full school year as Princeton has proposed.  Please reconsider and let me know.  Thank you.



**PMa009**

Re: settlement

# Re: settlement



A███████ W████

Mon 10/9, 9:5█ AM
🖙 Reply all | ✔   🗑 Delete   Junk | ✔   •••   ↩ Reply all | ✔

bgorman@parkermccay.com ✕

Sent Items

You replied on 10/16/2017 9:05 AM.

addendum 10 9 2017.... ✔
340 KB

✕ Show all 1 attachments (340 KB)   Download   Save to OneDrive - W████ Law Firm

Hi Brett,

Further to the note below, please see annexed. I ask that an amended agreement per the annexed addendum be provided and submitted to Board for approval on 10/24.2017. Thank you,

A██████

**From:** A██████ W██████
**Sent:** Friday, October 6, 2017 9:14:43 AM
**To:** bgorman@parkermccay.com
**Subject:** settlement

Brett,

Can you please send me a copy of the settlement agreement from Wednesday?

Also I need to ask whether the District would consider amending the reimbursement provision regarding the Lewis tuition so I may be reimbursed the out of pocket cost I have incurred without having to wait out the full school year. Please hear me out.

The fact of the matter is that I had to pay all the tuition in order for N███ to continue in school for one day. Lewis would not let her in the door on 10/2 unless I paid in full. I had no choice as I did not have anywhere else I could send her to school without traumatizing her so I borrowed on my home equity to pay the tuition. I have agreed to withdraw N███ from the school district for the year and waived all claims through next June. If something were to happen and she could no longer attend Lewis, then I am out of the tuition from Lewis, not getting reimbursed and her schooling the rest of the year is entirely on me which necessarily would require even more expense. I think this is fundamentally unfair and for these reasons would like to ask the District to reconsider. It should make no difference whether she attends Lewis or not as they are off the hook for the year. I also add I have done research and seen other settlement agreements with waivers like these and the

ADDENDUM TO SETTLEMENT AGREEMENT OF OCTOBER 4, 2017

I, A████  P.W████ hereby state that based on further review and consultation my continued assent to the terms of the proposed, unapproved, unexecuted (by the District) settlement agreement of October 4, 2017, is subject to the following amended terms and conditions:

    A.  Paragraph 1 to provide:

    "District shall reimburse the parent the amount of $40,802 for the cost of tuition and enrollment at the Lewis School. Proof of this payment is acknowledged.  District further acknowledges that parent was required to make this payment in full for N.W. to initiate attendance at the Lewis School for the 2017-2018 school year and District shall reimburse parent this amount within thirty days of approval hereof."

    B.  Paragraph 7:

    All references to "subsequent to date of this agreement" (e.g., line 6, was this addressed in draft?), shall be amended to state "up to the date of this agreement" (as was discussed on 10-4-2017)

    C.  Paragraph 17:

    Delete; this paragraph is redundant as it is stated twice (paragraphs  10 and 17 are duplicates)(paragraph numbers referenced here are based on first draft of 10-4-2017 agreement – second draft was not provided to parent)

    D.  Paragraph 20

    Delete; settlement agreements are subject to OPRA and issue is currently pending before the Appellate Division

The following additional paragraph needs to be included:

In the event that N.W. is involuntarily terminated by the Lewis School during the 2017-2018 school year and not permitted to continue her schooling there for 2017-2018, then N.W. shall be considered re-enrolled as a District student and the District shall remain responsible for providing N.W. with a free and appropriate public education for the balance of the 2017-2018 school year.  Waiver set forth in paragraph 6 continue in force if the District provides alternative placement(s) for balance of the 2017-2018 school year mutually agreeable with parent. (Note, we consider this an unlikely contingency but needs to be addressed)

October 9, 2017                              By:_███████████████_____

↩ Reply all | ∨     🗑 Delete    Junk | ∨    •••

# Re: settlement

AW   A▇▇▇▇ W▇▇▇▇                                    👍   ↩ Reply all | ∨
     Mon 10/16, 9:05 AM
     bgorman@parkermccay.com  ⯆

Sent Items

Brett,

I do not know why you have not responded to my requests per below.  Can you please get back to me and provide a copy of an amended agreement as well as a copy of the agreement from 10/4/2017 which should have been provided earlier?

My requests are reasonable and fair and do not materially impact terms of the proposed settlement.

I appreciate your cooperation.



**From:** A▇▇▇▇ W▇▇▇▇
**Sent:** Monday, October 9, 2017 9:54:49 AM
**To:** bgorman@parkermccay.com
**Subject:** Re: settlement

Hi Brett,

Further to the note below, please see annexed. I ask that an amended agreement per the annexed addendum be provided and submitted to Board for approval on 10/24.2017.  Thank you,

A▇▇▇▇

**From:** A▇▇▇▇ W▇▇▇▇
**Sent:** Friday, October 6, 2017 9:14:43 AM
**To:** bgorman@parkermccay.com
**Subject:** settlement

Brett,

Can you please send me a copy of the settlement agreement from Wednesday?

Also I need to ask whether the District would consider amending the reimbursement provision regarding the Lewis tuition so I may be reimbursed the out of pocket cost I have incurred without having to wait out the full school year. Please hear me out.

**PMa012**

## Settlement amendments

↩ Reply all | ∨    🗑 Delete    Junk | ∨    •••



A▮▮▮▮▮ W▮▮▮▮▮
Wed 10/18, 1:31 PM
bgorman@parkermccay.com  ⌄

NaomiDPsettlement

Agreement Reimburs...  ⌄
285 KB

⌄ Show all 1 attachments (285 KB)    Download    Save to OneDrive - W▮▮▮ Law Firm

Brett,

Annexed is another exemplary settlement where the Board agreed to reimburse parents tuition within 30 days of approval and then for future years, on Sept. 1 for ensuing school year.

The regulations cited do not relate to parental reimbursement. Also, they do not forbid tuition payments in advance of services. I bring to your attention NJAC 6A:23A:18.3(h)3i:

"i. Option 1: A sending district board of education shall pay the APSSD no later than the first day of each month prior to the services being rendered "

I am at loss to understand why you have not provided me with a copy of the agreement from October 4, 2017 and resist reasonable amendments to resolve this matter.

1. If you do not provide me with a copy of the document I signed on October 4, 2017 by end of the day today, I revoke consent.
2. If you do not agree to work with me to address the amendments required as per my email of October 9, 2017 and the unforeseen issues and circumstances I have raised, I revoke consent.



**PMa013**

1/2

 

↻ Reply all | ⌄   🗑 Delete   Junk | ⌄   •••

# RE: Settlement amendments

 Brett Gorman <bgorman@parkermccay.com>          👍   ↻ Reply all | ⌄
Wed 10/18, 1:59 PM
A▇▇▇ W▇▇▇ ⌄

NaomiDPsettlement

An▇▇▇▇

You have made representations to the court under oath that you have accepted the agreement. The board is moving ahead with the settlement agreement that you stated under oath that you agreed to. There is no further negotiations and your attempts to exact further concessions which are not legal is disappointing. If you revoke consent, you will not be reimbursed for Lewis school, the district will no longer negotiate with you, and you will place your daughter's educational program at risk for the remainder of this school year as I doubt there will be a hearing for months.

Thank you.


Brett E.J. Gorman, Esquire
Counsel
School Law

O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900
F: 856-596-9631
www.parkermccay.com

_____

From: A▇▇▇ W▇▇▇ [An▇▇▇▇winslowlawfirm.com]
Sent: Wednesday, October 18, 2017 1:31 PM
To: Brett Gorman
Subject: Settlement amendments

Brett,


Annexed is another exemplary settlement where the Board agreed to reimburse parents tuition within 30 days of approval and then for future years, on Sept. 1 for ensuing school year.

**PMa014**



███████ Street
Princeton, New Jersey 08542
609-924-5200  Fax 609-924-5277
An███████████.com

October 24, 2017

<u>Via Hand-Delivery</u>
Stephanie Kennedy, Board Secretary
Princeton Public Schools Board of Education
25 Valley Road
Princeton, NJ 08540

> Re:    Board Agenda Item:
>        6. Settlement Agreement /Special Education #100417-01
>        <u>In the matter of A.W. o/b/o N.W. v. Princeton Public Schools</u>

Dear Ms. Kennedy:

I am the parent/party in the above-referenced matter which is listed on the Board's agenda for this evening (Agenda item # N.6).

I am writing to inform that I have revoked my consent to the settlement agreement for the reasons stated in the annexed correspondence.

Thank you for your kind attention to this matter.

                                        Sincerely,



cc.    Mr. Brett Gorman (via email)

**PMa015**



████ Street
Princeton, New Jersey 08542
609-924-5200  Fax 609-924-5277
████████.com

Via Email :bgorman@parkermccay.com
Brett E.J. Gorman, Esq.
PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054

October 24, 2017

Re:    Settlement agreement in:
       A.W. o/b/o N.W. vs. Princeton Public Schools (Agency: 2017-25766)

Dear Brett:

I am writing to follow up again regarding our email correspondence in the above matter and to confirm that I have revoked my consent to the settlement agreement for the following reasons.

As you know, three copies of the agreement were executed in court on October 4, 2017, after a brief review, and I was not provided with a copy. I requested that you provide me with a copy on October 6, 2017 and October 16, 2017, but was not provided with one. Then on October 18, 2017, I informed that I revoked consent if a copy was not provided to me by the end of the day October 18, 2017, and as of this writing, I have not been provided a copy. My consent is thus revoked for this reason.

Also, separately, on October 6, 2017 and October 9, 2017, I requested reasonable amendments to the agreement which I believe do not materially affect its basic terms. Specifically, I requested that reimbursement be provided within thirty days of Board approval (as to the proof of payment already provided), which I understand is a standard term found in other settlements which I shared with you and are annexed. Additionally, I requested that we add a contingency clause whereby in the event N.W. were to be involuntarily terminated from her current placement during the 2017-2018 school year, the District would remain responsible to provide her with an education; while we do not anticipate this to be a likely event, the contingency needs to be addressed so N.W.'s basic educational rights are protected given the other extensive waivers set forth in the agreement. We also further learned, after October 4, 2017, that there are separately-billed tuition charges at N.W.'s school not previously known; while these are relatively minimal, we understood the intent of the settlement was to cover N.W.'s full tuition for the 2017-2018 school year, so I brought this new fact to your attention.

On October 18, 2017, I informed that if the District was unwilling to work with me to amicably address these rather nominal amendments and unforeseen circumstances, I would revoke my consent. As per your email of October 18, 2017, the response I received was that there would be no further negotiations. Therefore, I revoke my consent for this reason. I believe my requests are reasonable and I am acting in good faith in seeking to amicably resolve this matter. Be assured that I remain willing to resolve this matter and would request your kind cooperation to that end. Thank you.

Sincerely,



cc.    Stephanie Kennedy, Board Secretary

**PMa016**

File No. 12174-0005

**PARKER McCAY P.A.**
Brett E.J. Gorman, Esq., Esquire
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey  08054**
**(856) 596-8900**
Attorneys for Respondent, Princeton Board of Education

| | |
|---|---|
| A.W. o/b/o N.W., | OFFICE OF ADMINISTRATIVE LAW |
| Petitioners, | OAL Docket No.: EDS-03738-17 |
| | AGENCY REF. NO. 2017-2576 |
| v. | CIVIL ACTION |
| PRINCETON BOARD OF EDUCATION. | **STIPULATION OF SETTLEMENT** |
| Respondent | **AND GENERAL RELEASE** |

This Settlement Agreement and General Release (the "Agreement") is entered into by and between A.W. o/b/o N.W. ("Petitioners"), and the Princeton Board of Education ("District") with its mailing office located at 25 Valley Road, Princeton, New Jersey 08540 (the Boards and Petitioners collectively referred to as the "Parties").

**WHEREAS**, N.W. is eligible for the provision of special education and related services under 20 U.S.C. §1415 et seq. and N.J.A.C. 6A:14-1.1 et seq.; and

**WHEREAS**, N.W. is domiciled in Princeton, and

**WHEREAS,** the Board is responsible for developing and implementing an I.E.P. for N.W. and

**WHEREAS**, a dispute arose regarding the provision of special education and related services to N.W.; and

1

**PMa017**

**WHEREAS**, the Parties in good faith have negotiated concerning this matter and have a desire to settle this matter in an amicable way, hereby agree as follows:

1.      The District shall reimburse the parent in an amount not to exceed $42,194 for all costs associated with N.W.'s tuition at the Lewis School for the 2017-2018 school year and in an amount not to exceed $45,000 for the 2018-2019 school year.  For the costs already made by Petitioner for the 2017-2018 school year, the District shall issue the payment in a lump sum but the remaining costs, as well as the costs for the 2018-2019 school year, shall be made on a monthly basis.  All payments made by the District shall be issued upon receipt of proof of payment and attendance of N.W. at the Lewis School within forty five (45) days of receipt of the aforementioned documentation.

2.      It is understood that all of the District's obligations under any law; including but not limited to the Individuals with Disabilities Education Act, Section 504, the New Jersey Law Against Discrimination, and the Americans with Disabilities Act; shall terminate on June 30, 2019 and the District's sole financial and educational obligations are the financial terms set forth in this agreement.

3.      The parent agree to waive transportation from the District for N.W. throughout the course of this agreement.

4.      During the course of this agreement, N.W. shall be dis-enrolled from the District and the District will not offer an IEP or supervise N.W.'s placement at the Lewis School. However, during the course of this agreement, should the Lewis School no longer be appropriate and N.W. seeks to return to the District, the District will provide evaluations and an IEP for

2

**PMa018**

placement at a program within the District. But the District's sole financial obligations to N.W. shall be what is set forth in paragraph 1.

5. Petitioners shall dismiss with prejudice her federal court complaint currently pending under docket number 3:17-cv-11432 and shall withdraw her request for evaluations from the District.

6. In consideration of the above, Petitioner, individually and on behalf of N.W., hereby fully and completely release the District, its members, officers, administrators, agents, servants, employees, or assigns from any and all claims they have or may have accrued against the District, under any law, regulation, or legal theory, and including, without limitation, Section 504 of the Rehabilitation Act of 1973, 29 *U.S.C.*§ 794(a), §705(8), the Family Education Rights and Privacy Act, 20 *U.S.C.* §1232g, *et seq.*, 29 *U.S.C.* §794(a), 42 *U.S.C.* §1983, 42 *U.S.C.* §1988, 29 *U.S.C.* §705(20), the Individuals with Disabilities In Education Act ("IDEA"), 20 *U.S.C.* §1400, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, the Rehabilitation Act of 1973, 20 U.S.C. §7801, Title II of the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, *N.J.A.C.* 6A:14-1.1, *et seq.*, *N.J.A.C.* 6A:14-3.7, Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* §2000, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §621,*et seq.*, all as amended, any statutes of New Jersey including but not limited to the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1, *et seq.*, or any other claims which have been or could have been asserted by N.W. or their petitioners on behalf of N.W., in any forum arising out of or connected with N.W.'s education by the District, including but not limited to, claims for attorney's and other professional fees and costs, reimbursement related to any unilateral and/or out-of-district placement for N.W., whether known or unknown, or to the extent permitted by

3

applicable law through June 30, 2019. The Parties further agree by way of specific example, but without limitation, to waive their right to institute any actions against the District such as, administrative actions, civil actions, complaint investigations, or OCR investigations.

7.     The Petitioner further agrees, jointly and severally, to indemnify and hold forever harmless the District, its members, officers, employees, administrators, agents, servants, and assigns from and against any and all claims, complaints, suits, demands, costs, expenses, evaluations, or legal fees other listed than above, penalties, losses, damages, judgments, challenges, or liabilities of any kind, successful or unsuccessful, brought or made by anyone, including N.W. or anyone acting on behalf of N.W., at any time subsequent to the effective date of this Agreement, and in any judicial or administrative court, tribunal, or other forum, in connection with or in any way related to the duties and responsibilities of the District toward N.W., including but not limited to, claims or actions arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., N.J.S.A. 18A:46-1 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq., N.J.A.C. 6A:14-1 et seq., claims or actions arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 104.1 et seq., claims or actions for compensatory education, claims or actions arising under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, or any federal administrative regulations promulgated thereunder, 34 C.F.R. § 99 et seq., claims or actions arising under the New Jersey Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 et seq., claims or actions arising under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., claims or actions arising under the Anti-Bullying Bill of

4

**PMa020**

Rights Act ("ABBRA"), N.J.S.A. 18A:37-13 et seq., claims or actions arising under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., claims or actions arising under 42 U.S.C. § 1983, claims or actions for personal injury or property destruction, or any other claims or actions whether brought pursuant to statute, common law, or otherwise, through the date of the agreement, as long as the District fulfills its obligation in accordance with the terms of this Agreement.

8.      The Parties have reached this compromise to avoid the expense, inconvenience, and potential acrimony of a due process hearing under the special education laws. It is understood that the execution of this Agreement does not constitute an admission by the District. The District specifically disclaims any liability to N.W. except as set forth in this Agreement.

9.      This Agreement contains the entire Agreement and understanding between the Petitioners and Respondents and constitutes a full and final Agreement on any and all issues. This Agreement shall be governed by the laws of the State of New Jersey.

10.     The Parties have entered into this Agreement freely and voluntarily with a full understanding of their rights and the contents of this Agreement.  The Parties acknowledge that they had the opportunity to consult with legal counsel or a representative of their choice and that they reviewed this Agreement in detail with their counsel or representative and fully understand its requirements and limitations.

11.     This Agreement is dispositive of all issues in dispute between the Parties hereto, and is intended to constitute a final resolution of the dispute between the Parties.

12.     The District's financial obligation, as set forth herein, shall represent the total and maximum financial responsibility of the Board toward N.W. from the beginning of time

5

PMa021

through June 30, 2018.

13.     This Agreement shall fully resolve all issues between the Parties, including all issues that were raised, or could have been raised, in the due process petition filed by the Parent. Upon final execution, this Agreement shall be furnished to the Office of Administrative Law, thus dispensing with and forever dismissing the matters above. The Parent fully agree to take any additional action that may be necessary to ensure the dismissal/withdrawal with prejudice of the aforementioned litigation and/or due process petition.

14.     This Agreement represents the compromise of disputed claims and shall never be treated as an admission of liability by either party for any purposes whatsoever. This Agreement cannot be construed or interpreted as an admission on the part of the Board that it has failed to provide N.W. with a free and appropriate public education for the relevant time period or any other period of time, or that the program/placement as provided herein is required to provide N.W. with a free and appropriate public education any period of time.

15.     The "WHEREAS" clauses of this Agreement are provided merely for background purposes, and it is expressly understood that such clauses are not material terms and conditions of this Agreement and shall carry no legal force and effect.

16.     The Petitioner acknowledge that they have read and understand the terms of this Agreement, that they have had the opportunity to have the Agreement reviewed by counsel, that they are satisfied with the advice of their respective counsel, and that they are entering into this Agreement knowingly, freely, voluntarily, without coercion and not under the influence of anything or anyone.

17.     No party shall be deemed a "prevailing party" as a result of this agreement.

6

PMa022

18.     The Petitioner agrees and acknowledges that this Agreement is subject to approval by the Princeton Board of Education during its next regularly scheduled meeting following the execution of this Agreement.  The agreement will be recommended for approval by the board solicitor.

19.     The Petitioner agrees that the terms of this Agreement shall remain strictly confidential to the fullest extent permitted by law, and they shall not share or communicate the terms of same with any other individual, unless enforcement of same is sought by either party in a court of law.  The agreement may be shared with therapists, potential out of district schools, professionals, or state agencies.

