Matthew S. Slowinski, Esq.
ID#: 019701986
SLOWINSKI ATKINS LLP
Eisenhower Corporate Campus
290 W. Mt. Pleasant Ave., Suite 2310
Livingston, NJ 07039
Phone: (973) 740-2228
Fax: (973) 740-2284
email: firm@SlowinskiAtkins.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| A.W. o/b/o N.W., | : | Civil Action No. 3:18-cv-13973-MAS-TJB |
| Plaintiffs, | : | |
| v. | : | **RETURN DATE: MAY 20, 2019** |
| | : | |
| PRINCETON PUBLIC SCHOOLS | : | |
| BOARD OF EDUCATION AND | : | **PLAINTIFFS' STATEMENT OF** |
| MICKI CRISAFULLI, | | **UNDISPUTED FACTS PURSUANT TO** |
| | : | **LOCAL R.  56.1 (A) IN SUPPORT OF** |
| | | **THEIR MOTION FOR PARTIAL** |
| Defendants. | : | **SUMMARY JUDGMENT** |
| _____ | x | |

Plaintiffs submit that the following material facts are not reasonably subject

to dispute based on the Joint Record (ECF 15), plaintiffs' additional evidence (ECF

18), and certifications and documents of record[1]:

     1.    The minor child, N.W., born in 2003, is now fifteen-years old (Ja184);

---

[1] "Ja" = Joint Record filed January 2, 2019 and January 4, 2019 (ECF 15, 18); "Pa"
= plaintiffs' additional evidence filed January 31, 2019 (ECF 26).

2.      N.W. was adopted from Kazakhstan in 2004, by plaintiff, A.W., as a single parent (Ja166, Ja179);

3.      N.W. was domiciled in the Princeton Public Schools Board of Education District  ("the District"), from October 2004 through August 2018 and enrolled in the District beginning in 2009 (Ja166, Ja179, ECF 8-1, p. 28,  ¶ 145);

4.      N.W. has special needs due to a history of emotional disturbance with diagnoses of anxiety, depression, attention-deficit hyperactivity disorder (ADHD), mood dysregulation, somatization disorder, withdrawal, sleep disturbance, and symptomology of post-traumatic stress disorder and oppositional defiant disorder (ODD) (Ja196, Ja207, Ja211, Ja325; ECF 8-1, ¶¶ 8-16);

5.      Throughout her years of schooling in the District, N.W. suffered from significant social, emotional and behavioral challenges and social anxiety (Ja166-Ja167, Ja180-Ja182);

**Facts Related to N.J. OAL Decision of September 28, 2017 Dismissing Plaintiffs' Claims Arising from October 29, 2015 through July 1, 2017**

6.      On August 27, 2015, the parent filed a due process and emergent petition against the District with the N.J. Office of Special Education (OSEP), requesting an out-of-district placement for N.W. pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. 1400 *et seq.* (IDEA)(Ja215-Ja218);

7.      When the August 2015 petition was filed, the District had not yet even

classified N.W. as eligible for special education services (Ja213);

8.      The District's evaluators had recommended, in August 2015, that N.W. be classified as "Emotionally Disturbed" (ED) and be given an Individualized Education Plan (IEP), with related services including school-based counseling, a social skills curriculum, and a school-based social skills group (Ja197, ¶¶ 6, 8; Ja204);

9.      N.W.'s therapist and psychiatrist had recommended an out-of-district placement for N.W. (*i.e.*, other than the John Witherspoon middleschool ["J.W."]) to prevent harm to self or others and avoid a full PTSD diagnosis (Ja208, Ja211);

10.      On August 31, 2015, the District held an IEP meeting, classified N.W. as eligible for services as "ED," but proposed that she be placed at J.W. (Ja221);

11.      On September 10, 2015,  the parties entered a settlement before the N.J. Office of Administrative Law (N.J. OAL), wherein the District agreed to seek an out-of-district public school placement for N.W. and in the interim, provide home instruction and fund three hours of therapy a week (Ja222, ¶ 2);

12.      Pursuant to the September 10, 2015 settlement, N.W. initiated weekly social skills and cognitive behavioral therapies (Ja168, ¶ 16);

13.      The District did not approve the first settlement because defendants were unable to find a suitable placement by the date of its next Board meeting in late September (Ja168-169, ¶ 17; Ja222);