20.     This Agreement shall be interpreted, enforced, and governed under the laws of the State of New Jersey.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21.     If, during the term of this Agreement, a specific clause of the Agreement is determined to be illegal or in violation of any Federal or State law, the remainder of the Agreement shall be affected by such a ruling and shall remain in full force and effect.  This Agreement may only be amended in writing by way of a document signed by all Parties.

7

**PMa023**

**IN WITNESS HEREOF**, the Parties have set their hands this____ day of _____

2017.


BY: _____ _____        DATED: _____
     Board President, Princeton
     Board of Education


BY: _____        DATED: _____
     Board Secretary, Princeton
     Board of Education

Petitioners

BY: _____        DATED: ___3/ 2/ 2018___
     A.W. o/b/o N.W., Petitioners


4819-4691-7713, v. 1

8

Subject **Re: NW v. Princeton**

From    A████ (████ P. W█ Esq. <█████.com>

To      Brett Gorman <bgorman@parkermccay.com>

Date    2018-03-06 12:38

• 3 6 2018 letter to BGorman.pdf (~77 KB)

Please see annexed. Thank you for your anticipated cooperation.

---

A████ (████ P. W█ Esq.
W████ LAW LLC
██████ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-01 18:11, A████ (████ P. W█ Esq. wrote:

That would depend upon what time you finish and what the judge decides. He may want to adjourn or forge ahead.

---

A████ (████ P. Wi█ Esq.
W████ LAW LLC
██████ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-01 17:00, Brett Gorman wrote:

An████

Please advise if you plan on having any witnesses tomorrow, should the District rest.  Thank you.

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

**PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey 08054

P: 856-596-8900   F: 856-596-9631

www.parkermccay.com



**PMa025**

Dear Mr. Gorman:

We have been through this process once before, and the previous deal fell through when the District refused to consider reasonable amendments to clarify the agreement. Upon review, we believe some clarification is again necessary which is understandable given the time constraints involved when the issues were discussed and papers drafted. We thus ask for the District's cooperation so that we may amicably finalize this deal. Upon review, we need to clarify the below:

1. Paragraph 1. Regarding reimbursement for 2017-2018 school year, we had discussed the lump sum reimbursement will be paid in full upon approval of the agreement and not on a monthly basis. Please confirm the lump sum of $42,194 will be paid upon Board approval (proof of payment has been provided) and that petitioners are not required to wait until after the end of the 2017-2018 school year to provide attendance records to receive this reimbursement;

2. Paragraph 4. Upon review, the terms of paragraph 4 are unclear. Specifically, petitioners objected to the request that N.W. had to disenroll from the District for the duration of the agreement. You agreed that petitioners could, if they chose, request that N.W. be re-enrolled in district and in such event, the district would provide evaluations and offer an IEP, which is stated in the agreement. However, the impact on remaining terms is not clear. For example, you stated, expressly, that if this option were invoked, the agreement would be void. We understood this meant that as of date of re-enrollment, the agreement would no longer be in effect. However, this is not stated in the agreement. Upon review, we request that this term be included in the agreement as otherwise, it is vague as to this option of re-enrollment.

I also would like to bring to your attention the following. We had discussed that petitioners have concerns regarding the process of reimbursement for 2018-2019 as placing undue financial stress on the family. You represented there is no other option available for the District to support N.W. at The Lewis School for 2018-2019. You recommended that we reach out to The Lewis School to discuss a payment plan and that in your experience, you have had many children placed at The Lewis School pursuant to payment plans. On March 5, 2018, we asked The Lewis School about a payment plan. We were advised the request would need to be approved by Ms. Lewis and also by the school's Board. Thus, it appears it will take some time to hear back about a possible payment plan.

We would like to inform the District that in the event there is no payment plan, petitioners reserve the right to re-enroll N.W. in district pursuant to paragraph 4, above, which is another reason why this paragraph needs to be clearly worded. Additionally, we would ask for the District's feedback that if she were re-enrolled in district, whether she may be enrolled at her current grade level at The Lewis School or as a tenth grader for 2018-2019.

To preserve our rights, we are invoking 20 U.S.C. 1415 (f)(iv), to void the stipulation of settlement dated 3/2/2018 subject to these very limited requests for clarification. Please let me know your response as soon as possible so we may work together in a cooperation fashion to amicably resolve this matter. We remain open to any other thoughts or proposals you may have on these issues.

Thank you for your anticipated cooperation.

**PMa026**

| Compose | Reply | Reply a | Forwar | Delete | Move | Print | ❶Spam | Mark | More |

## RE: NW v Princeton

Message 16 of 20

| From | **Brett Gorman <bgorman@parkermccay.com>** |
| To | 'A████ (████ P. Wi████ Esq.' ███████.com> |
| Date | **2018-03-06 12:49** |

An████

We have been through this before.  If you want to revoke your consent to the agreement, contact the Judge.  We are on the record and not making changes.  The District already said, and it's in the agreement, it will make a lump sum payment of what you paid already, everything else will be month to month reimbursement.  Your daughter is dis-enrolled from the District.  If you don't want to go to Lewis School, you can reenroll in the District and the District will conduct evaluations and offer an IEP.  Other than that, I'd recommend you contact the Judge immediately for a hearing date.

But; as this is the second time in which you have revoked consent to an agreement that was made at the OAL, before a Judge, and the District incurred legal costs for preparation and participation in two hearing dates that did not take place but are now necessary as a result of your conduct; the District will have no other choice but to seek attorney fees pursuant to the IDEA for unreasonably protracting litigation.  I hope that you do not continue down this road.

Thank you.

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

**PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey  08054

P: 856-596-8900    F: 856-596-9631

www.parkermccay.com



**PMa027**

| Compose | Reply | Reply a | Forwar | Delete | Move | Print | ❶Spam | Mark | More |

## Re: NW v Princeton

Message 137 of 204

From    A████ (███ P. W████ Esq. <████████.com> 👤⁺

To      **Brett Gorman <bgorman@parkermccay.com>** 👤⁺

Date    **2018-03-09 09:04**

Brett,

You are right - we have been down this road before and it was unsettling. Are you sure this is the position your client would like to take again? Settlement decisions are up to the client, not the attorney, so in taking this position, can I understand you have consulted with your client and obtained the feedback that this is how the Board would like to address parental concerns and address us in this matter?

I really think we can put this to bed if the District is willing to be reasonable in discussing the requests for clarification. You have not clarified the concerns.  These are very difficult decisions and I cannot predict the future.  I  ask you to please reconsider whether the District is willing to clarify terms of the agreement to comport with our discussions so that we may amicably resolve this matter.

Thank you for your anticipated cooperation.

---
A████ (███       P. Wi████   Esq.
W
Princeton, NJ 08542
(609)-924-5200


On 2018-03-06 12:49, Brett Gorman wrote:

> An████

> We have been through this before.  If you want to revoke your consent to the agreement, contact the Judge. We are on the record and not making changes.  The District already said, and it's in the agreement, it will make a lump sum payment of what you paid already, everything else will be month to month reimbursement.  Your daughter is dis-enrolled from the District.  If you don't want to go to Lewis School, you can reenroll in the District and the District will conduct evaluations and offer an IEP.  Other than that, I'd recommend you contact the Judge immediately for a hearing date.

> But; as this is the second time in which you have revoked consent to an agreement that was made at the OAL, before a Judge, and the District incurred legal costs for preparation and participation in two hearing dates that did not take place but are now necessary as a result of your conduct; the District will have no other choice but to seek attorney fees pursuant to the IDEA for unreasonably protracting litigation.  I hope that you do not continue down this road.

> Thank you.

**PMa028**

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

 **PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey  08054

P: 856-596-8900    F: 856-596-9631

www.parkermccay.com

---

**From:** A███ (███ P. W████ Esq. [mailto:███████.com]
**Sent:** Friday, March 09, 2018 9:04 AM
**To:** Brett Gorman
**Subject:** Re: NW v Princeton

Brett,

You are right - we have been down this road before and it was unsettling. Are you sure this is the position your client would like to take again? Settlement decisions are up to the client, not the attorney, so in taking this position, can I understand you have consulted with your client and obtained the feedback that this is how the Board would like to address parental concerns and address us in this matter?

I really think we can put this to bed if the District is willing to be reasonable in discussing the requests for clarification. You have not clarified the concerns.  These are very difficult decisions and I cannot predict the future.  I ask you to please reconsider whether the District is willing to clarify terms of the agreement to comport with our discussions so that we may amicably resolve this matter.

Thank you for your anticipated cooperation.

---



Princeton, NJ 08542
(609)-924-5200

**PMa029**

@ Help                                                                                                    Close

Compose      Reply     Reply a     Forwar     Delete     Move     Print     ❶Spam     Mark     More

**Re: NW v Princeton**                                                                    Message 49 of 117

From    A███████ (████ P. W█████ Esq. <████████████.com> 👤⁺
To      Brett Gorman <bgorman@parkermccay.com> 👤⁺
Date    2018-03-10 09:43

Brett,

The agreement does not say the Board will reimburse the lump sum "upon approval." If you believe
this term is already in the agreement, then what is the objection to making an amendment to say
that specifically?

The agreement also has many waivers that are not consistent with a return to district. The
agreement needs to state the waivers do not apply upon return to district. It does not say
that. During negotiations, you said the agreement would be "void" upon return. If you believe this
term is already implied in the agreement, then again, what is the objection to making an
amendment to say that specifically to avoid misunderstanding and obtain clarity?

Also, why not answer my question about my daughter's grade level upon enrollment? Are we not
entitled to know the answer to this question from the District.?

My concerns are completely valid and raised in good faith to try to address ambiguities which, given
prior experiences, need to be clarified. Please refrain from making your hostile attacks. It is really
not helpful and unprofessional.

---



On 2018-03-09 09:52, Brett Gorman wrote:

Anastasia:

I have the full support of the District.  The problem you have is that all of these issues were already decided
and placed in the settlement agreement and on the record before Judge Buono.  We place the terms on the
record so that there is finality and you can be voir dired before it goes before the Board.  Constantly attempting
to renegotiate terms of a settlement placed on the record before the Court shows a total lack of respect to the
Court.  You are the only person that I have ever dealt with that has even once revoked consent on a settlement,
let alone twice. I'm sure that is true for the Court as well.  Furthermore, the things you requested clarity on
have already been placed in the agreement.  The Board is going to reimburse everything you have paid already
upon approval of the agreement and the Board will reimburse you every month thereafter.  Your daughter can
return to the District and the District will conduct evaluations and offer an IEP.  This is all in the agreement
already.  So we do not need to change anything.  Please reconsider taking such a drastic action.  This agreement
is a win for you and dragging the District back into Court will result in a lengthy and needless hearir
out your daughter's educational stability at risk. Thank you.

| Compose | Reply | Reply a | Forwar | Delete | Move | Print | ⊘Spam | Mark | More |

## Re: NW v Princeton

Message 133 of 204

From    A█████ (████ P. W█████ Esq. <████████.com> ⚊+

To      Brett Gorman <bgorman@parkermccay.com> ⚊+

Date    2018-03-10 10:25

Brett,

Can you please also clarify for me that the monthly reimbursement up to $45K would apply as to fees for summer enrollment at Lewis which is recommended?

We really need to know the District's position on re-enrollment in-district as to grade level. To make a decision whether to enroll NW in Lewis for another year or in-district, this is critical.

For example, if we could enroll NW in district in tenth grade for 2018-2019 we may now prefer  this over the Lewis School. I can't imagine the district would rather pay 45K toward Lewis if they could just have her in-district in 10th grade which is appropriate as now she is 10th grade according to Lewis.

Thank you for your cooperation.

---
A█████ (████) P. Wi█████ Esq.
W█████ LAW LLC
███████ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-09 09:52, Brett Gorman wrote:

An█████

I have the full support of the District.  The problem you have is that all of these issues were already decided and placed in the settlement agreement and on the record before Judge Buono.  We place the terms on the record so that there is finality and you can be voir dired before it goes before the Board.  Constantly attempting to renegotiate terms of a settlement placed on the record before the Court shows a total lack of respect to the Court.  You are the only person that I have ever dealt with that has even once revoked consent on a settlement, let alone twice.  I'm sure that is true for the Court as well.  Furthermore, the things you requested clarity on have already been placed in the agreement.  The Board is going to reimburse everything you have paid already upon approval of the agreement and the Board will reimburse you every month thereafter.  Your daughter can return to the District and the District will conduct evaluations and offer an IEP.  This is all in the agreement already.  So we do not need to change anything.  Please reconsider taking such a drastic action.  This agreement is a win for you and dragging the District back into Court will result in a lengthy and needless hearing that may put your daughter's educational stability at risk.  Thank you.

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

**PMa031**

Subject  **Re: NW v Princeton**

From    A█████ (████ P. Wi███ Esq. <████████.com>

To      Brett Gorman <bgorman@parkermccay.com>

Date    2018-03-13 13:16

Brett,

Kindly let me know by end of day today whether you are willing to reasonably confirm and clarify these issues in the agreement and advise as to District's position on grade level for in district enrollment. Thank you.



---
A███ (███ P. Wi███ Esq.
W███ LAW LLC
███ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-10 09:43, A█████ (████ P. Wi███ Esq. wrote:

Brett,

The agreement does not say the Board will reimburse the lump sum "upon approval." If you believe this term is already in the agreement, then what is the objection to making an amendment to say that specifically?

The agreement also has many waivers that are not consistent with a return to district. The agreement needs to state the waivers do not apply upon return to district. It does not say that. During negotiations, you said the agreement would be "void" upon return. If you believe this term is already implied in the agreement, then again, what is the objection to making an amendment to say that specifically to avoid misunderstanding and obtain clarity?

Also, why not answer my question about my daughter's grade level upon enrollment? Are we not entitled to know the answer to this question from the District.?

My concerns are completely valid and raised in good faith to try to address ambiguities which, given prior experiences, need to be clarified. Please refrain from making your hostile attacks. It is really not helpful and unprofessional.



---
A█████ (███ P. Wi███ Esq.
W███ LAW LLC
███ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-09 09:52, Brett Gorman wrote:

An█████

I have the full support of the District.  The problem you have is that all of these issues were already decided and placed in the settlement agreement and on the record before Judge Buono. We place the terms on the record so that there is finality and you can be voir dired before it goes before the Board. Constantly attempting to renegotiate terms of a settlement placed on the record before the Court shows a total lack of respect to the Court. You are the only person that I have ever dealt with that has even once revoked consent on a settlement, let alone twice. I'm sure that is true for the Court as well. Furthermore, the things you requested clarity on have already been placed in the agreement. The Board is going to reimburse everything you have paid already upon approval of the agreement and the Board will reimburse you every month thereafter. Your daughter can return to the District and the District will conduct evaluations and offer an IEP. This is all in the agreement already.  So we do not need to change anything. Please reconsider taking such a drastic action. This agreement is a win for you and dragging the District back into Court will result in a lengthy and needless hearing that may put your daughter's educational stability at risk. Thank you.

**PMa032**

Brett E.J. Gorman, Esquire
Counsel
School Law

[cid:image001.jpg@01D05FF4.09036220]<http://www.parkermccay.com/>
O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com<mailto:bgorman@parkermccay.com>

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900 F: 856-596-9631
www.parkermccay.com<http://www.parkermccay.com/>
[cid:image002.gif@01D05FF4.09036220]<https://www.linkedin.com/company/parker-mccay-p-a->
[cid:image003.gif@01D05FF4.09036220]<https://www.facebook.com/parkermccaypa>
[cid:image004.gif@01D05FF4.09036220]<https://twitter.com/parkermccay>

From: A█████ (████ P. Wi████ Esq. [mailto█████████.com]
Sent: Wednesday, March 14, 2018 10:56 AM
To: Brett Gorman
Subject: Re: NW v Princeton


Brett,


I am still unclear from your various emails what is the District's interpretation of when I will get
reimbursed for the lump sum payment? In a prior email you said the lump sum will be paid "upon
approval" (which is what we agreed to at court), and now below, you say we will be reimbursed with
"proof of attendance."

If the District will confirm it will reimburse "upon approval" and I do not need to wait until the end of
the school year, then I can withdraw my objections based on your representations, as set forth in your
emails, that the waivers do not apply if NW is re-enrolled in district.

However, if you insist the District is not going to reimburse me until after the end of the school year, I
will have to go back to the judge because that was not what we discussed when we did the voir dire
and so that would be a fraud.


Please confirm.


---
A█████ (████ P. Wi████ Esq.
W█████ LAW LLC
█████ Street
Princeton, NJ 08542
(609)-924-5200



On 2018-03-13 15:03, Brett Gorman wrote:
An█████

I have spoken to the District and they are not willing to substantively amend the agreement. The
agreement was entered into before a Court and you were voir dired (for the second time) and swore
under oath that you had consented to the agreement. As I noted to you before, willingly protracting
special education litigation is prohibited under the IDEA and the District will seek app████ █edies,
including reimbursement of attorney fees, due to needlessly prolonging litigation.

PMa033

That being said, the District will offer its interpretation of the agreement and believes that your concerns are still set forth in the agreement, which does not require an amendment. As to the lump sum payment, paragraph one specifically states that "For the costs already made by Petitioner for the 2017-2018 school year, the District shall issue the payment in a lump sum." Once you provide the proof of payment and attendance, the District will provide you reimbursement in that amount so long as it does not exceed the already agreed to amounts. Moving forward, the District will reimburse up to the agreed to amounts on a monthly basis.

As to a return to the District, in paragraph 4, the District agreed that N.W. would be welcome return to the District for evaluations and an IEP. The agreement sets forth that its only financial obligations are what is set forth in the agreement, so it will not pay any more money for your daughter's attendance at the Lewis School for any grade level other than what is in the agreement. But your daughter is welcome to return to the District at any time. Should she return, her grade level will depend on the credits earned and her transcript. We will not know where she will attend until we know what credits she has earned at that time and what classes she has taken.

I hope this clarifies your concerns. If it does not, please contact the Judge and advise him that you have revoked your consent for the second time. But please understand the District's position in that event.

Thank you.

Brett E.J. Gorman, Esquire
Counsel
School Law

[cid:image001.jpg@01D05FF4.09036220]<http://www.parkermccay.com/>
O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com<mailto:bgorman@parkermccay.com>

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900 F: 856-596-9631
www.parkermccay.com<http://www.parkermccay.com/>
[cid:image002.gif@01D05FF4.09036220]<https://www.linkedin.com/company/parker-mccay-p-a->
[cid:image003.gif@01D05FF4.09036220]<https://www.facebook.com/parkermccaypa>
[cid:image004.gif@01D05FF4.09036220]<https://twitter.com/parkermccay>

From: A▮▮▮▮ (▮▮▮ P. W▮▮ Esq. [mailto▮▮▮▮ ▮▮▮▮.com]
Sent: Saturday, March 10, 2018 10:26 AM
To: Brett Gorman
Subject: Re: NW v Princeton

Brett,

Can you please also clarify for me that the monthly reimbursement up to $45K would apply as to fees for summer enrollment at Lewis which is recommended?

We really need to know the District's position on re-enrollment in-district as to grade level. To make a decision whether to enroll NW in Lewis for another year or in-district, this is critical.

For example, if we could enroll NW in district in tenth grade for 2018-2019 we may now prefer this over the Lewis School. I can't imagine the district would rather pay 45K toward Lewis if they could just have her in-district in 10th grade which is appropriate as now she is 10th grade according to Lewis.

Thank you for your cooperation.