14.     The September 10, 2015 settlement was vacated and at a hearing on October 29, 2015, the District agreed to place N.W. at the Fusion Academy ("Fusion") for the 2015-2016 and 2016-2017 school years (Ja223-224);

15.     In entering the October 29, 2015 settlement, the parties agreed before the N.J. OAL that N.W. would continue to have therapies at Fusion including social skills and executive-functioning therapies (Ja169, ¶ 20; Ja245);

16.     In entering the October 29, 2015 settlement, the parties also agreed before the N.J. OAL that the District would conduct evaluations and offer an IEP for N.W. for 2017-2018 by April 30, 2017 (Ja92, ¶ 2), with this date being selected so the parent could, if necessary, challenge the IEP in a due process petition before the start of the 2017-2018 school year (Ja92, ¶ 3);

17.     The October 29, 2015 settlement did not waive any future rights of N.W. and specifically, did not waive N.W.'s right to an IEP (Ja92-Ja93);

18.     The parent signed the agreement on October 29, 2015, with a release only up to this date of execution (Ja224);

19.     On November 10, 2015, the parent forwarded Fusion's course list for N.W. to Crisafulli which included two hours of therapy a week, with a line-item cost allocated to same as part of the tuition (Ja227; Ja226);

20.     On November 10, 2015, Crisafuli acknowledged receipt of the Fusion course list, including therapy, and expressed an intent to move forward (Ja226);

21.    In November 2015, Fusion also prepared a daily schedule for N.W. including twice weekly therapy (Ja228);

22.    The District's Board approved of the settlement at its meeting on November 18, 2015, including the tuition cost allocated for therapy (Ja91);

23.    After N.W. started at Fusion on November 24, 2015, Fusion removed the therapy from her schedule (Ja229-Ja230), and informed the parent this was removed because the District refused to pay for it (Ja229; Ja171, ¶37);

24.    The parent contacted Crisafulli on December 2, 2015 and December 3, 2015, about the therapy, but Crisafulli failed to respond (Ja230; Ja171, ¶ 38);

25.    Thereafter, the parent contacted the District's attorney who required that the parent execute *another* release, releasing the District from attorneys' fee claims (Ja231) and *future* violations, as a condition of providing N.W. with social skills services (Ja171, ¶¶ 39-40; Ja232, Ja233-Ja238);

26.    The parent refused to sign the release of future rights (Ja232);

27.    N.W. did not receive a social skills curriculum or school-based counseling through the entire 2015-2016 school year (Ja172, ¶ 46; Ja248);

28.    N.W. continued to have social skills challenges and debilitating conflicts at Fusion and for a period of six weeks in the spring of 2017, she was sexually harassed by a male student there resulting in expulsion of her offender (Ja172, ¶¶ 43-44; Ja240-Ja244, Ja250);

29.     In the spring of 2016, N.W. had conflicts with two teachers with "shut-down"/ODD behaviors (Ja243-244);

30.     In 2016, N.W. was unable to continue in a physical education program at Fusion, whereby the parent had to, at her own expense, provide physical education credit hours for N.W. independently (Ja244, Ja250, Ja251-Ja261);

31.     The parent informed the District about these struggles and in May 2016, formally requested an IEP to "discuss measurable milestones for [N.W.], … how she might meet those milestones, and what supports may be put in place to help her" (Ja250);

32.     In May 2016, the parent expressed concern to the District that N.W. had not been receiving any social skills, life skills and executive functioning courses at Fusion (Ja249-250);

33.     In response to the parental request for an IEP, the District convened an IEP meeting without inviting any of N.W.'s teachers or even anyone who knew her (besides her parent)(Ja172-Ja173, ¶¶ 48-49);

34.     In May 2016, the District proposed to transfer N.W. to J.W., contrary to the parties' settlement (Ja262);

35.     On or about May 20, 2016, the District's school psychologist also recommended that N.W. attend an Extended School Year (ESY) program in math and language arts, to encourage her socialization (Ja262; Ja173, ¶¶ 50);

36.     When the parent agreed with the ESY but commented she wanted the District to support N.W. with an IEP at Fusion, the District was non-responsive (Ja173, ¶¶ 51-54);

37.     The District thereafter offered no ESY services for N.W. (Ja173, ¶¶ 51-54, Ja291);

38.     In 2016 and 2017, the parent enrolled N.W. in summer (ESY) programs at her own expense (Ja173, ¶ 55, Ja280, Pa73);