---
A▮▮▮▮ (▮▮▮ P. W▮▮▮ Esq.
W▮▮▮ LAW LLC

**PMa034**

❸ Help                                                                                                                    Close

Compose       Reply      Reply a     Forwar      Delete       Move       Print     ❶Spam      Mark      More

## RE: NW v Princeton                                                    Message 11 of 17

| From | **Brett Gorman <bgorman@parkermccay.com>** 👤+ |
| To | **'A████ (████ P. W█████ Esq.'** <████████.com> 👤+ |
| Date | **2018-03-14 10:56** |

I am still unclear from your various emails what is the District's interpretation of when I will get reimbursed for the lump sum payment?  In a prior email you said the lump sum will be paid "upon approval" (which is what we agreed to at court), and now below, you say we will be reimbursed with "proof of attendance."

If the District will confirm it will reimburse "upon approval" and I do not need to wait until the end of the school year, then I can withdraw my objections based on your representations, as set forth in your emails, that the waivers do not apply if NW is re-enrolled in district.

However, if you insist the District is not going to reimburse me until after the end of the school year, I will have to go back to the judge because that was not what we discussed when we did the voir dire and so that would be a fraud.

Please confirm.

---

Anastasia (████ P. W███ Esq.
W█████ LAW LLC
██████ Street
Princeton, NJ 08542
(609)-924-5200

On 2018-03-13 15:03, Brett Gorman wrote:

> A█████

> I have spoken to the District and they are not willing to substantively amend the agreement.  The agreement was entered into before a Court and you were voir dired (for the second time) and swore under oath that you had consented to the agreement.  As I noted to you before, willingly protracting special education litigation is prohibited under the IDEA and the District will seek appropriate remedies, including reimbursement of attorney fees, due to needlessly prolonging litigation.

> That being said, the District will offer its interpretation of the agreement and believes that your concerns are still set forth in the agreement, which does not require an amendment.  As to the lump sum payment, paragraph one specifically states that "For the costs already made by Petitioner for the 2017-2018 school year, the District shall issue the payment in a lump sum."  Once you provide the proof of payment and attend PMa035 the District will provide you reimbursement in that amount so long as it does not exceed the already agreed to

❓ Help                                                                                                      Close

Compose    Reply    Reply a    Forwar    Delete    Move    Print    ❶Spam    Mark    More

**RE: NW v Princeton**                                                          Message 11 of 17

| From | Brett Gorman <bgorman@parkermccay.com> |
| To | 'A█████ (████ P. W█████ Esq.' <████████.com> |
| Date | 2018-03-14 10:56 |

An█████

It will be within 45 days of the board meeting, is what the agreement says.  But I'll ask that they do it ASAP.  You will not have to wait until the end of the year.  Let me know.  Thank you.

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

**PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey  08054

P: 856-596-8900    F: 856-596-9631

www.parkermccay.com

**From:** A█████ (████ P. W████ Esq. [mailto:████████.com]
**Sent:** Wednesday, March 14, 2018 10:56 AM
**To:** Brett Gorman
**Subject:** Re: NW v Princeton

Brett,

**PMa036**

From: A_____ P. W_____ Esq. [_____.com]
Sent: Thursday, March 15, 2018 11:13 AM
To: Brett Gorman
Subject: Re: NW v Princeton

Brett,

Thank you for clarifying the payment question. This is very helpful.

I have reviewed our communications vs. what we discussed at the time of the agreement and voir dire, and I still must ask for clarification or confirmation of the district's position regarding the waiver question. In particular, you had represented that if NW is re-enrolled in district, the agreement would be void. You also represented that if NW were re-enrolled in district, the District would still be willing to consider other placement options (e.g. besides The Lewis School).

While you have confirmed that NW is welcome to re-enroll and the District would provide evaluations and offer an IEP, you have yet to confirm the district's position regarding voiding of the contract at that point and how that affects the waivers.

If this is not clearly confirmed in accordance with our discussions, I would need to contact the judge to ensure the agreement is aligned with your representations at the time of the agreement.

Alternatively, I also at this time would like to offer another possible option to favorably resolve this matter that I believe would be advantageous for the District. I would ask you please confer with your client on this option.

To resolve this matter, I ask that the District consider a revised settlement pursuant to which we would receive the $42,194 reimbursement for out of pockets for The Lewis School for the 2017-2018 school year, and then instead of $45,000 toward The Lewis School next year, a lump sum payment of $35,000 for counsel fees/compensatory damages, e.g., to be paid through the insurer. In exchange, we would release the District of any liability under the IDEA, ADA, 504, state law, etc., as of June 30, 2018. (As we had discussed, our family is considering a relocation out of district. At present, our home is not ready to be placed on the market and it is uncertain whether our home could be sold by the start of the school year.With such a settlement, we could move over the summer and use the compensatory damage award to pay for a rental at our new location while our house is on the market here in Princeton over the school year).

I think this alternative presents a win-win for everyone. We can move on with our relocation and the District not only saves the $45K expense of The Lewis School but also any further conflicts, liabilities, evaluations, etc., not only for NW but my other two children. As you may know, I have two HIB appeals on behalf of my son (AW) which I could withdraw upon this agreement, as well as a pending CST/IEP request for my daughter EW with an eligibility meeting tomorrow. If she does not receive a favorable IEP, we likely will file for due process. With this alternative, I will defer these requests and work them out with the new school district.

**PMa037**

Subject: Re: NJW v. Princeton

From    A▊▊▊▊ (▊▊▊ P. Wi▊▊ Esq. <▊▊▊▊▊▊.com>

To      Brett Gorman <bgorman@parkermccay.com>

Date    2018-03-28 10:15

I understood from your email below that the District was moving forward with the agreement on March 20. However, I have not heard back from you, despite my request. Please let me know if the agreement was approved and if so, whether you need anything from me for the reimbursement. If not, please let me know how the District would like to proceed. Thank you.

---

A▊▊▊▊ (▊▊▊ P. Wi▊▊ Esq.
W▊▊▊ LAW LLC
95 Spruce Street
Princeton, NJ 08542
(609)-924-5200


On 2018-03-27 10:41, A▊▊▊▊ (▊▊▊ P. W▊▊ Esq. wrote:

Please let me know if the agreement was approved on March 20, as written per your email below. Thank you.---

A▊▊▊▊ (▊▊▊ P. Wi▊▊ Esq.
W▊▊▊ LAW LLC
▊▊▊▊ Street
Princeton, NJ 08542
(609)-924-5200


On 2018-03-15 16:18, Brett Gorman wrote:

A▊▊▊▊ :

For the final time, the district interprets the agreement as precluding any further obligation to consider an out of district placement for your daughter other than what is in the agreement. The district will welcome her back to finish her education at the Princeton public schools so long as she resides in Princeton. But the district will not be responsible for any further placements other than what is in the agreement.

The district is not interested in your alternative proposal.

The district is prepared to move forward with the agreement as written on its meeting of March 20.

Thank you.


Brett E.J. Gorman, Esquire
Counsel
School Law

O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

PARKER McCAY P.A.
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey 08054
P: 856-596-8900
F: 856-596-9631
www.parkermccay.com

From: A▊▊▊▊ (▊▊▊ ▊▊▊ Esq. ▊▊▊▊▊.com]
Sent: Thursday, March 15, 2018 11:13 AM
To: Brett Gorman

PMa038

| Compose | Reply | Reply a | Forwar | Delete | Move | Print | ⊘Spam | Mark | More |
|---------|-------|---------|--------|--------|------|-------|-------|------|------|

## EDS 03738-17 A.W. obo N.W. v. Princeton Public Sc...

Message 11 of 20

| From | **Brett Gorman <bgorman@parkermccay.com>** |
| To | **'Winters, Deborah' <Deborah.Winters@oal.nj.gov>** |
| Cc | A████ (████ P. ███████ (██████████.com) <████████.com> |
| Date | **2018-03-29 10:15** |

Good morning:

**NW – Agreement (March 20...**

**NW – Resolution (March 20...**

I am pleased to report that the parties maintained their consent to the agreement and it was approved by the board of education this week. Attached is the executed settlement agreement and resolution confirming same. Both parties respectfully request that this be entered into a final order.

Thank you.

Respectfully,

**Brett E.J. Gorman, Esquire**

*Counsel*

**School Law**

**PM PARKER McCAY**

O: 856-985-4051

F: 856-810-5852

bgorman@parkermccay.com

**PARKER McCAY P.A.**

9000 Midlantic Drive, Suite 300

Mount Laurel, New Jersey  08054

P: 856-596-8900    F: 856-596-9631

www.parkermccay.com





**Princeton**
**Public Schools**

*Live to Learn, Learn to Live*

# Administrative Offices

25 Valley Road, Princeton, New Jersey 08540  t 609.806.4200

March 23, 2018

To Whom It May Concern:

I, Stephanie Kennedy, certify that I am the duly appointed Secretary to the Princeton Board of Education. I further certify that at its Board Meeting held on March 20, 2018, the following resolution was adopted by the Board of Education:

<u>Special Education Settlement Agreement</u>

RESOLVED, that the Board of Education approve the Special Education Settlement Agreement #111715-11-2, on file in the Student Services Office and authorize the Board President to sign the agreement for the sum not to exceed $87,194.00, for the period of September 1, 2017 through June 2019. The Agreement will be funded through general funds.

BE IT FURTHER RESOLVED, that the Board of Education authorizes the administration to execute the necessary documents.

Regards,

Stephanie Kennedy
Business Administrator/Board Secretary

**PMa040**

**From:** Micki Crisafulli <mickicrisafulli@princetonk12.org>
**To:** a████████ <a████████om>
**Subject:** Attendance
**Date:** Thu, Mar 29, 2018 11:47 am

An████

I wanted to confirm that I received proof of payment. Please send the proof of attendance to Alesia McCarthy (alesiamccarthy@princetonk12.org) for the months of September through March so we can process the initial lump sum payment. Then at the end of each month, please send the attendance to Alesia so the April, May and June payments can be released each month.

For clarity, you provided proof of the total amount of reimbursement for the 2017-2018 school year ($42,194). The lump sum reimbursement will be in the amount of $29,525.80. You will receive a monthly reimbursement after receipt of attendance in the amount of $4,219.40, for the last three months of the school year.

Our Business Office will send you a vendor declaration to sign and return in the next couple of weeks. The initial lump sum payment will be sent to you once the Business Office processes in the April billing cycle and we have all of the attendance through March, with the returned signed vendor declaration.

For next school year, you can send the proof of payment when you have it and we will reimburse you monthly upon receipt of that month's attendance for each of the 10 months of the school year.

Please let me know if you have any questions.

Thanks,

Micki


**Micki Crisafulli**
**Director of Student Services**
**Princeton Public Schools**
**25 Valley Road**
**Princeton, NJ 08540**
**Phone: 609-806-4206**
**Fax: 609-806-4226**

**From:** Brett Gorman <bgorman@parkermccay.com>
**To:** 'ap' <a████████com>
**Subject:** RE: Attendance
**Date:** Thu, Mar 29, 2018 11:52 am

What isn't?  She is explaining the process.  She says you are getting reimbursed in a lump sum for what you paid already and monthly thereafter.  That was the deal.

**Brett E.J. Gorman, Esquire**
*Counsel*
**School Law**

 **PARKER McCAY**

O: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

**PARKER McCAY P.A.**
9000 Midlantic Drive, Suite 300
Mount Laurel, New Jersey  08054
P: 856-596-8900   F: 856-596-9631
www.parkermccay.com


**From:** ap [mailto:apwinslow@aol.com]
**Sent:** Thursday, March 29, 2018 11:50 AM
**To:** Brett Gorman
**Subject:** Re: Attendance

Brett,
This is NOT what we agreed to.
This is exactly why I had revoked consent and sought clarification from you.


 A██████ P. W████
609-924-5200

**PMa042**





609-924-5277 (fax)

.com

April 3, 2018

<u>Via Email and Facsimile (609)-689-4100</u>
Honorable Dean J. Buono, A.L.J.
Office of Administrative Law
P.O. Box 049
Trenton, NJ 08625

Re:   **<u>A.W. o/b/o N.W. vs. Princeton Regional BOE (Agency: 2017-25766)</u>**
      **<u>Docket No. EDS 03738-2017 S</u>**

Dear Judge Buono:

Petitioners respectfully submit this letter and annexed exhibits in support of Petitioner's request for equitable reformation of the parties' settlement agreement, executed March 2, 2018, prior to approval by the Court.

Equitable reformation is necessary to prevent the Respondent, Princeton Public Schools District (the "District") from fraudulently depriving the petitioners of the benefits of the settlement the parties agreed to on March 2, 2018, as further explained below.

<u>Factual Background</u>

On March 2, 2018, the parties appeared for the hearing which had been scheduled since November 2017. As the hearing was about to begin, the District proposed a settlement, a topic they had not sought to discuss with petitioners since the failed settlement of October 4, 2017 (instead, in that interim period the District resisted reimbursing petitioners by moving for summary disposition on grounds of alleged lack of notice).

During settlement discussions on March 2, 2018, the parties focused primarily upon: 1) reimbursement to petitioners for the costs of N.W. to attend The Lewis School; and 2) waivers sought by the District to release it from liability under the Individuals with Disabilities Education Act, 20 <u>U.S.C.</u> 1400 <u>et seq.</u>("IDEA").

On the topic of reimbursement, the District agreed to pay petitioners the amount of $42,194, in a lump sum, to reimburse them for N.W.'s tuition for the 2017-2018 school year. One of the reasons the prior settlement failed was because of a disagreement as to when/how much petitioners would be reimbursed. By way of explanation, The Lewis School requires that the full years' tuition be paid up front, and petitioners had to incur a <u>debt</u> in September 2017 (<u>e.g.</u>, with daily interest charges), to obtain the funds to pay The Lewis School for the 2017-2018 school year. Every day that reimbursement is delayed places a financial burden on N.W.'s family.

**PMa043**

Letter to Hon. Dean J. Buono, ALJ
A.W. o/b/o N.W. v. Princeton Public Schools
April 3, 2018
Page 2

Additionally, the petitioners herein have had previous, negative experiences with this school district with reimbursement, e.g., wherein the district delayed for an inordinate amount of time to provide the funds only to then short-change the family on the amount due.

Thus, the District's agreement to pay full reimbursement in a lump sum, upon approval of the agreement, was absolutely pivotal in persuading petitioners to agree to the settlement; they would not have agreed to settle otherwise.

During settlement discussions, the District also agreed to pay for N.W. to attend The Lewis school for a second year, i.e., the upcoming (2018-2019) school year. Petitioners requested that this amount also be promptly reimbursed in a lump sum given petitioners would need to incur those costs out-of-pocket to The Lewis School in advance. However, Mr. Gorman insisted that for the 2018-2019 school year, the ONLY way the District would provide reimbursement would be on a monthly basis as petitioners provided proof of attendance. Petitioners were reluctant to agree to those terms, because that placed a heavy financial burden on the family. However, ultimately, as the parties discussed the prospect of a payment plan with The Lewis School, petitioners gave in on that issue as to next year.

A second, material issue involved the waivers in the agreement. This also was one of the reasons the prior agreement (October 4, 2017), fell apart. Petitioners did not want to release the District of all its accountability to provide a free and appropriate education (FAPE) for N.W. in the future, as they cannot predict the future. To address this issue, Mr. Gorman agreed, during settlement discussions, that at any time, N.W. could be re-enrolled in District and the District would then conduct evaluations and provide N.W. with an IEP; in such case, Mr. Gorman represented the agreement would be "void." Petitioners clearly understood this meant that if N.W. was re-enrolled in district, the waivers would no longer apply; those waivers only were to apply if N.W. were continue to be enrolled in The Lewis School, with the District paying for that placement.

When the Court conducted the voir dire on March 2, 2018, petitioner A.W. read the settlement with those representations and discussions in mind. Additionally, Mr. Gorman made various last-minute and un-negotiated changes to the agreement on his computer, then printed out the agreement, and only at that point, presented it for a final review and signature.[1]

During the three-day review period expressly provided for under the IDEA (pursuant to 20 U.S.C. 1415(f)(iv)), petitioner A.W. studied the agreement, without the time pressure of the court proceedings. (We submit the IDEA provides a three-day review period as to settlements of due process petitions, pursuant to 20 U.S.C. 1415(f)(iv), for good reason as significant rights of minors are involved that call for careful, contemplative consideration). During that review period, A.W. developed concerns as to ambiguities as to the aforesaid material terms.

---

[1] It is believed that the last sentence of paragraph 4 was only inserted by Mr. Gorman at that point and overlooked during the final in court review. If N.W. were to return in district, it does not make sense to apply a limit on the district's financial responsibilities as future waivers/releases would not apply.

**PMa044**

Letter to Hon. Dean J. Buono, ALJ
A.W. o/b/o N.W. v. Princeton Public Schools
April 3, 2018
Page 3

In particular, it appeared the reimbursement paragraph of the settlement agreement could be unclear, as arguably, this provision might be read to mean, contrary to Mr. Gorman's representations, that the lump sum payment of $42,194 would not be paid upon approval of the agreement, but only months later, after proof of attendance for the entire school year was submitted (placing a further, financial burden on the family)(Pa11). Also, the agreement itself was silent as to waivers if N.W. were re-enrolled in district. Arguably, one might read the agreement to provide that even if N.W. were re-enrolled in district, the waivers still remained in place (Pa12), which was not what the parties discussed and agreed to.

Thus, on March 6, 2018, A.W. wrote to Mr. Gorman and invoked her right under 20 U.S.C. 1415(f)(iv), to request that the agreement be amended to clarify the intent of the parties. In particular, she requested reasonable amendments just to make clear that the lump sum payment of $42,194 would be paid upon approval of the agreement (as was agreed when the parties settled)(Pa1). She also requested an amendment to confirm that if N.W. were enrolled in district, the waivers would no long apply. The agreement was voided subject to those two, limited requests for clarification (Pa1).

However, Mr. Gorman promptly responded that he refused to clarify the agreement. He insisted that he would not make any amendments whatsoever, even if to clarify ambiguous terms to effectuate the parties' intent (Pa2).

On March 6, 2018, Mr. Gorman also promptly wrote back to A.W., stating that "it's in the agreement" that the District "will make a lump sum payment of what you paid already, everything else will be month to month reimbursement." (Pa2)(emphasis added). Mr. Gorman also insisted that at petitioners' option, N.W. could re-enroll in district and the District "will conduct evaluations and offer an IEP" (Pa2).

After further discussion, on March 9, 2018, Mr. Gorman again insisted that "the things you requested have already been placed in the agreement. The Board is going to reimburse everything you have paid upon approval of the agreement and the Board will reimburse you every month thereafter. Your daughter can return to the District and the District will conduct evaluations and offer an IEP. This is all in the agreement already. So we do not need to change anything" (Pa3).

On March 10, 2018, A.W. replied that if Mr. Gorman believed the terms on which A.W. sought clarity were already implied in the agreement, there should be no objection to including express language to that end to avoid misunderstanding (Pa4).

However, on March 13, 2018, Mr. Gorman replied, again insisting the District would not make any amendments to clarify issues but would "offer its interpretation of the agreement and believes [petitioners'] concerns are still set forth in the agreement, which does not require an amendment" (Pa5).