39.     In August 2016, the parent filed a second due process petition requesting an IEP with related services including social skills services and the opportunity for N.W. to engage in extra-curricular activities with non-disabled peers (Ja292);

40.     In response to the second due process petition, the District refused to convene an IEP meeting, refused to provide N.W. with an IEP, and refused to allow her to engage in extracurricular activities with non-disabled peers (Ja294);

41.     In response to the second due process petition, the District agreed to reimburse the parent up to a maximum of $3,000 for privately-retained social skills therapies (Ja294), but then after the parent incurred expenses, in 2017, the District denied full reimbursement (Ja303-Ja313);

42.     In response to the second due process petition, the District conducted a re-evaluation of N.W. which resulted in a report by Dr. Sarah Woldoff of January

2017 (Ja294-Ja295, Ja314);

43.    Dr. Woldoff, the District's expert, recommended that N.W. remain programmed at Fusion with an IEP including a reintegration plan to allow for a "slow but smooth transition back into public school for High School" (Ja327);

44.    Dr. Woldoff further recommended that N.W. be provided with socialization opportunities, given the restrictive environment at Fusion, through extracurricular activities and one or more classes in the public schools, while also noting "it is important to consider the peers in those classes given her history of negative peer interactions" (Ja327);

45.    Thereafter, defendants refused to implement Dr. Woldoff's recommendations;

46.    On February 15, 2017, plaintiffs filed a third due process petition requesting an IEP implementing Dr. Woldoff's advice (Ja16, Ja333);

47.    In response to the third due process petition, the District refused to offer N.W. an IEP or even convene an IEP meeting in the spring of 2017 and through the start of the next school year (Ja176; *see also* Ja550);

48.    On or about April 4, 2017, N.W. attended a French evaluation at J.W., to assess her capabilities for placement in a class at the high school in the fall of 2017, an opportunity available to general education students in the District (Pa15);

49.    During the April 4, 2017 exam, N.W. "froze" with test anxiety and did

not demonstrate her capabilities but instead, displayed her impairment (Pa15);

50.    N.W.'s test anxiety and capabilities were confirmed by N.W.'s French teacher at Fusion, but the District refused to allow N.W. to take the French evaluation with accommodations for her disability (Pa14-Pa16, Ja550);

51.    On April 3, 2017 and April 5, 2017, the District informed the parent that it would not fund N.W.'s placement at Fusion for full 2016-2017 school year, with N.W.'s placement slated to end May 8-12, 2017 (Ja40, Ja42);

52.    At this time, the District also informed the parent, regarding Fusion, "you need to get your daughter out of that school immediately" (Ja41);

53.    The parent then incurred the time and expense of preparing an emergent petition, which she filed before the OSEP (Ja33-42), and only then did the District agree to fund N.W.'s courses through the balance of the 2016-2017 school year;

54.    On May 22, 2017, the parent met with defendant Crisafulli, for a resolution meeting (Pa17-Pa18);

55.    At the resolution meeting of May 22, 2017, the parent again asked that the District implement Dr. Woldoff's recommendations, *e.g.*, by providing N.W. with a transition plan to help re-integrate her into the public high school;

56.    At the resolution meeting of May 22, 2017, the parent again asked that N.W. be allowed to take the French evaluation with accommodations (Pa17-Pa18);

9

57.     However, defendants did not respond to the parent's May 22, 2017 request (Pa20, Ja550);

58.     On April 26, 2017, May 5, 2017, and again on May 31, 2017, plaintiffs requested that defendants state their position on what was N.W.'s stay-put placement, but they would not take a position (Ja60);

59.     The uncertainty in N.W.'s schooling, particularly as the 2016-2017 school year drew to a close, exacerbated her emotional condition with increased crying episodes, irritability and withdrawal (Ja60);

60.     Due to defendants' failure to respond, the parent was required to incur the time and expense of preparing an emergent petition on stay-put, which she filed before the N.J. OAL on June 7, 2017 (Ja51-Ja60);

61.     Upon the filing of this petition, defendants only then immediately agreed to Fusion being N.W.'s stay-put placement (Ja62);

62.     On July 14, 2017, plaintiffs again requested that N.W. be allowed to take the French placement evaluation with accommodations for her disability, and also be allowed to take a math assessment to determine if she would qualify (according to District policies relating to general education students), to take a math class at the public high school for 2017-2018 (Pa20-Pa21);