On March 14, 2018, A.W. wrote to Mr. Gorman as follows:

Letter to Hon. Dean J. Buono, ALJ
A.W. o/b/o N.W. v. Princeton Public Schools
April 3, 2018
Page 4

> If the District will confirm it will reimburse "upon approval" and I do not need to
> wait until the end of the school year, then I can withdraw my objections based on
> your representations, as set forth in your emails, that the waivers do not apply if
> NW is re-enrolled in district.
>
> However, if you insist the District is not going to reimburse me until after the end
> of the school year, I will have to go back to the judge because that was not what
> we discussed when we did the voir dire so that would be a fraud. [Pa5]

Promptly, in response to this email, Mr. Gorman answered:

> It will be within 45 days of the board meeting, is what the agreement says. But I'll
> ask that they do it ASAP. You will not have to wait until the end of the year.
> [Pa6]

Notably, 45 days of the approval date (March 20, 2018) is **Friday, May 4, 2018**.

The agreement was then approved on March 20, 2018. Petitioner A.W. provided proof of
payment of the $42,194.00 and requested reimbursement. On March 29, 2018, Mr. Gorman
submitted the agreement and board resolution for approval by the Court.

On March 29, 2018, the District (via Micki Crisafulli) acknowledged receipt of proof of
payment of $42,194.00 (Pa7).

However, on March 29, 2018, after the agreement was sent to the Court for approval, Ms.
Crisafulli then wrote to A.W., stating that the lump sum payment would only be in the amount
of $29,525.80 (Pa7), not the full amount already paid of $42,194.00 (Pa7). Further, she stated
the payment of $29,525.80 would only be provided following proof of attendance through
March with a "signed vendor declaration" (Pa7). The vendor declaration form was to be
provided to petitioners "in the next couple of weeks" (Pa7). She said that for April, May and
June, 2017, petitioners would only be paid monthly installments of $4,219.40, upon receipt of
proof of attendance and signed vendor declaration forms (Pa7). Thus, per Ms. Crisafulli's
email, the district took the position petitioners WOULD have to wait until after the end of the
school year to obtain full lump sum reimbursement.

Petitioner A.W. objected that this was not was agreed to (Pa8). She also pointed out that this
was exactly why she had revoked consent and sought clarification (Pa9). Mr. Gorman
responded that Ms. Crisafulli's position was correct, and "she is explaining the process' and
"that was the deal" (Pa9). Upon further objection from A.W., later in the day Crisafulli then
stated she discussed the issue with Mr. Gorman and they would "process the full
reimbursement" (Pa8). She also quoted the settlement agreement and added that the District
will issue payment upon "proof of payment and attendance of NW at Lewis School" (Pa8).
However, Crisafulli still provided no assurances that petitioners would receive their
reimbursement of $42,194 by May 4, 2018, as Mr. Gorman assured A.W. in response to her
objections and prior to submitting the agreement to the Board. Instead, Crisafulli seems to

Letter to Hon. Dean J. Buono, ALJ
A.W. o/b/o N.W. v. Princeton Public Schools
April 3, 2018
Page 5

suggest she intends for the District to pay the lump sum only after all attendance forms through the end of the school year are provided.

<u>Discussion</u>

Based on the foregoing facts and the documents annexed thereto, petitioners request that the agreement be equitably reformed prior to approval by the Court because otherwise, due to the District's inequitable conduct and misrepresentations, petitioners would be deprived of highly material benefits of the bargain they struck with the district at the time the settlement. The court clearly has the power to equitably reform agreement in the circumstances here presented. <u>See</u> <u>Bonnco Petrol, Inc. v. Epstein</u>, 115 <u>N.J.</u> 599, 608-609 (1989).

The petitioners here do not seek to rescind the agreement but seek to have a resolution to finally resolve this matter as this case and particularly the district's behavior has caused undue stress and financial burden on the family. However, they do not wish to have thrust upon them an unfair agreement that was changed by Mr. Gorman at the last minute with ambiguities that do not accurately reflect the intent of the parties when they entered the agreement. Petitioners further submit that Mr. Gorman's emails, sent to A.W. PRIOR to submission of the agreement to the Board, clearly reflect assent and agreement with A.W.'s interpretation of the agreement, as he repeatedly stated that A.W.'s concerns and interpretation were already addressed in, and implied by, the agreement and as such, required no correction.

Thus, we ask that the agreement be approved subject to equitable reformation that (1) the District is required to provide a lump-sum reimbursement in the amount of $42,194 by May 4, 2018 (45 days of approval, as they already acknowledge receipt of proof of payment of this amount) and (2) should N.W. be re-enrolled in district at any time, the district would conduct evaluations, offer an IEP, and the waivers in the agreement would be void. Furthermore, given the District has already repudiated its obligation to provide the reimbursement within forty-five days (by May 4, 2018), we submit it should be required to pay petitioners interest in the event this material provision is violated or the agreement voided. Alternatively, we would ask that the Court defer its approval until May 4, 2018 and enter an order approving the settlement only once the District presents a copy of a reimbursement check in the amount of $42,194.00.

Thank you again for Your Honor's kind attention to this matter.

Respectfully submitted,



cc.    Mr. Brett Gorman (via email w/enc.)

**PMa047**

## PURCHASE ORDER / VOUCHER

BUDGET YEAR

**VENDOR NO.**

5200

# PRINCETON PUBLIC SCHOOLS

25 VALLEY ROAD, PRINCETON, NJ 08540
TEL. (609) 806-4205 · FAX (609) 806-4225

2017->2018

**PURCHASE ORDER NUMBER**

18-03504

THIS NUMBER MUST APPEAR ON
ALL PACKAGES, INVOICES AND
CORRESPONDENCE.

**DATE:**

04/13/2018

**VENDOR:**

A██████ W██████
████████ Street
Princeton, NJ 08542

**SHIP TO:** (INSIDE DELIVERY ONLY)

Attn To : Alesia McCarthy
PRINCETON PUBLIC SCHOOLS
25 VALLEY ROAD
PRINCETON, NJ 08540-

| QUANTITY ORDERED | CATALOG / UNIT | ITEM DESCRIPTION / ACCOUNT NUMBER | UNIT PRICE | TOTAL AMOUNT |
|---|---|---|---|---|
| 1 | TUITION | Encumbered tuition funds for $42,194.00 for educational compenet from September through June 30, 2018. (111715-11-2)<br><br>Student: N.W<br><br>Board approved 3/20/18<br><br>7004/11-000-100-566-0-06-00-($42,194.00) | 42,194.00 | 42,194.00<br><br>$42,194.00 ✓ |

**VENDOR'S DECLARATION**

I do solemnly declare and certify under the penalties of the law that the within bill is correct in all its particulars; that the articles have been furnished or services rendered as stated therein; that no bonus has been given or received by any person or persons within the knowledge of this claimant in connection with the above claim; that the amount therein stated is justly due and owing; and that the amount charged is a reasonable one.

X ██████████

INDIVIDUAL AUTHORIZED TO MAKE DECLARATION

4-23-2018

TITLE    SEE REVERSE SIDE    DATE

**ACCOUNTS PAYABLE VERIFICATION:**
CLAIM CHECKED FOR CONFORMITY TO PURCHASE ORDER,
RECEIPT OF GOODS OR SERVICES AND CLERICAL ACCURACY.

BY _____

CLAIM EXAMINED, AUDITED AND CERTIFIED TO THE BOARD.

BY _____

**PLEASE MAIL THIS VENDOR DECLARATION
BACK TO VALLEY ROAD WITH INVOICE**

**NOT A VALID PURCHASE ORDER UNTIL
SIGNED BY THE BUSINESS ADMINISTRATOR**

_Stephanie Kennedy_

BY _____
BUSINESS ADMINISTRATOR/BOARD SECRETARY

**INVOICES EXCEEDING ORDER TOTAL WILL NOT
BE PAID WITHOUT AUTHORIZATION
FROM BUSINESS OFFICE**

**PMa048**

VENDOR DECLARATION - SIGN AT (X) AND RETURN FOR PAYMENT

Page 1



# PARKER McCAY

Parker McCay P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054-5054

P: 856.596.8900
F: 856.596.9631
www.parkermccay.com

Brett E.J. Gorman, Esquire
P: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

April 24, 2018

File No. 12174-0005

**VIA FEDERAL EXPRESS**
The Honorable Dean J. Buono A.L.J.
Office of Administrative Law
P.O. Box 049
Trenton, NJ 08625-0049

Re: **A.W. o/b/o N.W. v. Princeton Public Schools**
   **OAL Docket No.: EDS 03738-2017 S; Agency Ref. No.: 2017-25766**

Dear Judge Buono:

This office represents the Respondent, Princeton Public Schools, in the above-referenced matter. Enclosed please find an original and two (2) copies of the District's Notice of Motion to Accept Settlement and Issue Final Order, Brief in Support and Certification.

Kindly stamp one copy as "filed" and return to this office in the enclosed stamped envelope proved. A copy of the enclosed has also been provided to the Petitioner by copy of this letter.

Thank you for your attention to this matter.

Respectfully submitted,

BRETT E.J. GORMAN

BEJG/sc
Enclosure
cc:   A.W. – *via email and regular mail*
      Micki Crisafulli – *via email*

COUNSEL WHEN IT MATTERS.℠

Mount Laurel, New Jersey | Lawrenceville, New Jersey | Atlantic City, New Jersey

**PMa049**

File No. 12174-0005
**Law Offices**
**PARKER McCAY P.A.**
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey 08054**
**(856) 596-8900**
Attorneys for Petitioner, Princeton Public Schools

| | |
|---|---|
| A.W. o/b/o N.W., | OFFICE OF ADMINISTRATIVE LAW |
| Petitioner, | OAL Docket No.: 03738-2017<br>Agency Reference No.: 2017-25766 |
| v. | CIVIL ACTION |
| PRINCETON PUBLIC SCHOOLS | **NOTICE OF MOTION TO ACCEPT**<br>**SETTLEMENT AND ISSUE FINAL**<br>**ORDER** |
| Respondent. | |

PLEASE TAKE NOTICE, that as soon as counsel may be heard, the undersigned, attorneys for the Princeton Public School District Board of Education ("District"), will move before the New Jersey Office of Administrative Law for an Order to accept settlement.

The District will rely on the attached brief in support and certification.

The District requests oral argument.

PARKER McCAY P.A.
Attorneys for Respondent,
Princeton Board of Education

BY: _____
BRETT E.J. GORMAN

DATE: 7/31/18

**PMa050**

File No. 12174-00005

**Law Offices**
**PARKER McCAY P.A.**
**By:  Brett E.J. Gorman, Esquire**
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey 08054**
**(856) 596-8900**
**bgorman@parkermccay.com**
Attorneys for Respondent, Princeton Public Schools

| | |
|---|---|
| A.W. o/b/o N.W.<br><br><div align="center">Petitioner,</div><br>v.<br><br>**PRINCETON PUBLIC SCHOOLS**<br><br><div align="center">Respondent.</div> | **OFFICE OF ADMINISTRATIVE LAW**<br><br><div align="center">**OAL DOCKET NO: 03738-2017**<br>**AGENCY REF NO: 2017-25766**</div><br><br><br><br><div align="center">**CIVIL ACTION**</div> |

<div align="center">

**RESPONDENT'S BRIEF IN SUPPORT OF MOTION TO
ACCEPT SETTLEMENT AND ISSUE FINAL ORDER**

</div>

i

**PMa051**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................................iii

FACTS ........................................................................................................................1

LEGAL ARGUMENT...................................................................................................1

  I.  THE COURT SHOULD ACCEPT THE SETTLEMENT AGREEMENT AND
      ENTER A FINAL ORDER. .....................................................................................1

     A.    THE SETTLEMENT AGREEMENT LEFT NO GAPS, BUT EVEN IF IT
     DID, THIS SHOULD NOT FRUSTRATE THE PARTIES' INTENTIONS TO BE
     BOUND. ............................................................................................................3

     B.    THE SETTLEMENT IS VALID AND ENFORCEABLE EVEN THOUGH IT
     WAS CONDITIONED ON APPROVAL BY THE BOARD OF EDUCATION..........5

CONCLUSION ...........................................................................................................6

PMa052

# **TABLE OF AUTHORITIES**

## **Cases**

Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975).......2

Blunt v. Lower Merion Sch. Dist ., 767 F.3d 247, 282 (3d Cir. 2014)..........................................4

City of Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J. Super. 315, 327 (App. Div. 1986), certif. denied, 110 N.J. 152 (1988).................................................................................4

Finocchiaro v. Squire Corrugated Container Corp., CIV.A.05-5154(SRC), 2008 WL 305337, at *3 (D.N.J. Jan. 28, 2008) ...............................................................................................................3

Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970)............................................1, 2

Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992)......................................................2

Houghwout v. Boisaubin, 18 N.J. Eq. 315, 318-319 (Ch. 1867)...................................................4

Pascarella v. Bruck, 190 N.J. Super. 118, 124-125 (App. Div. 1983)......................................1, 5

United States v. Lightman, 988 F.Supp. 448, 463 (D.N.J.1997)...................................................2

United States v. Zoebisch, 2013 WL 5719246, at *2 (D.N.J. Oct. 18, 2013), aff'd, 586 Fed. Appx. 852 (3d Cir. 2014)...........................................................................................................3

Williams v. Vito, 365 N.J. Super. 225 (Law Div. 2003) ...............................................................2

Zong v. Merrill Lynch Pierce Fenner & Smith, Inc., 632 Fed. Appx. 692, 695 (3d Cir. 2015), cert. denied, 137 S. Ct. 1812 (2017).............................................................................3

## **Treatises**

13 Williston on Contracts § 38.4 (Lord ed. 2000) ........................................................................4

Restatement (Second) of Contracts § 224......................................................................................4

**PMa053**

## FACTS

Princeton Public Schools (hereinafter "District") relies on the certification of Brett E.J. Gorman, Esq. to set forth the factual basis for this motion.

## LEGAL ARGUMENT

### I.   THE COURT SHOULD ACCEPT THE SETTLEMENT AGREEMENT AND ENTER A FINAL ORDER.

New Jersey has a strong public policy in favor of settlements. See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). "An agreement to settle a lawsuit is a contract which . . . may be freely entered into, and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-125 (App. Div. 1983).  Disputes regarding settlement agreements should be resolved by applying general principles of local contract law.  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970).  In accordance with traditional principles of contract law, "parties create an enforceable contract when they agree to the essential terms and manifest an intent that the terms bind them." Baer v. Chase, 392 F.3d 609, 619 (3d Cir. 2004).

Here, the agreement was entered into before the Court.  It was memorialized in writing, reviewed by Petitioner, read into the record, the Administrative Law Judge then *voir dired* Petitioner regarding its terms, and Petitioner swore – under oath – that she consented to the agreement.  Petitioner then signed the agreement in the presence of the Administrative Law Judge and opposing counsel.  There is no possible way that Petitioner can claim that a fraud was perpetrated with respect to this agreement, or that there is any other compelling reason for the Court to not accept it.

**PMa054**

Furthermore, when parties agree to the terms of a settlement on the record in court, a party's subsequent failure to sign the document does not even render the settlement unenforceable.  Instead, it is well-settled that "[an] agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of court, and even in the absence of a writing." <u>Green</u>, 436 F.2d at 390; <u>see also</u> <u>Williams v. Vito</u>, 365 <u>N.J. Super.</u> 225 (Law Div. 2003).  Here, not only did the parties agree to the terms of the settlement on the record in Court, but Petitioner actually signed the written agreement in Court.

After Petitioner had already signed and consented to the terms of the agreement, Petitioner then sought to revise it, proposing that the District send a lump sum payment of $35,000 instead of the agreed-upon $45,000 for N.W.'s education at the Lewis School. Rather than using the money for N.W.'s education, Petitioner stated that she would use it towards "counsel fees/ compensatory damages, e.g., to be paid through the insurer...and [that] with such a settlement, we could move over the summer and use the compensatory damage award to pay for a rental at our new location while our house is on the market..."

Counsel for the District responded on the District's behalf, making the District's position clear—the District is  only obligated to perform under the terms of the binding agreement. Counsel for the District notified Petitioner that the Board of Education would vote to approve the agreement at its meeting on March 20, 2018. The District's position was made clear that the District would not agree to revise the agreement and it would be approved as written.  The Petitioner failed to raise an objection to this prior to the Board of Education meeting. In fact, Petitioner indicated her acceptance to the settlement after its approval through an email she sent to the District's attorney stating that she "understood the District was moving forward with the agreement," further stating "[p]lease let me know if the agreement was

2

**PMa055**

approved and if so, whether you need anything from me for the reimbursement. If not, please let me know how the District would like to proceed." Thus, based on the foregoing, the binding settlement agreement approved before the Court was still in effect when the Board of Education approved it. Petitioner did not take a sufficient act to revoke consent and, rather, implicitly and ==expressly agreed that the Board of Education approve the settlement as written== and placed on the record before the Court. Therefore, the settlement agreement should be accepted by the Court and a final Order issued.

### A. THE SETTLEMENT AGREEMENT LEFT NO GAPS, BUT EVEN IF IT DID, THIS SHOULD NOT FRUSTRATE THE PARTIES' INTENTIONS TO BE BOUND.

It is well accepted that, as long as the parties agreed to the essential terms of the settlement, and the written agreement that a party seeks to enforce reflects these terms, the agreement is enforceable. A plaintiff's:

> [f]ailure to execute release documents [does] not void the original agreement, nor [does] it render it deficient from the outset. Execution of a release [is] a mere formality, not essential to the formation of the contract of settlement. "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intent to be bound."
>
> [Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992) (quoting Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975)) (emphasis added).]

Additionally, "Where a party to an agreement-in-principle suddenly changes its mind and refuses to execute the written contract without explanation, the court must enforce the agreement." United States v. Lightman, 988 F.Supp. 448, 463 (D.N.J.1997); see e.g., Zong v. Merrill Lynch Pierce Fenner & Smith, Inc., 632 Fed. Appx. 692, 695 (3d Cir. 2015), cert. denied, 137 S. Ct. 1812 (2017) (enforceable settlement agreement where transcript demonstrated that the opposing party explicitly agreed to material terms); Finocchiaro v. Squire

3

Corrugated Container Corp., CIV.A.05-5154(SRC), 2008 WL 305337, at *3 (D.N.J. Jan. 28, 2008) (finding there was an enforceable agreement where parties placed terms of the agreement on the record and the opposing party agreed to those terms); United States v. Zoebisch, 2013 WL 5719246, at *2 (D.N.J. Oct. 18, 2013), aff'd, 586 Fed. Appx. 852 (3d Cir. 2014) ("As an agreement-in-principle had already been reached by the parties on February 24, 2012 [when on the record, the parties set forth material terms and agreed to them], Defendant's 'buyer's remorse' as to the terms of the Settlement Agreement into which he voluntarily and clearly stated his intention to enter does not justify reopening the case to permit litigation and reopen the case.").

The parties agreed to the essential terms of the settlement before the Court on March 2, 2018, namely that (1) the District would reimburse the parent in an amount not to exceed $42,194.00 for 2017-2018 tuition, (2) the District would reimburse the parent in an amount not to exceed $45,000 for the 2018-2019 school year, (3) for the costs already made by Petitioner for the 2017-2018 school year, the District would issue the payment in a lump sum but the remaining costs, as well as the costs for the 2018-2019 school year, will be made on a monthly basis, and (4) all payments made by the District shall be issued upon receipt of proof of payment and attendance of N.W. at the Lewis School within forty five (45) days of receipt of the aforementioned documentation.

Despite the clear terms that Petitioner agreed to, Petitioner now objects to the manner in which she is to receive reimbursement for N.W.'s tuition from the District as well as the waiver language in the agreement. Petitioner has sent multiple emails to the District's attorney seeking clarification over issues that are clearly spelled out in the agreement. For example, she asked if she would receive a lump payment "upon board approval" rather than "upon proof of receipt

4

**PMa057**

and payment of attendance." These terms are clearly set forth in the relevant part of the agreement above, which states "all payments made by the District shall be issued upon receipt of proof of payment and attendance of N.W. at the Lewis School within forty five (45) days of receipt of the aforementioned documentation."