63.     On July 14, 2017, plaintiffs also offered to provide the District with recordings of N.W.'s French speaking abilities to demonstrate her capabilities

(Pa20);

64.     In response, the District refused to allow N.W. to even sit for the math or French evaluations (an opportunity available to general education students), unless plaintiffs' first agreed that same would be a "settlement" of their due process petition, with no transportation being provided in any settlement (Pa24, Pa22);

65.     On September 20, 2017, the District confirmed, in writing, it would not offer N.W. an IEP as to her program at Fusion and would offer no transportation and no transitional programming based on N.W.'s special needs but only classes available to general education students (Ja550);

66.     As of September 27, 2017, the District had, "[f]or the past couple of years, [] failed their responsibility to develop an IEP reasonably calculated for N.W. to benefit from her education and to address the issues and manifestations of her disability" which   caused "further complications regarding N.W.'s educational placement, as well as increased anxiety and stress" (Pa1-2);

67.     On September 7, 2017, the District moved for summary judgment as to the period October 29, 2015 to July 1, 2017, relying upon a certification by Crisafulli wherein she stated, *inter alia*:  "[plaintiffs] made no requests for services at [Fusion] that were rejected by the District" (Ja86, ¶ 14; Ja138, ¶ 12; Ja379. ¶ 12);

68.     On September 28, 2017, the N.J. OAL relied upon Crisafulli's statement to dismiss plaintiffs' claims (Ja379, ¶ 12).

**Facts Related to N.J. OAL Decisions of May 17, 2018 and June 20, 2018, Enforcing a Settlement and Denying Plaintiffs' Motion for Reconsideration**

69.     By September 2017, the District still offered N.W. no IEP as to her placement and program at Fusion (Ja550; Ja58-59, ¶¶ 10-13).

70.     On or about August 30, 2017, Crisafulli informed Fusion that the District would not pay for N.W. to attend the school unless the courses provided to N.W. were eighth-grade courses (Ja429, ¶ 6);

71.     Crisafulli's position fundamentally changed N.W.'s program, as Fusion had previously approved of N.W.'s taking all ninth-grade honor courses (Ja409), which had a positive impact on N.W.'s emotional state and willingness to attend Fusion (Ja393);

72.     The conflict regarding N.W.'s Courses of Study triggered an emotional reaction and ODD symptoms, traumatized N.W., and engendered school refusal in her as to Fusion (Ja446);

73.     On September 8, 2017, plaintiffs filed an emergent petition before the N.J. OAL (Ja381);

74.     Through the emergent petition, the parent informed the N.J. OAL that, although the school year was underway, N.W. was not in school because of the conflict on her Courses of Study (Ja381-382);

75.     Via the emergent petition, the parent asked that defendants either (1)

defer to Fusion's Courses of Study; <u>or</u> (2) convene an IEP meeting to have the Courses of Study determined by a Child Study Team; <u>or</u> (3) alternatively, that the stay-put placement be modified to The Lewis School (TLS)(Ja382);

76.    On September 21, 2018, defendants responded, rejecting every one of the parents' three proposals (Ja421-429);

77.    Defendants argued N.W. should be forced to attend Fusion as an eighth grader with no IEP (Ja423-424);

78.    In support of their position, Crisafulli submitted a certification falsely stating Fusion had first recommended eighth-grade courses for N.W. and thereafter changed its position to recommend ninth-grade courses (Ja428-Ja429, ¶¶ 3-4); Crisafulli referred to alleged correspondence that was not annexed (*id.*);

79.    The hearing on this emergent petition was held on September 27, 2017; at that time, N.W. still had no IEP program or placement but was auditing classes at TLS pending the hearing (Ja446-447);

80.    In advance of the hearing, defendants proposed a settlement wherein the District would pay for N.W.'s tuition at TLS for 2017-2018, provided plaintiffs would waive N.W.'s future right to an IEP and also waive *future rights* as to placement for the next school year (Ja734);

81.    The parent refused to waive future rights and rejected the offer of settlement (Ja734);

13

82.     Defendants then argued for and obtained an order on September 28, 2017, that Fusion was stay put, without any relief as to N.W.'s Courses of Study or the lack of an IEP (Ja369-Ja370, Ja469);

83.     On September 29, 2017, the parent enrolled N.W. in TLS and paid TLS approximately $40,000 in tuition to avoid further trauma to N.W. (Ja733, ¶ 57, Ja447, Ja547);