The "reasonable amendments just to make clear" various intricacies in language in the agreement are immaterial and do not alter the terms of the agreement. Thus, the agreement as written leaves no gaps whatsoever and it is respectfully requested that the Court accept the agreement as written and issue a final Order.

**B.    THE SETTLEMENT IS VALID AND ENFORCEABLE EVEN THOUGH IT WAS CONDITIONED ON APPROVAL BY THE BOARD OF EDUCATION.**

Settlement agreements are contracts and are subject to the general rules of contract interpretation. Blunt v. Lower Merion Sch. Dist ., 767 F.3d 247, 282 (3d Cir. 2014).  One of the specific terms contained within the written agreement, and agreed to by all parties at the March 2, 2018 conference, is that the Board of Education must formally act and approve the settlement.  Every settlement agreement that involves the payment of public funds by a Board of Education is subject to this conditional term. See City of Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J. Super. 315, 327 (App. Div. 1986), certif. denied, 110 N.J. 152 (1988) (holding "a governmental body, such as a board of education, must act by formal action . . . [when] giving consent to the settlement of litigation").   This term is considered to be a "condition." Restatement (Second) of Contracts § 224; 13 Williston on Contracts § 38.4 (Lord ed. 2000).  In general, "parties may condition . . . one party's performance on the happening of some specified event." Id.  New Jersey Courts have specifically found that conditional contracts are enforceable. Id.; see also Houghwout v. Boisaubin, 18 N.J. Eq. 315, 318-319 (Ch. 1867)

5

**PMa058**

Here, the parties entered into a valid and enforceable conditional settlement agreement. The parties agreed on the essential terms and manifested an intention to be bound by those terms. Petitioner specifically agreed to the express conditional term—formal Board Approval—and is, therefore, obligated to comply with the settlement agreement. Plaintiff's late "change of mind" that took place after the Board of Education approved the settlement does not abrogate the fact that a "bargain clearly was struck," making this contract enforceable. See Pascarella, 190 N.J. Super. at 126.

Petitioner's 'buyer's remorse' as to the terms of the agreement when she voluntarily and clearly stated her intention to enter the agreement by signing it does not justify reopening the case to permit litigation. Petitioner's desire to receive a lump sum payment to facilitate her move to a new home is not a compelling reason for the Court to set aside a binding agreement. Accordingly, Respondent respectfully requests that this Court grant this motion, accepting the settlement entered into by the parties on March 2, 2018 and issue a final order.

## **CONCLUSION**

For the foregoing reasons, the District respectfully submits that the Court should accept the settlement agreement previously agreed upon by both parties and put on the record in the within matter on March 2, 2018 and issue a final Order reflecting same.

Respectfully submitted,

**PARKER McCAY P.A.**
Attorneys for Respondent,
Princeton Public Schools

By: _____
BRETT E.J. GORMAN

Dated: April 24, 2018

6

**PMa059**

J-1

**℩℩⁓ of Student Services**

"Original"

**File No. 12174-0005**

**PARKER McCAY P.A.**
Brett E.J. Gorman, Esq., Esquire
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey  08054**
**(856) 596-8900**
Attorneys for Respondent, Princeton Board of Education

| | |
|---|---|
| A.W. o/b/o N.W., | OFFICE OF ADMINISTRATIVE LAW |
| Petitioners, | OAL Docket No.: EDS-03738-17 AGENCY REF. NO. 2017-2576 |
| v. | CIVIL ACTION |
| PRINCETON BOARD OF EDUCATION. | **STIPULATION OF SETTLEMENT AND GENERAL RELEASE** |
| Respondent | |

This Settlement Agreement and General Release (the "Agreement") is entered into by and between A.W. o/b/o N.W. ("Petitioners"), and the Princeton Board of Education ("District") with its mailing office located at 25 Valley Road, Princeton, New Jersey 08540 (the Boards and Petitioners collectively referred to as the "Parties").

**WHEREAS,** N.W. is eligible for the provision of special education and related services under 20 U.S.C. §1415 et seq. and N.J.A.C. 6A:14-1.1 et seq.; and

**WHEREAS,** N.W. is domiciled in Princeton, and

**WHEREAS,** the Board is responsible for developing and implementing an I.E.P. for N.W. and

**WHEREAS,** a dispute arose regarding the provision of special education and related services to N.W.; and

1

**PMa060**

**WHEREAS**, the Parties in good faith have negotiated concerning this matter and have a desire to settle this matter in an amicable way, hereby agree as follows:

1.      The District shall reimburse the parent in an amount not to exceed $42,194 for all costs associated with N.W.'s tuition at the Lewis School for the 2017-2018 school year and in an amount not to exceed $45,000 for the 2018-2019 school year.  For the costs already made by Petitioner for the 2017-2018 school year, the District shall issue the payment in a lump sum but the remaining costs, as well as the costs for the 2018-2019 school year, shall be made on a monthly basis.  All payments made by the District shall be issued upon receipt of proof of payment and attendance of N.W. at the Lewis School within forty five (45) days of receipt of the aforementioned documentation.

2.      It is understood that all of the District's obligations under any law; including but not limited to the Individuals with Disabilities Education Act, Section 504, the New Jersey Law Against Discrimination, and the Americans with Disabilities Act; shall terminate on June 30, 2019 and the District's sole financial and educational obligations are the financial terms set forth in this agreement.

3.      The parent agree to waive transportation from the District for N.W. throughout the course of this agreement.

4.      During the course of this agreement, N.W. shall be dis-enrolled from the District and the District will not offer an IEP or supervise N.W.'s placement at the Lewis School. However, during the course of this agreement, should the Lewis School no longer be appropriate and N.W. seeks to return to the District, the District will provide evaluations and an IEP for

2

**PMa061**

placement at a program within the District. But the District's sole financial obligations to N.W. shall be what is set forth in paragraph 1.

5.     Petitioners shall dismiss with prejudice her federal court complaint currently pending under docket number 3:17-cv-11432 and shall withdraw her request for evaluations from the District.

6.     In consideration of the above, Petitioner, individually and on behalf of N.W., hereby fully and completely release the District, its members, officers, administrators, agents, servants, employees, or assigns from any and all claims they have or may have accrued against the District, under any law, regulation, or legal theory, and including, without limitation, Section 504 of the Rehabilitation Act of 1973, 29 *U.S.C.*§ 794(a), §705(8), the Family Education Rights and Privacy Act, 20 *U.S.C.* §1232g, *et seq.*, 29 *U.S.C.* §794(a), 42 *U.S.C.* §1983, 42 *U.S.C.* §1988, 29 *U.S.C.* §705(20), the Individuals with Disabilities In Education Act ("IDEA"), 20 *U.S.C.* §1400, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, the Rehabilitation Act of 1973, 20 U.S.C. §7801, Title II of the Americans with Disabilities Act, 42 *U.S.C.* §12132, *et seq.*, *N.J.A.C.* 6A:14-1.1, *et seq.*, *N.J.A.C.* 6A:14-3.7, Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* §2000, *et seq.*, the Americans with Disabilities Act, 42 *U.S.C.* §621,*et seq.*, all as amended, any statutes of New Jersey including but not limited to the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5-1, *et seq.*, or any other claims which have been or could have been asserted by N.W. or their petitioners on behalf of N.W., in any forum arising out of or connected with N.W.'s education by the District, including but not limited to, claims for attorney's and other professional fees and costs, reimbursement related to any unilateral and/or out-of-district placement for N.W., whether known or unknown, or to the extent permitted by

3

**PMa062**

applicable law through June 30, 2019. The Parties further agree by way of specific example, but without limitation, to waive their right to institute any actions against the District such as, administrative actions, civil actions, complaint investigations, or OCR investigations.

      7.    The Petitioner further agrees, jointly and severally, to indemnify and hold forever harmless the District, its members, officers, employees, administrators, agents, servants, and assigns from and against any and all claims, complaints, suits, demands, costs, expenses, evaluations, or legal fees other listed than above, penalties, losses, damages, judgments, challenges, or liabilities of any kind, successful or unsuccessful, brought or made by anyone, including N.W. or anyone acting on behalf of N.W., at any time subsequent to the effective date of this Agreement, and in any judicial or administrative court, tribunal, or other forum, in connection with or in any way related to the duties and responsibilities of the District toward N.W., including but not limited to, claims or actions arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., N.J.S.A. 18A:46-1 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 300.1 et seq., N.J.A.C. 6A:14-1 et seq., claims or actions arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., or any federal or state administrative regulations promulgated thereunder, 34 C.F.R. § 104.1 et seq., claims or actions for compensatory education, claims or actions arising under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, or any federal administrative regulations promulgated thereunder, 34 C.F.R. § 99 et seq., claims or actions arising under the New Jersey Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 et seq., claims or actions arising under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., claims or actions arising under the Anti-Bullying Bill of

4

PMa063

Rights Act ("ABBRA"), N.J.S.A. 18A:37-13 et seq., claims or actions arising under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq., claims or actions arising under 42 U.S.C. § 1983, claims or actions for personal injury or property destruction, or any other claims or actions whether brought pursuant to statute, common law, or otherwise, through the date of the agreement, as long as the District fulfills its obligation in accordance with the terms of this Agreement.

8.     The Parties have reached this compromise to avoid the expense, inconvenience, and potential acrimony of a due process hearing under the special education laws. It is understood that the execution of this Agreement does not constitute an admission by the District. The District specifically disclaims any liability to N.W. except as set forth in this Agreement.

9.     This Agreement contains the entire Agreement and understanding between the Petitioners and Respondents and constitutes a full and final Agreement on any and all issues. This Agreement shall be governed by the laws of the State of New Jersey.

10.     The Parties have entered into this Agreement freely and voluntarily with a full understanding of their rights and the contents of this Agreement.  The Parties acknowledge that they had the opportunity to consult with legal counsel or a representative of their choice and that they reviewed this Agreement in detail with their counsel or representative and fully understand its requirements and limitations.

11.     This Agreement is dispositive of all issues in dispute between the Parties hereto, and is intended to constitute a final resolution of the dispute between the Parties.

12.     The District's financial obligation, as set forth herein, shall represent the total and maximum financial responsibility of the Board toward N.W. from the beginning of time

5

**PMa064**

through June 30, 2018.

13.    This Agreement shall fully resolve all issues between the Parties, including all issues that were raised, or could have been raised, in the due process petition filed by the Parent. Upon final execution, this Agreement shall be furnished to the Office of Administrative Law, thus dispensing with and forever dismissing the matters above. The Parent fully agree to take any additional action that may be necessary to ensure the dismissal/withdrawal with prejudice of the aforementioned litigation and/or due process petition.

14.    This Agreement represents the compromise of disputed claims and shall never be treated as an admission of liability by either party for any purposes whatsoever. This Agreement cannot be construed or interpreted as an admission on the part of the Board that it has failed to provide N.W. with a free and appropriate public education for the relevant time period or any other period of time, or that the program/placement as provided herein is required to provide N.W. with a free and appropriate public education any period of time.

15.    The "WHEREAS" clauses of this Agreement are provided merely for background purposes, and it is expressly understood that such clauses are not material terms and conditions of this Agreement and shall carry no legal force and effect.

16.    The Petitioner acknowledge that they have read and understand the terms of this Agreement, that they have had the opportunity to have the Agreement reviewed by counsel, that they are satisfied with the advice of their respective counsel, and that they are entering into this Agreement knowingly, freely, voluntarily, without coercion and not under the influence of anything or anyone.

17.    No party shall be deemed a "prevailing party" as a result of this agreement.

6

**PMa065**

18.     The Petitioner agrees and acknowledges that this Agreement is subject to approval by the Princeton Board of Education during its next regularly scheduled meeting following the execution of this Agreement.  The agreement will be recommended for approval by the board solicitor.

19.     The Petitioner agrees that the terms of this Agreement shall remain <u>strictly confidential</u> to the fullest extent permitted by law, and they shall not share or communicate the terms of same with any other individual, unless enforcement of same is sought by either party in a court of law.  The agreement may be shared with therapists, potential out of district schools, professionals, or state agencies.

20.     This Agreement shall be interpreted, enforced, and governed under the laws of the State of New Jersey.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

21.     If, during the term of this Agreement, a specific clause of the Agreement is determined to be illegal or in violation of any Federal or State law, the remainder of the Agreement shall be affected by such a ruling and shall remain in full force and effect.  This Agreement may only be amended in writing by way of a document signed by all Parties.

7

**PMa066**

**IN WITNESS HEREOF**, the Parties have set their hands this _____ day of _____

2017.

BY: _____          DATED: 3-26-18
   Board President, Princeton
   Board of Education

BY: _____          DATED: 3-22-18
   Board Secretary, Princeton
   Board of Education

Petitioners

_____              DATED: 3/2/2018
   A. W. 6 6 6 N.W., Petitioners

4819-4691-7713, v. 1

8

**PMa067**

 **Princeton**
Public Schools


Live to Learn, Learn to Live

# Administrative Offices

25 Valley Road, Princeton, New Jersey 08540   t 609.806.4200

March 23, 2018

To Whom It May Concern:

I, Stephanie Kennedy, certify that I am the duly appointed Secretary to the Princeton Board of Education.  I further certify that at its Board Meeting held on March 20, 2018, the following resolution was adopted by the Board of Education:

Special Education Settlement Agreement

RESOLVED, that the Board of Education approve the Special Education Settlement Agreement #111715-11-2, on file in the Student Services Office and authorize the Board President to sign the agreement for the sum not to exceed $87,194.00, for the period of September 1, 2017 through June 2019. The Agreement will be funded through general funds.

BE IT FURTHER RESOLVED, that the Board of Education authorizes the administration to execute the necessary documents.

Regards,

Stephanie Kennedy
Business Administrator/Board Secretary

**PMa068**

 **PARKER McCAY**

Parker McCay P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054-5054

P: 856.596.8900
F: 856.596.9631
www.parkermccay.com

**Brett E.J. Gorman, Esquire**
P:  856-985-4051
F:  856-810-5852
bgorman@parkermccay.com

May 7, 2018

File No. 12174-0005

<u>**Via Facsimile**</u>
The Honorable Dean J. Buono A.L.J.
Office of Administrative Law
P.O. Box 049
Trenton, NJ 08625-0049

> Re:   **A.W. o/b/o N.W. v. Princeton Public Schools Board of Education**
>       **OAL Docket No.: EDS 03738-2017 S; Agency Ref. No.: 2017-25766**

Dear Judge Buono:

As Your Honor is aware, this office represents the Princeton Public Schools (hereinafter the "District"), in the above-referenced matter.  I am in receipt of Petitioner's letter dated May 4, 2018.  While the District has numerous concerns with the letter submitted by Petitioner, it will focus only on four main areas.

First, as set forth in the initial brief, Petitioner did not revoke her consent to the agreement.  Rather, on the eve of the board meeting to approve the settlement and subsequently thereafter, Petitioner sought confirmation that the settlement had been approved by the board as written.  A review of my certification and the attached documents confirms that Petitioner had not revoked consent for the settlement agreement at all, let alone pursuant to 20 <u>U.S.C.</u> 1415(f)(B)(iv).  Second, Petitioner notes on page two that there is a discrepancy between different paragraphs within the settlement agreement and that this inconsistency "reinforces the Petitioner's belief (sic) last sentence of paragraph four was quickly inserted into the agreement by Mr. Gorman after the negotiations on the document and which Petitioners had not agreed with…"  However, as the Court will recall, Your Honor's secretary printed out the agreement and handed the parties the physical copy of the settlement agreement that was executed by all parties and read into the record.  Consequently, Petitioner had a physical copy of the agreement that she reviewed in front of the Court, signed and then, through *voir dire* by the Court, stated she agreed to the terms therein.  In addition to improperly accusing the undersigned of including additional terms to a settlement agreement after it was negotiated, Petitioner made a direct misrepresentation to the Court that oversaw placing this agreement on the record.   Third, Petitioner states that the District e-filed the agreement in an un-redacted form for the District Court of New Jersey.  This is also false.  A letter was filed with the District Court that only used

COUNSEL WHEN IT MATTERS.<sup>SM</sup>

**FM PARKER McCAY**

Petitioners' initials with a copy of the executed settlement agreement that also only utilized Petitioner's initials. No part of this document provides any personal identifiable information on the public filing system and Petitioner was made aware of this fact by email from the undersigned immediately following submission of that letter. Finally, Petitioner states that she "suspect(s) Mr. Gorman took this action for the purpose of deterring the U.S. District Court from issuing an opinion on now pending motions for summary judgment on the issue of stay put…" That is precisely why the letter was submitted and that is the exact request submitted to that Court. As a settlement had been reached in this matter that disposed of the matter in the District Court, the District Court should not issue a decision in that matter until this Court ruled on the pending motion to enter the settlement.

Accordingly, the District requests that the Court enter a final order closing this matter. As Petitioner has acknowledged that she has already received a check meeting the financial terms set forth in the agreement, the District has admittedly performed and the case should be dismissed. At this point, Petitioner seeks to have the Court strike the waiver language from the agreement while also receiving the full payment from the District. As the Court is aware, the waiver set forth in the agreement was a necessary part of the agreement and no agreement would ever have been reached had the waiver language not been agreed to by Petitioner. Therefore, as submitted in the initial motion, and as agreed to by both parties, it is respectfully submitted that the settlement agreement be entered into a final order as written.

Respectfully submitted,

BRETT E.J. GORMAN

BEJG/sc
cc:     Micki Crisafulli – via email
        A.W. – via email

4828-5085-5269, v. 1

**PMa070**



609-924-5200 (office); 609-933-1774 (cell)
609-924-5277 (fax)
_____.com

May 16, 2018

<u>Via Facsimile (609)-689-4100</u>
Honorable Dean J. Buono, A.L.J.
Office of Administrative Law
P.O. Box 049
Trenton, NJ 08625

      Re:    **<u>A.W. o/b/o N.W. vs. Princeton Regional BOE (Agency: 2017-25766)</u>**
              **<u>Docket No. EDS 03738-2017 S</u>**

Dear Judge Buono:

Petitioners respectfully submit this letter in response to Mr. Gorman's letter submitted to the Court today.

First, I would like to clarify that I believe Mr. Gorman misstated the content of my letter to the U.S. District Court in the email that he forwarded to Your Honor. To clarify this, I have annexed hereto both his letter to the U.S. District Court (in which he states the case was settled)(Pa1-2), and my reply in which I indicate, accurately, that there is an on-going dispute as to the settlement (Pa3).

Second, I would like to confirm that it remains our position there should be equitable reformation of the settlement. However, in the event the Court were not inclined to order equitable reformation, we argue for rescission, not enforcement of the agreement as written. Petitioners submit that enforcing the agreement as written, as urged by the Princeton Public Schools District (the District), would be <u>dire</u> as it would leave N.W. *without a viable placement option* for the 2018-2019 school year.

To explain, the yearly tuition cost at The Lewis School is approximately $43,000.00. The Lewis School requires this payment in full, up front. However, under the terms of the agreement, the petitioners would be required to pay all tuition to The Lewis School, to be reimbursed by the District on a monthly basis following proof of attendance and proof of payment, with reimbursement to be made within forty five days. Thus, the first reimbursement check petitioners would receive would be approximately November 15, 2018, in the amount of about $4,000.