84.     To make this payment, the parent borrowed off the family's home equity line and defendants were made aware of this financial constraint (Ja761);

85.     The parties then appeared at a hearing before the N.J. OAL on October 4, 2017, when defendants offered a second proposed settlement involving reimbursement for N.W.'s tuition at TLS (Ja735, Ja756-760);

86.     Pursuant to the second proposed settlement, defendants proposed to reimburse plaintiffs for the 2017-2018 tuition at TLS via monthly payments, provided the parent dis-enrolled N.W. from the school district, waived all of her rights for past FAPE violations *and any and all future* violations through the following June 2018, including waiver of N.W.'s right to an IEP (Ja758-759);

87.     In the second proposed settlement, defendants also demanded a waiver of N.W.'s *future* rights under the IDEA as to an appropriate placement for *the following school year*, requiring that the parent concede the Princeton High School would be N.W.'s placement which she could not contest (Ja735);

14

88.   Defendants also required that plaintiffs waive their claims for compensatory education, expert and attorneys' fees (Ja735);

89.   While in court on October 4, 2017, the parents signed an agreement to accept this proposal, but within two days of the hearing informed defendants it presented too great a risk as it would effectively eliminate N.W.'s basic educational rights, leaving plaintiffs with no schooling option for 2017-2018, for example, should TLS fail or no longer be appropriate (Ja737, ¶ 78-79);

90.   The parent requested amendments to protect those basic rights (Ja486, Ja498, Ja762);

91.   Defendants refused any amendments and threatened plaintiffs with N.W.'s educational rights, stating:

> If you revoke consent, you will not be reimbursed for [TLS], the district will no longer negotiate with you, and you will place your daughter's educational program at risk for the remainder of this school year as I doubt there will be a hearing for months (Ja739 ¶ 89, Ja762);

92.   The parent felt compelled to protect N.W.'s rights and thus revoked consent to the settlement before it was approved by the Board (Ja484, Ja485);

93.   Defendants "approved" the revoked settlement on October 24, 2017 and sought to enforce it upon plaintiffs before the N.J. OAL (Ja493-494);

94.   The N.J. OAL did not enforce the agreement and scheduled a hearing for March 2, 2018 (Ja499-500);

95.     Plaintiffs were thereby required to carry the full cost of tuition at TLS

for the 2017-2018 school year (Pa57-72), despite their filing of a due process petition

in February 2017, seeking *prior* placement by defendants (Ja1);

96.     At the hearing on March 2, 2018, the parent appeared *pro se* when

settlement was broached by defendants again (Ja598-599, Ja742-743, ¶ 112-115);

97.     During this third round of settlement talks, the parent explained that

future waivers of rights as to placement was what caused the prior settlement in

October 2017 to fail (Ja602-603, Ja743-744, ¶¶ 121-122, Ja602-603).

98.     On March 2, 2018, the parent requested that settlement negotiations

take place on the record but the ALJ denied this request (Ja605, lines 12-18, Ja607,

lines 9-23, Ja743, ¶ 116);

99.     When the parties then *orally* negotiated a settlement, defendants made

*oral representations* and assurances to the parent, to induce her to settle, that "*the*

*agreement would be void*" if she sought to enroll N.W. in the district rather than at

TLS  (Ja744, ¶¶ 122- 125, ECF No. 8-1, pp. 19-20, at ¶¶ 107-112, ECF 19-2, p. 2,

¶¶ 5-7; *see also* Civil Action No. 3:17-cv-11432 ("*2017 Action*"): ECF 22, pp. 5-8;

ECF 25-1, pp. 19-20, ¶¶ 109-112; ECF 30, p. 9; ECF 36-1, p. 4).