However, when the agreement was entered, it was not contemplated that petitioners would be required to, again, incur and carry a debt of $43,000 for a year. Rather, it was contemplated that a payment plan would be available for N.W.'s tuition at The Lewis School for next year. Indeed, Mr. Gorman urged A.W., upon negotiating the deal, that she should accept the reimbursement terms offered by the District because these were the only terms the District could offer and The Lewis School has routinely provided payment plans in his experience. However, despite several requests made to the Lewis School (as of March 5, 2018), a payment plan has not yet been offered to the family. Instead, as per the annexed correspondence, The Lewis School requested the full tuition payment from petitioners for next year by March 8, 2018, and then they extended this request until May 11, 2018 to maintain her enrollment (Pa4-5).

**PMa071**

Letter to Hon. Dean J. Buono, ALJ
A.W. o/b/o N.W. v. Princeton Public Schools
May 16, 2018
Page 2

It is N.W.'s strong preference to remain schooled at The Lewis School for next year. However, the financial burden on the family, given the family's extenuating financial constraints, is too high if a payment plan is not forthcoming. (While the District reimbursed petitioners for the 2017-2018 school year, the funds used for that tuition were too obtained from *a loan* and carrying that debt caused undue financial stress and depletion of already limited finances.)

Alternatively, the petitioners did request, when they negotiated the deal, the alternative option that N.W. may be re-enrolled in-district, explained in prior correspondence. However, re-enrolling N.W. in the District is not a viable option under the agreement <u>as expressly written</u>, because the agreement also simultaneously has waivers releasing the school district from any responsibility to N.W. Also, the District has not taken a position on whether they would even re-enroll N.W. in the District acknowledging her current grade level at The Lewis School (a rising 10th grader). This is a concern for petitioners, given the prior dispute between the parties. As your Honor may recall, the District refused to allow N.W. to take an accelerated curriculum at the Fusion Academy, which led to disruption of her program at Fusion (and then the emergent petition followed by placement at The Lewis School.) We submit it would be debilitating for N.W. if she were enrolled in District to be required to repeat ninth grade. Yet the District will provide no assurances on this subject, while simultaneously insisting on continued waivers.

Thus, the chain of events has placed Petitioners in a quandary. If the settlement is enforced, as urged by the District, we believe there is no feasible option for N.W. for the 2018-2019 school year. (It was because petitioners envisioned this possibility that they invoked the three-day rule and requested clarification on future waivers if N.W. were enrolled in district, in honoring the agreement.)

To make matters worse, Mr. Gorman, while aware of these issues, contacted the U.S. District Court to advise the case was settled (as confirmed in the annexed letter). Consequently, the U.S. District Court ruled that it would administratively terminate a decision on N.W.'s appeal on the stay put question, pending resolution of the settlement issues before this Court. If the stay put motion could be resolved, then at least N.W. would have assurances as to a pending placement while the case before Your Honor remains pending. However, at present, stay put is placed on hold pending Your Honor's ruling.

Thank you again for Your Honor's kind attention to this matter.

Respectfully submitted,

A█████ P. W█████

cc.   Mr. Brett Gorman (via facsimile)

**PMa072**

██████ Street
Princeton, NJ 08542
609-924-5200 (phone); 609-924-5277 (fax);
Attorney for Petitioner

| A.W. o/b/o N.W.<br><br>                    Petitioner,<br><br>v.<br><br>PRINCETON PUBLIC<br>SCHOOLS BOARD<br>OF EDUCATION,<br><br>                    Respondent. | STATE OF NEW JERSEY<br>OFFICE OF ADMINISTRATIVE LAW<br><br>OAL DOCKET NO.: EDS 03738-2017S<br>0890-17 AGENCY REF. NO.: 2017-25766<br><br>**NOTICE OF MOTION FOR RECONSIDERATION<br>AND/OR FOR A STAY OF ENFORCEMENT AS TO<br>APPEAL REGARDING STAY PUT** |

TO:     Brett E.J. Gorman, Esq., Parker McCay
        9000 Midlantic Drive, Suite 300
        Mount Laurel, NJ 08054

**PLEASE TAKE NOTICE** that the undersigned hereby moves before the

Honorable Dean J. Buono, ALJ, Office of Administrative Law, P.O. Box 049, Trenton,

NJ 08625-0049, for (1) Reconsideration of the Court's Decision and Order of May 17,

2018, which granted the motion filed by Respondent, Princeton Public Schools District

Board of Education ("the District"), to enforce the settlement of March 2, 2018

precisely "as written"; and (2) in the event said motion is denied, for a stay of the

provision contained in said document which indicates Petitioners will dismiss with

prejudice their appeal in A.W. o/b/o N.W. v. Princeton Public Schools Bd. of Ed.,

Civil Action No. 3:17-cv-11432-MAS-TJB;

**PLEASE TAKE FURTHER NOTICE** that in support of this motion, the

undersigned relies upon the enclosed Brief and Appendix which includes a

**PMa073**

Certification of A.W. and Exhibits thereto;

**PLEASE TAKE FURTHER NOTICE** that a proposed for of order is submitted

herewith. Petitioners agree to waive oral argument and consent to disposition on the

papers.

Respectfully submitted,



Dated: May 29, 2018

| A.W. o/b/o N.W.<br><br>     Petitioner,<br><br>v.<br><br>PRINCETON PUBLIC<br>SCHOOLS BOARD OF<br>EDUCATION,<br><br><br>     Respondent. | STATE OF NEW JERSEY<br>OFFICE OF ADMINISTRATIVE LAW<br><br>OAL DOCKET NO.: EDS 03738-<br>2017S<br>0890-17 AGENCY REF. NO.: 2017-25766 |

---

### PETITIONER'S BRIEF IN SUPPORT OF MOTION
### FOR RECONSIDERATION AND ALTERNATIVELY, A STAY

---



A█████ P. W██████.
█████ Street
Princeton, NJ 08542
609-924-5200
████████.com
Attorney/████████ for N.W.

**PMa075**

TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................1

STATEMENT OF THE CASE...........................................4

    A. Reconsideration request....................................4
    B. Facts and circumstances as to March 2, 2018 settlement.....5

POINT ONE

RECONSIDERATION IS WARRANTED BECAUSE THE DECISION REJECTED
EQUITABLE REFORMATION ON THE GROUND A.W. FAILED TO
ADEQUATELY OBJECT TO THE AGREEMENT BEFORE APPROVAL AND
THERE "COULD BE NO FRAUD" BUT REVOCATION IS NOT NECESSARY
FOR EQUITABLE REFORMATION TO BE GRANTED WHICH IS BASED ON
AN AGREEMENT BEING VALID AND  REFORMATION IS NECESSARY TO
PREVENT A FRAUD................................................10

POINT TWO

RECONSIDERATION IS WARRANTED BECAUSE ANY WAIVER OF RIGHTS
UNDER THE IDEA MUST BE KNOWING AND VOLUNTARY AND TO
INTERPRET THE SETTLEMENT AGREEMENT AS EFFECTING A WAIVER
BASED ON ALLEGED POST-CONTRACTING ACQUIESCENCE IS CONTRARY
TO PROCEDURAL SAFEGUARDS UNDER THE IDEA.......................12

POINT THREE

RECONSIDERATION IS WARRANTED BECAUSE THE TIME PERIOD
BETWEEN ACCEPTING A SETTLEMENT IN COURT AND BOARD APPROVAL
AND EXECUTION OF THE WRITTEN INSTRUMENT PROVIDES AN
OPPORTUNITY FOR THE PARTIES TO RESOLVE ANY CONCERNS OR
CONTINGENCIES IN THE INSTRUMENT TO PROTECT A DISABLED
MINOR'S SIGNIFICANT EDUCATIONAL RIGHTS; PPS'S BLANKET
REFUSAL TO DEAL WITH A.W. DURING THAT PERIOD WAS CONTRARY
TO PROCEDURAL SAFEGUARDS UNDER THE IDEA AND EXPECTED
STANDARDS OF PROFESSIONAL CONDUCT (INCLUDING PPS'S CONDUCT
IN OCTOBER 2015)..............................................13

POINT FOUR

RECONSIDERATION IS WARRANTED BECAUSE THE DECISION's IMPACT
IS THAT N.W. WOULD HAVE NO RIGHTS (WAIVERS REMAIN IN TACT)
WERE N.W. TO BE ENROLLED IN PUBLIC SCHOOL BUT SUCH AN
OUTCOME IS CONTRARY TO LAW AND PUBLIC POLICY BECAUSE A
PUBLIC SCHOOL DISTRICT SHOULD NOT BE PERMITTED TO, AS A
CONDITION OF SETTLING A DUE PROCESS PETITION, REQUIRE THAT

PMa076

A DISABLED STUDENT WAIVE ALL RIGHTS UNDER IN THE IDEA IN
FUTURO WHILE THE STUDENT IS ENROLLED IN PUBLIC SCHOOL..........15

    A. A school district's attempt to extract all
       encompassing future waivers under the IDEA as to a
       time when the student will be enrolled in public
       school effectively excludes the student from public
       school and should be disallowed as a matter of law and
       public policy...........................................15

    B. A school district's demand for future waivers under
       the IDEA while a student is enrolled in public school,
       as a condition of settling a due process petition, as
       PPS has repeatedly done here, is overreaching and
       discriminates against the student under the ADA and
       constitutes wrongful retaliation against the student
       for asserting her rights in a due process petition.......18

POINT FIVE

IN THE EVENT THIS COURT DOES NOT GRANT EQUITABLE
REFORMATION AND ALLOWS THE DISPUTED WAIVERS TO STAND,
PETITIONERS ARE ENTITLED TO A STAY OF ENFORCEMENT AS TO THE
SETTLEMENT PROVISION REQUIRING DISMISSAL OF THEIR APPEAL ON
STAY PUT......................................................19


CONCLUSION....................................................22

ii

PMa077

equal benefits under the law, and equal opportunities for participation in services and activities, as other students. 34 C.F.R. 104.33; 34 C.F.R. 104.37; 104.34; 42 U.S.C. 12131-12132.

We submit it is undue overreaching and unlawfully discriminates and retaliates against a disabled child when a school denies a disabled child equal rights under the law, while the student is enrolled in public school, on account of that student's parent having asserted the child's educational rights in a due process proceeding. For this reason, future waivers of rights while N.W. is in the future enrolled in public school, should she re-enroll, must not be allowed.

<u>POINT FIVE</u>

IN THE EVENT THIS COURT DOES NOT GRANT EQUITABLE REFORMATION AND ALLOWS THE DISPUTED WAIVERS TO STAND, PETITIONERS ARE ENTITLED TO A STAY OF ENFORCEMENT AS TO THE SETTLEMENT PROVISION REQUIRING DISMISSAL OF THEIR APPEAL ON STAY PUT

Under 20 U.S.C. 1415(e)(3), the stay put rule remains in effect "during the pendency of any proceedings" and "*until* all such [due process] proceedings *have been completed*." 20 U.S.C. 1415(e)(3). This command was explained in <u>Drinker v. Colonial School District</u>, 78 F.3d 859 (3d Cir. 1996).

As set forth in <u>Drinker</u>, stay-put protections remain in effect until *all issues* regarding the child's educational

19

**PMa078**

placement are <u>finally resolved</u> "beyond the point of either collateral attack in either further administrative proceedings *or direct attack in judicial appeal*." 78 F.3d at 865-866. For example, in <u>Drinker</u>, the Defendant, Colonial school District, had argued that the underlying IDEA litigation had settled, because the placement question had been decided by the hearing officer and the parents did not appeal. 78 F.3d at 866. The Third Circuit ruled that nonetheless, the district court was correct in applying the stay put mandate under section 1415(e)(3), because issues as to transition periods and timing of placement were still unresolved. <u>Id.</u> at 866.

Here, significant issues regarding N.W.'s future educational placement remain in dispute as there is a continued controversy over the settlement that seriously impacts N.W.'s future educational stability. Petitioners have the right to litigate their claims; however, if they are forced to dismiss their stay-put case, they would be coerced into accepting PPS's unfair settlement because that would be the only way in which N.W. could go to school for the 2018-2019 school year, unless the family moves to another district now. That outcome would be coercion, in that petitioners are forced into accepting PPS's terms that they

20

disagree with, and seek to litigate, because if they do not go along with PPS's position, N.W. has no school option.

We respectfully recall that during court on March 2, 2018, this Court indicated that A.W. o/b/o N.W.'s adherence to the terms of the settlement – *i.e.*, dismissal of the federal appeal on stay put – is conditional upon PPS's compliance. We submit that in view of the issues herein, PPS is not adhering to the agreement it promised to A.W. o/b/o N.W. on March 2, 2018, and thus, it would be unfair to order them to dismiss their federal case, which provides an opportunity for educational stability. There is no unfairness, inconsistency, or injustice in allowing that case to proceed which is required by <u>Drinker</u>, 78 F.3d at 865-866.

Lastly, we most respectfully point out that ordering petitioners to dismiss their federal appeal on stay put, given the instant controversy, would involve this Court ordering petitioners from withdrawing an appeal from this Court's own decision, as to which petitioners have a right of appeal. We respectfully request that the Court decline such an avenue and defer to the U.S. District Court on the continued merits of that matter.

21

PMa080

<u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court reconsider its decision of May 17, 2018 and grant petitioners the relief they have requested, namely, reformation of the parties' agreement to confirm their intent as expressed on March 2, 2018, meaning that, should N.W. be enrolled in public school, the waivers are void; or alternatively, the waivers are void in any case as contrary to law and public policy. Additionally, in the event petitioners' request is denied, petitioners request a stay of the order enforcing the March 2, 2018 settlement to the extent it would direct Petitioners to dismiss, with prejudice, their appeal of this Court's stay-put order.

Respectfully submitted,



*s/A_____ P. W_____*

A_____ P. W_____

Dated: May 29, 2018

PMa081

 **PARKER McCAY**

Parker McCay P.A.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054-5054

P: 856.596.8900
F: 856.596.9631
www.parkermccay.com

**Brett E.J. Gorman, Esquire**
P: 856-985-4051
F: 856-810-5852
bgorman@parkermccay.com

June 12, 2018

File No. 12174-0005

**Via Facsimile**
The Honorable Dean J. Buono A.L.J.
Office of Administrative Law
P.O. Box 049
Trenton, NJ 08625-0049

   **Re:**  **A.W. o/b/o N.W. v. Princeton Public Schools Board of Education**
       **OAL Docket No.: EDS 03738-2017 S; Agency Ref. No.: 2017-25766**

Dear Judge Buono,

  As you know, this office represents the Princeton Public Schools in the above-referenced matter. Please accept this letter brief in lieu of a more formal submission regarding Petitioner's Motion for Reconsideration.

## LEGAL STANDARD

  Motions for reconsideration are granted sparingly and only under very narrow circumstances. See Dover-Chester Associates v. Randolph Tp., 419 N.J. Super. 184, 195–96 (App. Div. 2011). The court will grant a motion to reconsider only under very narrow circumstances. In Cummings v. Bahr, 295 N.J. Super. 374, 384–85 (App. Div. 1996), the court set forth the narrow standard for governing motions for reconsideration:

    Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either (1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.

    [Id. at 384 (citing D'Atria v. D'Atria, 242 N.J. Super. 392, 401–402 (Ch. Div. 1990).]

**PM** **PARKER McCAY**

Reconsideration is not an appropriate vehicle to bring to the attention of the court evidence that was available, but not presented, in connection with the initial argument. J.P. v. Smith, 444 N.J. Super. 507, 521 (App. Div. 2016). Indeed, litigants cannot and should not file motions for reconsideration "merely because of dissatisfaction with a decision of the Court." D'Atria, supra, 242 N.J. Super. at 401. Similarly, motions for reconsideration cannot be used by litigants to get "a second bite of the apple" if their adversary prevailed on the initial motion. See Morey v. Wildwood Crest, 18 N.J. Tax 335, 339 (App. Div. 1990).

## LEGAL ANALYSIS

In the May 17, 2018 Decision Your Honor properly found:

> [T]he Settlement Agreement is clear and unambiguous on its face. It can only be interpreted in one manner. The Settlement Agreement is not susceptible of any other reading and must be enforced as it was written . . . Petitioner swore – under oath – that she consented to the agreement. Petitioner then signed the agreement in [Judge Buono's] presence. A settlement cannot be voided or avoided simply because a party later determines that maybe they could get a better deal, or in this case, recoupment of counsel fees. Any attempt to have it set aside is a burden petitioner has not carried in these proceedings. They have asserted no fraud, undue influence or mutual mistake to entitle them to set aside the agreement.

The Court has already examined the issues raised and all relevant statutory and case law before granting Respondent's Motion to Accept the Settlement; which the District incorporates herewith as further opposition to the application filed by Petitioner. Your Honor's decision was thorough and adequately addressed all arguments advanced by the parties. Petitioner cannot demonstrate new or additional facts that were not readily available at the time the Court reached its decision. Petitioner is not entitled to a "second bite at the apple" because she is dissatisfied with the decision. As Petitioner has identified no mistake of law or fact, which would require reconsideration, Petitioner's motion must be dismissed.

Respectfully submitted,

BRETT E.J. GORMAN

BEJG/ke
Cc: Micki Crisafulli – via email
     A.W. – via email

**PMa083**

## The Lewis School of Princeton

# Invoice

**53 Bayard Lane
Princeton, NJ 08540**

| DATE | INVOICE # |
|------|-----------|
| 9/27/2017 | 168 |

BILL TO



Ms. █████ P. W████
█████████████
Princeton, NJ  08542
Re: N████ W█

| DUE DATE |
|----------|
| 9/27/2017 |

| ITEM | DESCRIPTION | SESSIO... | RATE | AMOUNT |
|------|-------------|-----------|------|--------|
| Misc Income | Student Auditing for the period of September 13 thru September 29, 2017 10-1/2 days | | 2,350.00 | 2,350.00 |

| | |
|---|---|
| **Payments/Credits** | $0.00 |
| **Balance Due** | $2,350.00 |

**PMa084**

SCHOOL
OF PRINCETON

<u>ENROLLMENT CONTRACT 2017-2018</u>

THE LEWIS CLINIC & SCHOOL FOR EDUCATIONAL THERAPY ENROLLMENT CONTRACT 2017-2018

**PLEASE COMPLETE SECTIONS A, B & C PROVIDING FULL DETAILS. THIS CONTRACT WILL BE EXECUTED UPON THE DETAILED AND SATISFACTORY COMPLETION OF THE INFORMATION REQUESTED IN SECTIONS A, B & C.**

W█████ N█████ _____

| Student's last name | first | middle | student's social security # | male/female | birth date |

_____
Street                          city             state              zip+4      telephone                    Email

**Section A:**

Suffix _____                                      Suffix _____

_____                          _____
Last name          first          middle               Last name          first          middle

Address if different from above                        Address if different from above
Home phone if different from above _____             Home phone if different from above _____

**Section B:**

Employer (name of bus. if self-employed) _____       Employer (name of bus. if self-employed) _____
What kind of business?_____            What kind of business?_____
Title/ position _____                Title/ position _____
Business Address:_____                 Business Address:_____

Business phone (_____) _____                 Business phone (_____) _____
cell phone     (_____) _____                 cell phone     (_____) _____
e-mail         _____                 e-mail         _____

**Section C:**

Emergency contact name_____ phone number _____ relationship _____
Name and address to which academic reports and other notices should be sent **if in addition to the first parent listed above:**
Name_____Address_____
Name and address to which tuition and fee bills should be sent **if in addition to the first parent listed above:**
_____
Name of spouse **(if different from the above):** spouse of father _____  Spouse of mother_____
Paternal grandparents' names & addresses _____

Maternal grandparents' names & addresses _____
_____

The above-named student is **conditionally** accepted for enrollment in the 2017-18 school year subject to compliance with the terms of this enrollment contract. The undersigned parents, legal guardians, or parent and guarantor agree to pay the full-year tuition as stated below. Failure to provide a timely payment as specified will create the need to release placement to another student.