100.    Defendant Crisafulli then added to this assurance by stating that she

would consider other placements for N.W. if she were enrolled in district (Ja744, ¶

126, ECF No. 8-1 at ¶¶ 107- 112);

101.   It was precisely because of the aforesaid assurances (¶¶ 99-100), that the parent agreed to settle that day (Ja744, ¶¶ 125-126, ECF 8-1, at ¶¶ 111-112);

102.   On March 2, 2018, after the talks, defense counsel made various edits to a settlement instrument on his laptop computer, in court, which were not presented to the parent in tracked changes (ECF No. 8-1 at ¶¶ 115- 116);

103.   The ALJ's secretary printed the document in court (titled, "Stipulation of Settlement and General Release")(the "March 2 Instrument"), which was presented to the parent to sign (ECF No. 8-1, ¶¶ 115- 116);

104.   Before signing the March 2 Instrument, the parent confirmed in open court - before all parties and the ALJ - that she understood there was a procedural safeguard under the IDEA allowing her three days for review (Ja747, ¶ 133, ECF 8-1, ¶¶ 117- 119);

105.   The parent also confirmed the settlement was contingent upon defendants' following through with their promises (Ja617, line 6-7);

106.   The parent signed the agreement, presented to her for the first time in court on that Friday in the aforesaid manner, and stated she did not have any further comments she could think of *at that time* (Ja618, line 2).

 107.   Over the weekend, the parent thoroughly reviewed the March 2 Instrument and was concerned it could be construed inconsistently with the oral representations and negate N.W.'s *future* educational rights entirely (Ja746, ¶ 135,

ECF 8-1, ¶¶ 120-123);

108.   The parent wrote to defendants' counsel on Monday, March 6, 2018,

stating that the waivers were intended to be void if N.W. was re-enrolled in the

district (Ja641, ECF No. 8-1 at ¶¶ 122);

109.   On March 6, 2018, the parent expressly voided the March 2 Instrument

pursuant to 20 U.S.C. 1415 (f)(iv), subject to clarification to comport with what had

been expressly promised on March 2, 2018 (Ja641);

110.   Defendants refused to make any amendments but made various

representations, such as "the things you requested clarity on have already been

placed in the agreement" (Ja642), "your concerns are still set forth in the agreement

which does not require an amendment" (Ja644); and the agreement meant the

District "will not pay any more money for [N.W.'s] attendance [*at TLS*] for any

grade level other than what is in the agreement" but N.W. was "welcome to return

to the District at any time" (Ja839, ECF 35-2, Exh. A);

111.   The parent never withdrew her objections or voiding of the March 2

instrument (Ja640-Ja645, Ja669);

112.   Defendants had the agreement approved by its Board (Ja623);

113.   Defendants submitted the March 2 Instrument to the N.J. OAL on

March 29, 2019 for approval, representing that "the parties maintained their consent

to the agreement" and that both parties requested it be entered into a final order

(Ja622, ECF 8-1, ¶¶ 136-137);

114.   On April 3, 2018, plaintiffs made a formal application to the N.J. OAL seeking equitable reformation of the March 2 Instrument (Ja635);

115.   On April 3, 2018, plaintiffs requested that the N.J. OAL reform the March 2 Instrument to explicitly state *future* waivers were deemed void should N.W. re-enroll in the district, as promised (Ja635-Ja649);

116.   On April 3, 2018, the parent further requested that the District be required to reimburse her the $42,194 in tuition paid for 2017-2018 by May 4, 2018 (Ja639), as the timing of tuition reimbursement was also in question (*e.g.*, Ja646-647);

117.   Defendants did not oppose plaintiffs' equitable reformation request;

118.   On or about April 13, 2018, defendants issued the parent a purchase order, proposing to reimburse her the $42,194.00 for 2017-2018 (Ja772);

119.   The parent signed the purchase order on April 23, 2018 (Ja773);

120.   The next day, April 24, 2018, defendants filed before the N.J. OAL a motion to "enforce" settlement "as written" (Ja650-651);

121.   The parent opposed defendants' motion, reiterating her prior request for equitable reformation and raising concerns as to ambiguities in the agreement, changed circumstances with regard to N.W.'s disability, and public policy (Ja671);

122.   On May 17, 2018, the N.J. OAL granted the District's motion and

19

"wholeheartedly disagreed" with the parent on future waivers (Ja649);

123.  Plaintiffs timely filed a motion for reconsideration (Ja697), which defendants opposed (Ja804);

124.  On June 20, 2018, the ALJ ruled he lacked jurisdiction to consider plaintiffs' motion for reconsideration (Ja697);

125.  On or about August 11, 2018, plaintiffs relocated to another school district (ECF 8-1, p. 28, ¶ 145), and filed this suit challenging the validity of the March 2 Instrument (ECF 1, 3).

Respectfully submitted,

**SLOWINSKI ATKINS LLP**

*s/ Matthew S. Slowinski*

_____
MATTHEW S. SLOWINSKI, ESQ.

Dated: April 26, 2019