**Upper School Level Tuition (pro rata based upon 10/2/2017 start date)**
**(Please refer to Page 2, Paragraph # 1 under Additional Terms)**          $36,952.00

<u>Payment Terms:</u>

On or before **Monday, October 2, 2017**  $36,952.00

The foregoing rates and payment plans are quoted based upon cash payment by certified personal or cashier's check, confirmed electronic funds transfer, or personal check. All other forms or methods of payment, including third party financing and other credit payments, are subject to an additional handling charge for staff processing equal to 2.5% of each such payment.

Signatures of <u>two</u> parents or legal guardians, or a parent and a guarantor:

X_____ Social Sec#_____ Date: _____
X_____ Social Sec#_____ Date: _____



**ENROLLMENT CONTRACT 2017-2018**

### THE LEWIS CLINIC & SCHOOL FOR EDUCATIONAL THERAPY ENROLLMENT CONTRACT 2017-2018

PLEASE COMPLETE SECTIONS A, B & C PROVIDING FULL DETAILS.  THIS CONTRACT WILL BE EXECUTED UPON THE DETAILED AND SATISFACTORY COMPLETION OF THE INFORMATION REQUESTED IN SECTIONS A, B & C.

| Student's last name | first | middle | student's social security # | male/**female** | birth date |

▮▮▮▮▮▮▮ Princeton NJ 08542 609-924-5200

| Street | city | state | zip+4 | telephone | Email |

**Section A:**

Suffix MS

W▮▮▮▮ A▮▮▮▮▮

| Last name | first | middle |

Suffix _____

| Last name | first | middle |

Address if different from above _____

Home phone if different from above _____

Address if different from above _____

Home phone if different from above _____

**Section B:**

Employer (name of bus. if self-employed) Self
What kind of business? LAW
Title/position _____
Business Address: ▮▮▮▮▮▮

Business phone 609 ) 924-5200
cell phone 609 ) 933-1774
e-mail _____

Employer (name of bus. if self-employed) _____
What kind of business? _____
Title/position _____
Business Address: _____

Business phone (____)
cell phone (____)
e-mail _____

**Section C:**

Emergency contact name A▮▮▮ S▮▮▮ phone number ▮▮▮▮▮ relationship Uncle

Name and address to which academic reports and other notices should be sent **if in addition to the first parent listed above:**
Name_____ Address_____

Name and address to which tuition and fee bills should be sent **if in addition to the first parent listed above:**
_____

Name of spouse (**if different from the above**): spouse of father _____   Spouse of mother _____
Paternal grandparents' names & addresses N/A Deceased _____

Maternal grandparents' names & addresses Deceased _____

The above-named student is **conditionally** accepted for enrollment in the 2017-18 school year subject to compliance with the terms of this enrollment contract.  The undersigned parents, legal guardians, or parent and guarantor agree to pay the full-year tuition as stated below.  Failure to provide a timely payment as specified will create the need to release placement to another student.

Upper School Level Tuition (pro rata based upon 10/2/2017 start date)
(Please refer to Page 2, Paragraph # 1 under Additional Terms)                    $36,952.00

**Payment Terms:**
    On or before Monday, October 2, 2017   $36,952.00

The foregoing rates and payment plans are quoted based upon cash payment by certified personal or cashier's check, confirmed electronic funds transfer, or personal check. All other forms or methods of payment, including third party financing and other credit payments, are subject to an additional handling charge for staff processing equal to 2.5% of each such payment.

**Signatures of two parents or legal guardians, or a parent and a guarantor:**

X ▮▮▮▮▮▮▮▮   Social Sec# ▮▮▮▮▮▮   Date: 9-29-2017
X _____   Social Sec# _____   Date: _____

**PMa086**

Unless otherwise indicated, the charges herein cover tuition for a full academic year, which typically runs from September through May, and includes both the Summer Study Morning Program for current full-time students and the **Tuition Refund Insurance Plan**. Educational books must be returned 1 week prior to end of class in May; if lost, defaced or not returned, the replacement cost becomes the financial responsibility of the parents.

As preparation for the full Academic Year, all new students are required to attend the Summer Study Morning Program prior to starting in September; there is an additional one-time fee to parents of new students for the Program. For parents of current students, enrollment in the Summer Program's Morning Study Session is mandatory but not automatic: **A Summer Program Morning Study Form (no fee) will be sent under separate cover.** Enrollment forms and fee information for the Summer Afternoon Enrichment Program will be sent early in the New Year. Students from other schools will be accepted for placement in the Summer Programs left unreserved by current families upon expiry of the deadline for the return of these forms by Lewis Clinic families.

Once the legally undersigned have selected and fulfilled the payment terms, the Clinic will hold a place for the student at the proposed-appropriate level, provisional upon on-time payment of tuition (see options above) and pending the student's satisfactory completion of the current school year and, in the case of certain students, the fulfillment of conditions that may include additional and/or preliminary therapy, as necessary for the child. If, prior to the start of the Academic Year, any such condition(s) are not met in the estimation of the School's Administration and/or the Director, the specified Enrollment Commitment fee is non-refundable and the provisions of this Contract and of the Tuition Refund Insurance Plan govern tuition refunds, if any.

**Additional Terms:**

1. **Regarding level changes:** During the first marking period of the Fall semester, you will be notified of any change in your child's placement. At that time, a credit or additional charge will be made to reflect the student's final academic level. Additionally, some children may progress well enough during the academic year to move from one level to the next. Therefore, The Lewis Clinic reserves the right to reassign a student to the appropriate level when the Clinic reasonably deems such action to be in the best interest of the student. The undersigned agree that the Enrollment Contract may be amended to reflect any change in tuition resulting from a student's need to be reassigned at any point during the year.

2. **Withdrawal.** In the event the Clinic is given written notification by the undersigned of the student's withdrawal prior to the beginning of the school year, no portion of the tuition will be refunded, under any circumstances.

3. **Tuition Refund Insurance.** Any student attending the Clinic shall automatically be enrolled into this Plan. Under specific conditions provided for under the Tuition Refund Plan, reimbursement to the insurer of some or all of any paid tuition may be available. The undersigned acknowledge receipt and understanding of a publication from A.W.G. Dewar, Inc., concerning their Tuition Refund Plan. The undersigned acknowledge the terms of the Tuition Refund Plan and in the event of separation, agree to cooperate according to the terms of their policy in effect at the time of any claim. Additionally, the undersigned hereby authorize the Clinic to process and collect any claim payment to which they may be entitled under the Tuition Refund Plan and to credit it to the student's account, paying any excess to the undersigned. The undersigned acknowledge that the Tuition Refund Plan, which provides coverage for medical reasons and non-medical reasons (voluntary withdrawal or dismissal), does not become effective until the student has attended school for 14 consecutive calendar days (including weekends) commencing with the student's first class day of attendance for the Academic Year to the end in May. The undersigned acknowledge that, except as specified in this Contract, the undersigned remain responsible for the full year's tuition.

4. **Conditions of Attendance.** The undersigned acknowledge that the Clinic and School's reservation of a place for the student is null and void when payment obligations are not satisfied, and that in such circumstances the student may not attend The Lewis Clinic & School. No student shall be considered enrolled or may start school unless his/her enrollment forms and permission forms are complete and submitted including, in particular, the physician-signed **annual medical check-up form**, with all immunization requirements completed. Should The Lewis Clinic & School determine that it is not in the best interest of the student, or of his/her fellow students, or of The Lewis Clinic & School for the student to continue, The Lewis Clinic & School may suspend, require the withdrawal of, or dismiss the student. The decision of The Lewis Clinic & School shall be accepted as final.

Signature of **two parents or legal guardians, or a parent and a guarantor:**

X ▓▓▓▓▓▓▓ ▓▓▓▓▓ _____ Social Sec# ▓▓▓▓▓▓▓▓▓▓▓ Date: 9-29-2017

X _____ Social Sec# _____ Date: _____

LEWIS
SCHOOL
PRINCETON

5. **Extra Activities.** It is agreed that the student may take part in all Clinic/School activities, including athletics, and any Clinic/School-sponsored trip away from the campus, unless the Clinic receives written notice to the contrary. The undersigned acknowledge that the Clinic & School shall be held harmless by the undersigned in the event of accident or injury to the student.

6. **Hours and Transportation.** The undersigned acknowledge that the Clinic is open for students from 8:00 a.m. until the individual student's dismissal time, and the undersigned will arrange for the student to be dropped off and picked up promptly at these times.

7. **Legal Proceedings.** The undersigned acknowledge receipt of this document, in particular to the section "Information and Policies Pertaining to Parents in Litigation," and have signed and returned herewith the appended information form (Contract p. 4 of 4) "Agreement To Pay for Subpoenaed Production of Records and Testimony in Legal Proceedings." Parents considering a declaration of bankruptcy or lawsuit relating to their child must notify the Clinic promptly of this fact. The undersigned agree, preliminary to the Evaluation, to disclose prior, current, or future circumstances involving public-school litigation whether resolved or unresolved, and all pertinent medical information.

8. **Contract Submission; Additional conditions and Services.** All copies of this Contract must be signed by **two** parents or legal guardians of the student, or by a parent and a guarantor, and returned with payment in accordance with Options 1, 2 or 3 on or before date indicated. Upon acceptance, one copy will be countersigned and returned for your records. The Clinic reserves the right not to accept an enrollment Contract returned after such date. By accepting this Contract – and when any condition(s) specified by the Director are satisfied -- the Clinic will make available to the above-named student a place in the level determined by the Clinic, and all the appropriate rights, privileges, and opportunities, under Clinic policies, of that level. The Clinic may also require of certain students in need of extra help an after-school program of additional educational therapy, for which there will be a fee. This agreement shall be interpreted in accordance with the laws of the State of New Jersey.

Accepted for The Lewis Clinic:        **Signatures of two parents or legal guardians, or a parent and a guarantor:**

_____        _____ Date: _____

Director                          Date        _____ Date: _____

If you wish your payments to be charged automatically to your Visa or MasterCard credit card on the above-listed due dates, please complete this form. **Be advised that a 2.5% charge will apply to all credit card charges:**

Name on Card: _____ Credit Card Number: _____ Expiration Date: _____

I hereby authorize The Lewis Clinic to charge my account according to the Clinic's payment schedule.

Signature: _____ Date: _____

**PMa088**

From: ap < ▮▮▮▮▮ @aol.com>
  To: mickicrisafulli <mickicrisafulli@princetonk12.org>
  Cc: jamillathompson <jamillathompson@princetonk12.org>
Subject: Re: Meeting 12/20/17
  Date: Wed, Dec 20, 2017 10:37 am

I already informed that I could not attend today per my memo of 12/15/2017; did you not receive my fax?
I included a cite to the federal regulations.  Do you want case cites?  I can get them.
I will need to make some calls and get back to you about Jan. 3 or another day.

A▮▮▮▮ P. W▮▮▮
609-924-5200

-----Original Message-----
From: Micki Crisafulli <mickicrisafulli@princetonk12.org>
To: a▮▮▮▮ <a▮▮▮▮w@aol.com>
Cc: Jamilla Thompson <jamillathompson@princetonk12.org>
Sent: Wed, Dec 20, 2017 7:36 am
Subject: Meeting 12/20/17

An▮▮▮▮

The district is not required to invite staff from a school where you unilaterally placed your daughter. We offered a settlement, which you accepted and then rejected. If you do not attend the meeting, an IEP will be developed and sent to you. We are trying to hold this meeting with your input.  Despite your claims that the district is violating the IDEA, the holding of a meeting without a parent where there is clear evidence the parent is not participating and is unwilling to attend is permitted pursuant to N.J.A.C. 6A:14-2.3(k)(7).  So far you have continued to fail to agree to come in for the IEP meeting, have drafted memorandum without any legal citations that do not support your position, and have taken an increasingly hostile position.  We are orced to hold the meeting today, December 20  at 12:20, and we hope you can attend.  If you cannot attend, we can hold the meeting on January 3rd at 12:20. But we will not tolerate any further delays.

Finally, when a district places a student in a program, or when a district is proposing a program, we invite a special education teacher and a general education teacher from that program; not the program where a parent has unilaterally placed their student. This Child Study Team is not proposing Lewis School, as the District has an appropriate program available in-district, so we will not invite Lewis School staff to be part of this meeting as they are not knowledgeable of the program that will be proposed by the district.

Again, we hope you can make yourself available to discuss your daughter's education and participate in the meeting.

Regards,

Micki


Micki Crisafulli
Director of Student Services
Princeton Public Schools
25 Valley Road
Princeton, NJ 08540
hone: 609-806-4206
Fax: 609-806-4226

**PMa089**

## REQUEST FOR APPROPRIATE IEP MEETING AT MUTUALLY AGREEABLE TIME
## AND IN ACCORDANCE WITH PROCEDURAL SAFEGUARDS

DATE:  December 15, 2017

TO:    Ms. Micki Crisafulli, Director of Student Services (Via Facsimile)

FROM: A████ P. W█████ █████ Street, Princeton, NJ 08542

RE:    N███ A. W████ DOB: October 28, 2003
       Current School: The Lewis School, 53 Bayard Lane, Princeton, NJ 08540

_____

I write this memo in response to your email of December 12, 2017, in which you claim that you
have "tried to work with" me to schedule an Individualized Education Program (IEP) meeting for
my daughter but you claim I allegedly have "failed to consent" to an IEP meeting or observation.

I am very disturbed and distressed by your knowingly false accusations that are harassing and
harmful to me and my family.

As you are aware, the District has not attempted to work with me at all, and I have not denied
consent. I have eagerly welcomed an IEP meeting (as I always have in the past). I was contacted
by Ms. Thompson on November 14, 2017 about an IEP meeting, and I immediately met with my
daughter's teacher at The Lewis School to facilitate the meeting. I then promptly emailed Ms.
Thompson on November 15, 2017, and informed that I had taken these steps and I provided
feedback from my daughter's teacher and contact information to facilitate the meeting. My email
specifically also informed Ms. Thompson that the Lewis School was even expecting her call.

However, despite my cooperation, the District has obstinately rebuked my efforts and has
obstinately and defiantly refused to include my daughter's teachers as part of an IEP team which
violates the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400 et seq.

Regarding the observation, I also expressly consented. I have only reasonably asked the District
first have the meeting with my daughter's teachers which is necessary to respect The Lewis
School and my daughter's rights.

The District has further refused to even discuss accommodations for my daughter's disability
with regard to meeting location, though she is fourteen and her perferences must be considered.

Through your conduct, the District is engaging in illegal and harmful conduct and then you
compound that wrong by making false accusations against me.

Parent Request for Appropriate IEP Meeting at Mutually Convenient Time – N███ A. W████

Now, you also have abruptly scheduled an IEP meeting via email with basically one week notice during the holiday season and suggest you may go ahead with the meeting even without me.

Given the District refuses to invite my daughters' teachers or anyone who has knowledge about her as part of the IEP team, it is essential that I invite individual(s) who have knowledge or special expertise about my daughter, which also is my right.  With the short notice you have provided during the holiday season, it is not possible for me to make these arrangements for a meeting on December 20, 2017.

I thus require that this meeting be adjourned to a mutually agreeable time that will accommodate the schedules of my attendees. There is no sense of urgency. N████ is very happy at The Lewis School and doing very well there, getting excellent grades, doing her homework, participating in extracurricular activities, and making friends. I have already paid the full-years' tuition at The Lewis School and there will not be a change in her placement this year, as that would not only be a waste of resources but extremely harmful to N███  So there is no pressing need for an emergent IEP meeting as you have presented.

If you go ahead with a meeting about my daughter's educational placement without me, such conduct would be yet another gross and intentional violation of the IDEA and create further liability for the District.  I request your cooperation.

Sincerely,

A████ █ P.

2

**PMa091**

Case 3:18-cv-13973-MAS-TJB   Document 8-1   Filed 11/19/18   Page 120 of 132 PageID: 318

34 CFR 300.321 Iep Team. (Code of Federal Regulations (2017 Edition))

§ 300.321 Iep Team.

(a) *General.* The public agency must ensure that the IEP Team for each child with a disability includes -

(1) The parents of the child;

(2) Not less than one regular education teacher **of the child** (if the child is, or may be, participating in the regular education environment);

(3) Not less than one special education teacher **of the child,** or where appropriate, not less than one special education provider of the child;

(4) A representative of the public agency who -

(i) Is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;

(ii) Is knowledgeable about the general education curriculum; and

(iii) Is knowledgeable about the availability of resources of the public agency.

(5) An individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in paragraphs (a)(2) through (a)(6) of this section;

(6) At the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and

(7) Whenever appropriate, the child with a disability.

(b) *Transition services participants.* (1) In accordance with paragraph (a)(7) of this section, the public agency must invite a child with a disability to attend the child's IEP Team meeting if a purpose of the meeting will be the consideration of the postsecondary goals for the child and the transition services needed to assist the child in reaching those goals under § 300.320(b).

(2) If the child does not attend the IEP Team meeting, the public agency must take other steps to ensure that the child's preferences and interests are considered.

(3) To the extent appropriate, with the consent of the parents or a child who has reached the age of majority, in implementing the requirements of paragraph (b)(1) of this section, the public agency must invite a representative of any participating agency that is likely to be responsible for providing or paying for transition services.

(c) *Determination of knowledge and special expertise.* The determination of the knowledge or special expertise of any individual described in paragraph (a)(6) of this section must be



-1-

34 CFR 300.321 Iep Team. (Code of Federal Regulations (2017 Edition))

made by the party (parents or public agency) who invited the individual to be a member of the IEP Team.

(d) *Designating a public agency representative.* A public agency may designate a public agency member of the IEP Team to also serve as the agency representative, if the criteria in paragraph (a)(4) of this section are satisfied.

(e) *IEP Team attendance.* (1) A member of the IEP Team described in paragraphs (a)(2) through (a)(5) of this section is not required to attend an IEP Team meeting, in whole or in part, if the parent of a child with a disability and the public agency agree, in writing, that the attendance of the member is not necessary because the member's area of the curriculum or related services is not being modified or discussed in the meeting.

(2) A member of the IEP Team described in paragraph (e)(1) of this section may be excused from attending an IEP Team meeting, in whole or in part, when the meeting involves a modification to or discussion of the member's area of the curriculum or related services, if -

(i) The parent, in writing, and the public agency consent to the excusal; and

(ii) The member submits, in writing to the parent and the IEP Team, input into the development of the IEP prior to the meeting.

(f) *Initial IEP Team meeting for child under Part C.* In the case of a child who was previously served under Part C of the Act, an invitation to the initial IEP Team meeting must, at the request of the parent, be sent to the Part C service coordinator or other representatives of the Part C system to assist with the smooth transition of services.

(Authority: 20 U.S.C. 1414(d)(1)(B)-(d)(1)(D))

[71 FR 46753, Aug. 14, 2006, as amended at 72 FR 61307, Oct. 30, 2007]



**PMa093**

Princeton Public Schools
25 Valley Road
Princeton, NJ 08540

### DRAFT - INDIVIDUALIZED EDUCATION PROGRAM

| STUDENT / GUARDIAN INFORMATION | | | |
|---|---|---|---|
| **Student:** N█████ W█████ | **Date of Birth:** 10/28/2003 | **Gender:** Female | **Local ID:** 20221036 |
| **Address:** █████ Street | **Age:** 14:3 | **Native Language:** English | **State ID:** 9767481151 |
| Princeton, NJ 08540 | | | **Home #:** (609) 924-5200 |
| **Contacts:** A█████ W█████ Mother | **Home/Mobile #:** H: (609) 924-5200 | **Work #:** | **Email:** |
| **School Year:** 2017-2018 | **Case Manager:** Jamilla Thompson | **School:** John Witherspoon Middle School | **Grade:** Grade 8 |
| 2018-2019 | David Rosenfeld | Princeton High School | Grade 9 |
| | **Medicaid Consent Received:** No | **Medicaid Eligible:** No | |
| **Special Alerts:** | | | |

#### MEETING OR AGREEMENT INFORMATION

**Date:** 02/06/2018
**Reason:** Initial IEP Development

#### IEP INFORMATION

| | |
|---|---|
| Projected IEP Start Date: | 02/06/2018 |
| Projected IEP End Date: | 02/05/2019 |
| Behavior Intervention Plan: | Yes |
| Modifications: | Yes |
| Supplementary Aids and Services: | Yes |
| Assistive Technology: | No |
| Supports for School Personnel: | Yes |
| Testing Accommodations: | Yes |

#### PLACEMENT CATEGORY

In the presence of general education students for 80% or more of the school day

#### STATUS FOR DURATION OF IEP

02/06/2018 - 02/05/2019 Receiving Services

#### MOST RECENT ELIGIBILITY INFORMATION

**Determination:** Eligible for Special Education and Related Services
**Classification:** Emotionally Disturbed
**Extended School Year:** No
**Most Recent Annual Review Meeting:**
**Annual Review Due:** 02/09/2018
**Most Recent Reevaluation Eligibility Meeting:**
**Consent to Waive Reevaluation Received:**
**Reevaluation Due:** 02/09/2020

#### INITIAL ELIGIBILITY INFORMATION

Initial Referral:
Initial Consent to Evaluate:
Initial Eligibility Determination:
Initial IEP Meeting:
Initial Consent to Implement IEP:
Initial IEP Implemented:

#### SUMMARY-SPECIAL EDUCATION PROGRAMS AND RELATED SERVICES

| | | |
|---|---|---|
| Pull-out Resource Support: Study Skills | 02/06/2018 - 06/30/2018 | 5 x Weekly 50 min. |
| In-class Resource: Math | 02/06/2018 - 06/30/2018 | 5 x Weekly 50 min. |
| In-class Resource: Language Arts | 02/06/2018 - 06/30/2018 | 5 x Weekly 50 min. |
| Pull-out Resource Support: Study Skills | 09/05/2018 - 02/05/2019 | 4 x Weekly 44 min. |
| In-class Resource: English | 09/05/2018 - 02/05/2019 | 5 x Weekly 44 min. |
| In-class Resource: Math | 09/05/2018 - 02/05/2019 | 5 x Weekly 44 min. |
| In-class Resource: Social Studies | 09/05/2018 - 02/05/2019 | 5 x Weekly 44 min. |
| In-class Resource: Science | 09/05/2018 - 02/05/2019 | 5 x Weekly 44 min. |
| Counseling Services: Individual | 02/06/2018 - 06/30/2018 | 1 x Weekly 50 min. |
| Counseling Services: Individual | 09/05/2018 - 02/05/2019 | 1 x Weekly 45 min. |

**PMa094**

© 2009 Centris Group

Princeton Public Schools
25 Valley Road
Princeton, NJ 08540

Request for Additional Assessment

February 6, 2018

To the Parent/Guardian of N███ W███
95 Spruce Street
Princeton, NJ 08540

RE: N███ W███
Dear Parent/Guardian of N███ Wi███          DOB: 10/28/2003  ID#: 20221036

The purpose of this notice is to inform you, in writing, of the school district's proposal regarding the identification, classification, evaluation, educational placement of the above student.

A description of the action proposed or denied: *- Assess Naomi's academic and social emotional functioning*
An explanation of why the action is proposed or denied: *- determine current levels re academics + social emotional functioning*
A description of the procedures, tests, records or reports and factors used in determining the action proposed or denied: *- Parent concerns   - Current school grades*
*Child preference*          *- Previous reports   - therapists reports*
A description of any options that were considered and the reasons why those options were rejected: *Current proposed program at John Witherspoon Middle School*
A description of any other factors that are relevant to the action proposed or denied: *- additional data needed*

The nature and scope of the additional evaluation assessments proposed to be conducted:

**Procedural Safeguards Statement:**

As the parent of a student who is or may be determined eligible for special education services or speech-language services only, or as an adult student who is or may be determined eligible for special education services or speech-language services only, you have rights regarding identification, evaluation, classification, the development of an IEP, placement and the provision of a free, appropriate public education under the New Jersey Administrative Code for Special Education, N.J.A.C. 6A:14. A description of these rights, which are called procedural safeguards, is contained in the document, *Parental Rights in Special Education (PRISE)*. The document is published by the New Jersey Department of Education.

A copy of the PRISE is provided to you one time each year and upon referral for an initial evaluation, when you request a due process hearing or complaint investigation, and when a disciplinary action that constitutes a change in placement is initiated. In addition you may request a copy by contacting Micki Crisafulli, Director of Special Services at 609-806-4206.

For help in understanding your rights, you may contact any of the following:
Micki Crisafulli, Director of Special Services 609-806-4206
Statewide Parent Advocacy Network (SPAN) at (800) 654-7726
Disability Rights New Jersey (DRNJ) at (800) 922-7233
The New Jersey Department of Education through the Mercer County Office of Education, Janina Zak-Krasucki, County Supervisor, 609-588-5872

Your consent is requested for the district to conduct additional assessment. Please read and sign the enclosed consent form and return it to our office. The additional assessment may begin upon receipt of your consent.

**PMa095**

Laura Skivone, Ph.D.

Clinical Psychologist

231 Clarksville Road

Princeton Junction, New Jersey 08550

609-799-5771

February 14, 2018

RE: N█████ W██████

To Child Study Team John Witherspoon Middle School,

Please find enclosed this letter as a continuation of the discussion held on January 17, 2018 at J.W. Please also note this letter is adjunctive to my August 21, 2015 report in which N██████ developmental history, her traumatic experiences with peers at Community Park and Riverside Elementary Schools, along with my recommendations for appropriate middle school placement given the aforementioned, remains highly relevant and instructive.

N█████ is currently thriving academically, socially, and emotionally at The Lewis School. Her success is evidence that a consistent, supportive environment can foster her stable sense of self. Her stability is built upon her experiences of safety, regularity, consistency, and nurturance at The Lewis School. Secure environments help to promote secure selves. Secure selves enable one to function at levels commensurate with their abilities. N█████ has demonstrated high academic performance at The Lewis School consistent with her strong native intellectual resources.

Another growth promoting aspect of N█████s experience at The Lewis School has been the acknowledgement and recognition by their administration and faculty that her academic placement reflects her superior level of intellectual functioning (WISC-R Full Scale IQ-superior range; January 2016, Sarah Woldoff, Ph.D.) With appropriate recognition of one's abilities, healthy self worth and achievement are potentiated. N█████s success in performing at her current 10th grade level of instruction is demonstrative of the aforementioned.

Further evidence of the appropriateness of her current placement is the manifestation of clinically significant improvements in Naomi's frustration tolerance and attention and concentration skills as well as her enhanced achievement in conflict resolution and assignment completion. Testimony to the transformative benefits of a supportive and affirming environment is that previously seen intermittent oppositional behaviors have been replaced by

**PMa096**

█████ s willingness to respond appropriately and maturely to demands and tasks, and to be a consistent source of encouragement and help to her peers.

In light of this detailed description of █████'s overall exemplary level of achievement at The Lewis School, it is recommended that she complete her current academic year in place and continue her high school track herein.

As I stated in our discussion on January 17, 2018, any consideration to transfer █████ to John Witherspoon Middle School at this time is highly contraindicated on multiple levels. For █████ to incur an abrupt change to a school she has no experience with and to be removed from one in which she is thriving, is therapeutically counter to her abandonment and attachment difficulties. For █████ to experience a regression from The Lewis School's acknowledgement of her high academic grade level to a grade several levels below would be highly detrimental to her sense of self, self worth, and mood regulatory abilities. For █████ to be placed with an identified cohort of students who have bullied and ostracized her would be very harmful and trauma provoking.

Sincerely,

*Laura Skivone Ph.D.*

Laura Skivone, Ph.D.



FOR SCHOOL USE ONLY

THE LEWIS
SCHOOL
OF PRINCETON

## Conference Feedback Sheet
### Winter 2018

Student Name: █████████   Conference Date: 2/1/18

Family pursuing Fall placement?   Will there be a need for the family to pursue district
**Yes   No   Maybe   N/A**   for funding?   Yes   No   (Maybe)   N/A

Active IEP in place?   **Yes   No**   Family working with Advocate/Attorney?
If so, name: _____

Please provide explanation (if applicable): _____

| | **Current** | **Projected 2018-2019** |
|---|---|---|
| Homeroom Teacher | Ms. M. Hermann. | **Same** ⬆ **TBD** |
| Grade / Rising Grade Equivalency | 10th | 11th ~~today's~~ same |
| Math | Alg. I (Hansen) | Alg. II - Geometry |
| Social Studies/History | U.S History II | World Hist. |
| Science | Biology | Chemistry |
| College Track: (ASL), SAT/ACT | | ASL |

## Projected Teacher Recommendations – 2018-2019 Academic Year
*Progress will be monitored throughout the remainder of the year and projected recommendations will be revisited at Spring 2018 Conferences*

- ☐ Remain at present level within present school placement (Lower, Middle, Upper, CP 1, 2, 3, 4) to continue development of skill sets.
- ☐ Advance to next level within present school placement (Lower, Middle, Upper, CP 1, 2, 3, 4)
- ☐ Advance to next level of school (Middle, Upper, CP 1, 2, 3, 4)
- ☐ Parent(s) feel child ready to advance beyond The Lewis School.
- ☐ Teacher is in agreement that child is ready to advance beyond The Lewis School.

| **Strengths** | **Remaining Weaknesses** |
|---|---|
| – intelligent, curious | – Specific word retrieval |
| – well read, diligent | – formulating outlines |
| – helps others when needed | and essays independently! |

PMa098 ONLY

File No. 12174-0005
**Law Offices**
**PARKER McCAY P.A.**
**9000 Midlantic Drive, Suite 300**
**P.O. Box 5054**
**Mount Laurel, New Jersey 08054**
**(856) 596-8900**
Attorneys for Petitioner, Princeton Public Schools

| | |
|---|---|
| A.W. o/b/o N.W.,<br><br>Petitioner,<br><br>v.<br><br>PRINCETON PUBLIC SCHOOLS<br><br>Respondent. | OFFICE OF ADMINISTRATIVE LAW<br><br>OAL Docket No.: 03738-2017<br>Agency Reference No.: 2017-25766<br><br>CIVIL ACTION<br><br>**NOTICE OF MOTION FOR SUMMARY<br>DECISION** |

PLEASE TAKE NOTICE, that or as soon as counsel may be heard, the undersigned, attorneys for the Princeton Public School District Board of Education ("District"), will move before the New Jersey Office of Administrative Law for an Order Seeking Summary Decision.

The District will rely on the attached brief in support and certification.

This Motion is made pursuant to Rule 1:6-2. The District requests oral argument.

PARKER McCAY P.A.
Attorneys for Respondent,
Princeton Board of Education

BY: _____
BRETT E.J. GORMAN

DATE: 4/5/12

4852-5169-5704, v. 1

**PMa099**

## TABLE OF CONTENTS

STATEMENT OF FACTS…………………….………………………………….....4

LEGAL ARGUMENT………………………………..…………………………….6

   I.  STANDARD OF REVIEW…………………...……………………………6

  II. PETITIONER'S FAILURE TO PROVIDE THE DISTRICT
      WITH TIMELY NOTICE OF N.W.'S UNILATERAL PLACEMENT
      PRECLUDES PETITIONER FROM REIMBURSEMENT………………....…..……7

CONCLUSION………………………………………………………………………10

2

**PMa100**





█████ Street
609-924-5200  Fax 609-924-5277
An█████████wfirm.com

August 31, 2017

<u>Via Hand-Delivery</u>
Princeton Public Schools
Board of Education
25 Valley Road
Princeton, NJ 08540
ATTN: Mr. Patrick Sullivan, Board President

**Re: A██████ P.W███ on behalf of N███ A.W████**

Dear Mr. Sullivan:

Please accept this letter as formal notice to the Princeton Public School District (PPS), pursuant to <u>N.J.A.C.</u> 6A:14-2.10(b) of our intent to seek reimbursement from PPS, for the cost of enrolling N███ A. W████ (N.W.) in private school for the 2017-2018 school year, given her inability to receive a free, appropriate public education via the public school district.

My records reflect that I had previously sent such notices on May 12, 2017, as well as May 12, 2015 and August 26, 2015, but am providing such notice again now given recent events and in an abundance of caution.

cc. Mr. Stephen Cochrane, Superintendent, PRS

**PMa101**



██████ Street
Princeton, New Jersey 08542
609-924-5200  Fax 609-924-5277
Anastasi a@winslowlawfirm.com

May 12, 2017

Via Regular and Certified Mail
Princeton Regional Schools
Board of Education
25 Valley Road
Princeton, NJ 08540
ATTN: Patrick Sullivan, President

### Re:A.P.W. o/b/o N.W. v. Princeton Public Schools

Dear Mr. Sullivan:

Please accept this letter as a formal notice to the Princeton Public Schools Board of Education (PPS), pursuant to N.J.A.C. 6A:14-2.10(b) of our intent to seek reimbursement from PPS for the cost of an extended summer year program (2017) for N.W. and for a private and/or out-of district placement for N.W. and related services for the 2017-2018 school year, given denial of a free and appropriate public education with the PPS.

If you have any questions regarding this request or desire further detail, please do not hesitate to contact the undersigned. Thank you for your cooperation and understanding.

Yours truly,

A██████ P. W████

cc. Micki Crisafulli, Director of Student Services

**PMa102**

# The Lewis School of Princeton

53 Bayard Lane, Princeton, New Jersey 08540
(609) 924-8120

# Official School Transcript

**N████ W████████**

Name

| ████████ Street | Princeton | NJ | 08540 |
|---|---|---|---|
| Home Address | City | State | Zip Code |

# Spring Semester
# 2017-2018

| Third Marking Period | Gr. | Fourth Marking Period | Gr. | Final |
|---|---|---|---|---|
| **Integrated Multisensory Mechanics of Language and Learning:** Vocabulary Study; Latin and Greek Etymology; Lexicons and Orthography; Listening Comprehension; Reading Fluency and Pace; Written Expression; SQ4-7R; Study-Time Management, Organizational Skills; Lecture/Text Notetaking; Auditory Processing; Retention/Recall/Working Memory | A | **Integrated Multisensory Mechanics of Language and Learning:** Vocabulary Study; Latin and Greek Etymology; Lexicons and Orthography; Listening Comprehension; Reading Fluency and Pace; Written Expression; SQ4-7R; Study-Time Management, Organizational Skills; Lecture/Text Notetaking; Auditory Processing; Retention/Recall/Working Memory | A+ | A |
| Algebra I | A+ | Algebra I | A | A |
| Written Analysis | A- | Written Analysis | A | A |
| U.S. History I | A | U.S. History I | A | A |
| Biology | A | Biology | A+ | A |
| Comparative World Literature | A | Comparative World Literature | A- | A |
| Music Appreciation | A | Music Appreciation | A | A |
| Objects of Art | A | Objects of Art | A+ | A |
| Physical Education/Health | A | Physical Education/Health | A | A |

January 13, 2018 – March 9, 2018                     March 10, 2018 – May 25, 2018

*Patricia McCabe*                                    *Martina Hermann*

Registrar                                            Homeroom Teacher

| GPA | 1st: 3.83 | 2nd: 3.83 | 3rd: 3.95 | 4th: 4.00 | Final: 4.00 |
|---|---|---|---|---|---|

| Attendance | 3rd MP | 4th MP | Semester Total | Year Total |
|---|---|---|---|---|
| Days Absent | 0 | 1 | 1 | 1 |
| Days Tardy | 0 | 0 | 0 | 0 |

Grading Scale

| | | | |
|---|---|---|---|
| A+ | 97-100 | C+ | 77-79 |
| A | 93-96 | C | 73-76 |
| A- | 90-92 | C- | 70-72 |
| B+ | 87-89 | D+ | 67-69 |
| B | 83-86 | D | 63-66 |
| B- | 80-82 | D- | 60-62 |

W = Withdrawal

The Lewis School is a private, independent, nonprofit, nonsectarian organization.
In accordance with the Family Educational Rights and Privacy Act of 1974, this transcript must not be released to a third party without the written consent of the student.

Not valid unless signed by School Official.

Please note: Music Appreciation, Objects of Art and Physical Education are not included in GPA calculation.

**PMa103**

# The Lewis School of Princeton

53 Bayard Lane, Princeton, New Jersey 08540
(609) 924-8120

# Official School Transcript

**N█████ W█████**
Name

█████ Street | Princeton | NJ | 08540
Home Address | City | State | Zip Code

# Fall Semester
# 2017-2018

| First Marking Period | Gr. | Second Marking Period | Gr. |
|---|---|---|---|
| **Integrated Multisensory Mechanics of Language and Learning:** Vocabulary Study; Latin and Greek Etymology; Lexicons and Orthography; Listening Comprehension; Reading Fluency and Pace; Written Expression; SQ4-7R; Study-Time Management, Organizational Skills; Lecture/Text Notetaking; Auditory Processing; Retention/Recall/Working Memory | A+ | **Integrated Multisensory Mechanics of Language and Learning:** Vocabulary Study; Latin and Greek Etymology; Lexicons and Orthography; Listening Comprehension; Reading Fluency and Pace; Written Expression; SQ4-7R; Study-Time Management, Organizational Skills; Lecture/Text Notetaking; Auditory Processing; Retention/Recall/Working Memory | A+ |
| Algebra I | A | Algebra I | A |
| Written Analysis | A- | Written Analysis | A- |
| U.S. History I | B+ | U.S. History I | B+ |
| Biology | A | Biology | A |
| Comparative World Literature | A | Comparative World Literature | A |
| Objects of Art | B+ | Music Appreciation | A |
| Physical Education/Health | A | Objects of Art | A- |
| | | Physical Education/Health | A |

September 6, 2017 – October 27, 2017

*Patricia McAbee*
Registrar

October 30, 2017 – January 12, 2018

*Martina Herman*
Homeroom Teacher

| GPA | 1st: 3.83 | 2nd: 3.83 |
|---|---|---|

| Attendance | 1st MP | 2nd MP | Semester Total |
|---|---|---|---|
| Days Absent | 0 | 0 | 0 |
| Days Tardy | 0 | 0 | 0 |

**Grading Scale**

| | | | |
|---|---|---|---|
| A+ | 97-100 | C+ | 77-79 |
| A | 93-96 | C | 73-76 |
| A- | 90-92 | C- | 70-72 |
| B+ | 87-89 | D+ | 67-69 |
| B | 83-86 | D | 63-66 |
| B- | 80-82 | D- | 60-62 |

W = Withdrawal

The Lewis School is a private, independent, nonprofit, nonsectarian organization.
In accordance with the Family Educational Rights and Privacy Act of 1974, this transcript must not be released to a third party without the written consent of the student.

Not valid unless signed by School Official.

Please note: Music Appreciation, Objects of Art and Physical Education are not included in GPA calculation.

**PMa104**